1 | DARRYL P. RAINS (CA SBN 104802)
Drains@mofo.com
2 | EUGENE ILLOVSKY (CA SBN 117892)
MORRISON & FOERSTER LLP
3 | 755 Page Mill Road
Palo Alto, California  94304-1018
4 | Telephone: 650.813.5600
Facsimile: 650.494.0792
5 |
CRAIG D. MARTIN (CA SBN 168195)
6 | MORRISON & FOERSTER LLP
425 Market Street
7 | San Francisco, California 94105-2482
Telephone: 415.268.7000
8 | Facsimile: 415.268.7522

9 | RICHARD A. SCHIRTZER (Bar No. 150165)
richardschirtzer@quinnemanuel.com
10 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
11 | Los Angeles, CA  90017-2543
Telephone: (213) 443-3000
12 | Facsimile: (213) 443-3100

13 | KARIN KRAMER (Bar No. 87346)
karinkramer@quinnemanuel.com
14 | PATRICK DOOLITTLE (Bar No. 203659)
patrickdoolittle@quinnemanuel.com
15 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
16 | San Francisco, CA  94111-4788
Telephone: (415) 875-6600
17 | Facsimile: (415) 875-6700

18 | Attorneys for defendants Charles Schwab & Co., Inc.,
Schwab Investments, and Charles Schwab Investment Management, Inc.

19 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| JERRY SMIT, individually and on behalf of all others similarly situated, | Case No.        CV-10-3971 LHK |
| Plaintiff, | CLASS ACTION |
| v. | MOTION TO DISMISS COMPLAINT |
| CHARLES SCHWAB & CO., INC., SCHWAB INVESTMENTS and, CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., | Date:         Jan. 13, 2011<br>Time:         1:30 p.m. |
| Defendants. | Stipulated Briefing Schedule |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT ......................................... 1

STATEMENT OF ISSUES .................................................................................................... 1

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I. THE SECURITIES LITIGATION UNIFORM STANDARDS ACT BARS
MS. SMIT'S SECTION 17200 CLAIM ....................................................................... 4

    A. Ms. Smit's Case Is a "Covered Class Action" That Asserts A Claim Under
State Law ............................................................................................................. 5

    B. Shares of the Schwab Total Bond Market Fund Are "Covered Securities" ............... 6

    C. Ms. Smit's Complaint Alleges Misstatements and Omissions In Connection
With The Purchase Or Sale of Fund Shares ......................................................... 6

    D. The Alleged Misstatements Were Made "In Connection With" the Purchase
or Sale of Fund Shares ........................................................................................ 8

II. SECTION 17200 DOES NOT APPLY TO SECURITIES TRANSACTIONS ................... 9

III. MS. SMIT'S CLAIM MUST BE ASSERTED DERIVATIVELY IN
COMPLIANCE WITH RULE 23.1 ......................................................................... 12

    A. Smit's Mismanagement Claim Must Be Asserted Derivatively ........................... 14

    B. Ninth Circuit Authority Confirms that a Claim for Decline in Value of
Mutual Fund Shares is Derivative In Nature ...................................................... 15

    C. Ms. Smit Failed to Comply with Rule 23.1 ....................................................... 18

IV. MS. SMIT LACKS STANDING TO BRING A 17200 CLAIM AND HER
PRAYERS FOR RESTITUTION AND DISGORGEMENT SHOULD BE
DISMISSED ........................................................................................................... 18

    A. Ms. Smit Has Not Lost Money or Property and Therefore Has No Standing ........ 19

    B. Ms. Smit's Prayer for Restitution Should Be Dismissed ................................... 20

    C. Ms. Smit's Prayer for Disgorgement Should Also Be Dismissed ........................ 22

V. ALLEGATIONS IN MS. SMIT'S COMPLAINT RELATING TO THE CHANGE
IN CONCENTRATION POLICY SHOULD BE DISMISSED BECAUSE THE
STATUTE OF LIMITATIONS HAS EXPIRED ......................................................... 23

VI.    NEITHER CHARLES SCHWAB & CO. INC. NOR CHARLES SCHWAB
       INVESTMENT MANAGEMENT INC. CAN BE LIABLE UNDER
       PLAINTIFF'S § 17200 THEORY ...................................................................................... 23

CONCLUSION ...................................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*In re American Mutual Funds Fee Litigation,*
   3005 WL 3989803 (C.D. Cal. Dec. 16, 2005) ............................................................4

*Atkinson v. Morgan Asset Management, Inc.,*
   664 F. Supp. 2d 898 (W.D. Tenn. 2009)....................................................................6

*Barrous v. BP P.L.C.,*
   No. 10-CV-2944 LHK, 2010 WL 4024774, at *6-7 (N.D. Cal. Oct. 13, 2010) ....................20

*Bowen v. Ziasun Technologies, Inc.,*
   116 Cal. App. 4th 777 (2004)........................................................9, 10, 11, 12

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999)...........................................................................24

*Chabner v. United of Omaha Life Ins. Co.,*
   225 F.3d 1042 (9th Cir. 2000)....................................................................24

*Charles O. Bradley Trust v. Zenith Capital LLC,*
   No. C-95-20725 SW, 2008 WL 3400340, at *4 (N.D. Cal. Aug. 11, 2008)..................10, 12

*In re Charles Schwab Corp. Secs. Litigation,*
   264 F.R.D. 531 (N.D. Cal. 2009) ...................................................8, 11, 15, 22

*Clayworth v. Pfizer, Inc.,*
   49 Cal. 4th 758 (2010).........................................................................20

*Crimi v. Barnhold, No. C 08- 02249 CRB,*
   2008 U.S. Dist. LEXIS 108469 (N.D. Cal. Sept. 17, 2008).........................................8

*Day v. AT&T Corp.,*
   63 Cal. App. 4th 325 (1998)....................................................................20

*Dietrich v. Bauer,*
   76 F. Supp. 2d 312 (S.D.N.Y. 1999) ...........................................................10

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
   No. 98 Civ. 4318 (HB), 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000)...........................14, 16

*In re Edward Jones Holders Litigation,*
   453 F. Supp. 2d 1210 (C.D. Cal. 2006)........................................................4, 8

*Everett v. Bozic,*
   No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006) .....................14

*Feitelberg v. Credit Suisse First Boston, LLC,*
   134 Cal. App. 4th 997 (2005).............................................................18, 20, 21

*Feitelberg v. Merrill Lynch & Co., Inc.*,
   234 F. Supp. 2d 1043 (N.D. Cal. 2002), *aff'd by* 353 F.3d 795 (9th Cir. 2003)..................4, 5, 6

*Felton v. Morgan Stanley Dean Witter & Co.*,
   429 F. Supp. 2d 684 (S.D.N.Y. 2006) ...........................................................................6

*First Alliance Mortgage Co. v. Lehman Commercial Paper, Inc.*,
   471 F.3d 977 (9th Cir. 2006)....................................................................................21

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) .........................................................12, 13, 14

*Gonzalez v. First Franklin Loan Servs.*,
   No. 1:09-CV-00941 AWI-GSA, 2010 U.S. Dist. LEXIS 1657,
   at *42 (E.D. Cal. Jan. 9, 2010)..............................................................................23, 24

*Groce v. Claudat*,
   No. 09cv1630, 2010 WL 3339406 (S.D. Cal. Aug. 24, 2010)......................................23

*Halebian v. Berv*,
   457 Mass. 620 (2010) ........................................................................12, 13, 16, 17

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847, 70 Cal.Rptr.3d 466 (2008) .....................................................19

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) ........................................................................14

*Indiana Electrical Workers Pension Trust Fund v. Dunn*,
   No. C-06-01711 RMW, 2007 WL 1223220, at *10 (N.D. Cal. Mar. 1, 2007) ...................16, 17

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ..............................................................................23, 24

*In re J.P. Morgan Chase & Co. Shareholder Litig.*,
   906 A.2d 766 (Del. 2006)......................................................................................16, 17

*Jackson v. Stuhlfire*,
   547 N.E.2d 1146 (Mass. App. Ct. 1990)................................................................13, 14

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
   No. C-97-4618 MHP, 1998 WL 2016634, at *17–18 (N.D. Cal. Sept. 14, 1998) ...................10

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002).......................................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ......................................................20, 21, 22

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000)..............................................................................12, 15, 16

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005).................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) .........................................................................................................3, 8

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005).......................................................................13, 14

*Nelson v. Pearson Ford Co.*,
    186 Cal. App. 4th 983 (2010) ............................................................................................22

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    615 F.3d 1106 (9th Cir. 2010).............................................................................................3

*Overstock.com v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ............................................................................................11

*Perera v. Chiron Corp.*,
    1996 WL 251936 (N.D. Cal. May 8, 1996) .......................................................................10

*Proctor v. Vishay Intertechnology Inc.*,
    584 F.3d 1208 (9th Cir. 2009)..............................................................................................6

*Regions Fin. Corp.*,
    __ So. 3d __, 2010 WL 3835727 (Ala. Sept. 30, 2010) ...............................................14, 15

*Rowinski v. Salomon Smith Barney Inc.*,
    398 F.3d 294 (3d Cir. 2005)............................................................................................3, 6

*Sarin v. Ochsner*,
    721 N.E.2d 932 (Mass. App. Ct. 2000) .............................................................................13

*Scognamillo v. Credit Suisse First Boston LLC*,
    No. C-03-2061 TEH, 2005 WL 2045807, at *12 (N.D. Cal. Aug. 25, 2005) ....................10

*Smith v. Waste Mgmt., Inc.*,
    407 F.3d 381 (5th Cir. 2005)..............................................................................................15

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm*,
    96 Cal. App. 4th 884 (2002)..............................................................................................23

*Spinner Corp. v. Princeville Dev. Corp.*,
    849 F.2d 399 (9th Cir. 1988)................................................................................................9

*Stoody-Broser v. Bank of America, N.A.*,
    2009 WL 2707393 (N.D. Cal. Aug. 25, 2009)..................................................................4, 6

*Strigliabotti v. Franklin Resources, Inc.*,
    2005 WL 645529 (N.D. Cal. 2005)....................................................................................12

*In re Transkaryotic Therapies, Inc.*,
    954 A.2d 346 (Del. Ch. 2008)............................................................................................17

*U.S. Mortgage, Inc. v. Saxton*,
    494 F.3d 833 (9th Cir. 2007)............................................................................................4, 8

*Vogel v. Jobs, No. C 06-5208 JF,*
   2007 WL 3461163 (N.D. Cal. Nov. 14, 2007) ............................................................16

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ....................................................................20

*Watts v. Enhanced Recovery Corp.,*
   10-CV-2606 LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) ..................19, 20, 22

*Wells Fargo Bank, N.A. v. Superior Court,*
   159 Cal. App. 4th 381 (2008) ................................................................................4

*In re Worldcom, Inc.,*
   323 B.R. 844 (S.D.N.Y. B.R. 2005) ...................................................................16, 17

## Statutes

15 U.S.C. § 77r(b)(2) ..............................................................................................5

15 U.S.C. § 78bb(f)(1) ..........................................................................................3, 4

15 U.S.C. § 78bb(f)(5)(B)(i) ...................................................................................4

15 U.S.C. § 80a-13(a) .......................................................................................23, 24

15 U.S.C. § 80a-13(a)(1) – (a)(4) ..........................................................................24

Cal. Bus. & Prof. Code § 17200 ...................................................................... *passim*

Cal. Bus. & Prof. Code § 17203 ...............................................................18, 19, 20, 22

Cal. Bus. & Prof. Code § 17204 ...........................................................1, 18, 19, 20

Cal. Bus. & Prof. Code § 17208 ...........................................................................23

Fed. R. Civ. P. 23.1 ..............................................................................................13

Fed. R. Civ. P. 23.1(b)(3) ..................................................................................13, 17

## Other Authorities

William L. Stern, *Bus. & Prof. C. § 17200 Practice* ¶¶ 3:26–28 (The Rutter Group 2008) ............10

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

PLEASE TAKE NOTICE that on January 13, 2011 at 1:30 p.m., in the United States Courthouse, 280 South 1st Street, San Jose, CA 95113, before the Honorable Lucy H. Koh, Defendants Charles Schwab & Co., Inc., Schwab Investments, and Charles Schwab Investment Management, Inc. will and hereby do move the Court for an order dismissing the Complaint with prejudice or, in the alternative, dismissing Plaintiff's prayers for restitution and disgorgement. This motion is based on the following points and authorities, the accompanying Request for Judicial Notice, the accompanying declaration of Patrick C. Doolittle, the pleadings and other documents filed in this action, and any arguments or evidence made during the scheduled motion hearing.

## STATEMENT OF ISSUES

1)     Should the Court dismiss the Complaint because the purported 17200 class action is barred by the Securities Litigation Uniform Standards Act?

2)     Should the Court dismiss the Complaint because Section 17200 does not apply to securities transactions like Plaintiff's investment in the Schwab Total Bond Market Fund?

3)     Must Plaintiff's claims, all of which allege damages based on a decline in value of shares in the fund, be asserted derivatively rather than as direct claims?

4)     Does Plaintiff have standing to assert her claim even though she lost nothing, and should her prayers for restitution and disgorgement be dismissed?

5)     Should Plaintiff's claims relating to events that occurred over four years before filing be dismissed as expired?

6)     Should the claims against Charles Schwab & Co., Inc. and Charles Schwab Investment Management, Inc. be dismissed because they are not registered investment companies and therefore not subject to Section 13(a) of the Investment Company Act?

### Introduction

Jerry Smit, an investor in the Schwab Total Bond Market Fund (the "Fund"), and a Colorado resident, seeks to assert a single claim under California Business & Professions Code Section 17200 on behalf of a nationwide class of investors. Relying entirely on the unlawful

prong of 17200, Ms. Smit alleges that, in violation of Section 13(a) of the Investment Company Act, the Fund "deviated from its stated fundamental investment objective" by investing too much of the Fund's assets in mortgage-backed securities—specifically, a type of mortgage-backed securities called "non-agency collateralized mortgage obligations." (Compl. ¶¶ 3, 4.) Ms. Smit alleges that she and other investors "have suffered substantial damages in connection with losses in the Funds' [sic] value that resulted from the Funds' [sic] deviation from its stated fundamental investment policies." (Compl. ¶ 96.)

Plaintiff's 17200 claim should be dismissed with prejudice for each of the following reasons:

1) Plaintiff's purported 17200 class action is barred by the Securities Litigation Uniform Standards Act ("SLUSA") because Plaintiff repeatedly alleges misrepresentations and omissions in connection with the purchase of covered securities;

2) Section 17200 does not apply to securities transactions like Plaintiff's investment in the Fund;

3) Because the gravamen of Plaintiff's complaint is that the Fund was mismanaged when it deviated from its stated investment policies, and that shareholders suffered lower investment returns as a result, Plaintiff does not allege an injury that is distinct from that suffered by shareholders generally, and her claim must be asserted as a derivative claim;

4) Plaintiff lacks standing to assert a claim under Section 17204 against any defendant because Plaintiff did not lose money or property as a result of Defendants' alleged unfair competition;

5) Plaintiff failed to file suit within four years of September 1, 2006, the date the Fund allegedly improperly changed its concentration policy. Accordingly, any 17200 claim based on that alleged deviation from the Fund's concentration policy is time barred; and

6)      Because only registered investment companies can violate Section 13(a) of the

Investment Company Act, and because Plaintiff's 17200 claim is predicated solely

on an alleged violation of Section 13(a), no 17200 claim can be asserted against

Defendants Charles Schwab & Co., Inc. or Charles Schwab Investment

Management, Inc.

## Statement of Facts

Plaintiff Jerry Smit resides in Arvada, Colorado.  (Compl. ¶ 9.)  She first invested in the Schwab Total Bond Fund (the "Fund") in October 1998.  (*Id.*)  Starting on November 15, 2002, for the first time the Fund began to consider "mortgage-backed securities issued by private lenders" to be an "industry" subject to the Fund's 25% concentration limit.  (Declaration of Patrick C. Doolittle in Support of Motion to Dismiss ("Doolittle Decl."), Exh. 1, Nov. 15, 2002 Statement of Additional Information, at 10.)  But on September 1, 2006, the Fund's Statement of Additional Information was amended to remove "mortgage-backed securities issued by private lenders" as an industry subject to the Fund's 25% concentration limit.  (Compl. ¶ 81.)  Despite this change, Ms. Smit continued to maintain her investments in the Fund until she filed suit (Compl. ¶ 9) which was not until September 3, 2010.

Ms. Smit's complaint alleges throughout that the basis of her suit is the Fund's "deviat[ion] from its fundamental investment objective."  (Compl. ¶¶ 2-5, 55, 73, 88(a) and 94-96.)  Ms. Smit repeatedly alleges that she and others have suffered "substantial damages" in connection with losses in the Fund's value resulting from the Fund's deviation from its fundamental investment policies.  (Compl. ¶¶ 5, 9, 96 and 98.)

Ms. Smit admits that, from August 1997 through August 2007, the Fund substantially performed as represented, with an annualized return of 5.75%.  (*Id.* ¶ 60.)  Moreover, on any Fund shares she held continuously from October 1998, Ms. Smit's total return as of the date this suit was filed would be about 48%.  (Doolittle Decl. ¶ 8.)  Overall, Ms. Smit has actually profited from her investment in the Fund.

**Argument**

On August 12, 2010, the Ninth Circuit issued a decision on the interlocutory appeal of the now-consolidated case, *Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106 (9th Cir. 2010).  Although the Northstar appeal did not involve a 17200 claim predicated on a violation of Section 13(a) of the Investment Company Act, it did raise the question of whether private litigants can enforce Section 13(a).  In holding that no private right of action exists, the Ninth Circuit examined the language of the statute and the legislative history and found that "[Congress's] thorough delegation of authority to the SEC to enforce the ICA strongly suggests Congress intended to preclude other methods of enforcement."  *Id.* at 1116-17.  Ms. Smit's infirm 17200 Claim represents a back-door effort to privately enforce alleged violations of Section 13(a) of the Investment Company Act.  For the reasons below, plaintiff's strained 17200 Claim should be dismissed.

## I.   THE SECURITIES LITIGATION UNIFORM STANDARDS ACT BARS MS. SMIT'S SECTION 17200 CLAIM

The Securities Litigation Uniform Standards Act ("SLUSA"), which was enacted to prevent private plaintiffs from avoiding the application of federal fraud standards in securities cases, precludes state law class actions alleging fraud in connection with the purchase or sale of a security.  15 U.S.C. § 78bb(f)(1); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006) (Congress enacted SLUSA to "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [1995 Private Securities Litigation] Reform Act"); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) (Congress "envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards").

Under SLUSA, a state law claim should be dismissed when: (1) the case is a "covered class action;" (2) the complaint asserts a claim under state law; (3) the case involves a "covered security;" (4) the complaint contains allegations concerning a misrepresentation or omission of material fact; and (5) the alleged misstatement or omission was made "in connection with" the purchase or sale of a security.  15 U.S.C. § 78bb(f)(1); *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d

833, 844 (9th Cir. 2007).  Ms. Smit's complaint falls squarely within these limits.  Her claim is therefore precluded by federal law and must be dismissed.

### A.   Ms. Smit's Case Is a "Covered Class Action" That Asserts A Claim Under State Law

It is clear that, under SLUSA, Ms. Smit's action is a "covered class action" that asserts a state law claim.  To show that an action is a "covered class action," a defendant must merely show that "one or more named parties seek to recover damages on a representative basis" on behalf of 50 or more prospective class members.  15 U.S.C. § 78bb(f)(5)(B)(i).  Here, Ms. Smit has brought her claim on a representative basis on behalf of "all persons or entities who owned shares of the Fund as of May 31, 2007."  (Complaint ¶ 84.)  Ms. Smit's proposed class would include more than 50 prospective class members, and her complaint is therefore a "covered class action."

Second, Ms. Smit's complaint pleads only one count—an alleged violation of Section 17200, which arises under state law.  Courts have previously found that a Section 17200 claim may be precluded under SLUSA.  *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1049 (N.D. Cal. 2002), *aff'd by* 353 F.3d 795 (9th Cir. 2003); *Stoody-Broser v. Bank of America, N.A.*, 2009 WL 2707393, *4 (N.D. Cal. Aug. 25, 2009) (finding Section 17200 claim was precluded by SLUSA); *In re Edward Jones Holders Litigation*, 453 F. Supp. 2d 1210, 1216 (C.D. Cal. 2006) (finding Section 17200 claim was precluded by SLUSA under *Dabit*); *In re American Mutual Funds Fee Litigation*, 3005 WL 3989803, *6-7 (C.D. Cal. Dec. 16, 2005) (finding SLUSA precluded Section 17200 claim); *Wells Fargo Bank, N.A. v. Superior Court*, 159 Cal. App. 4th 381, 388-389 & 395 (2008) (finding that SLUSA precluded Section 17200 claim and granting writ to sustain defendant's demurrer to complaint).  As a result, Ms. Smit has asserted a claim under state law that may be subject to preclusion under SLUSA.

If Ms. Smit attempts to argue that her action is not a "covered class action" because she does not seek damages under Section 17200, that argument should be dismissed out of hand.  First, the complaint explicitly requests damages (even though damages are not recoverable under 17200).  In any event, the Northern District of California has found that a class action seeking disgorgement and restitution under Section 17200 is a "covered class action" under SLUSA.

*Feitelberg*, 234 F. Supp. 2d at 1049.  In *Feitelberg*, the plaintiff brought a class action asserting a single claim under Section 17200 for Merrill Lynch's purported dissemination of deceptive stock ratings and analyst reports.  *Id.* at 1045.  After the defendant removed to federal court under SLUSA, the plaintiff argued that SLUSA only covered class actions that seek damages, and that his claim was not a "covered class action" because he sought restitution and disgorgement,  as opposed to damages.  *Id.* at 1046.  The court rejected this argument, finding that a class action claim for monetary relief in the form of restitution and disgorgement would fall under the definition of a "covered class action."  *Id.* at 1048-1049.

Here, like the plaintiff in *Feitelberg*, Ms. Smit has filed a class action complaint asserting a sole claim under Section 17200 that seeks monetary relief.  Compl. Prayer for Relief, (B), (C); *see also* Compl. ¶ 96 (defendants "caused significant losses to the Fund's shareholders" and "Plaintiff and other members of the Class have suffered substantial damages in connection with losses in the Funds' value").  Ms. Smit's action therefore is a "covered class action" under SLUSA alleging a state claim.

### B.   Shares of the Schwab Total Bond Market Fund Are "Covered Securities"

It is also clear that the securities at issue in this action are "covered securities" under SLUSA.  "Covered securities" include securities "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2).  The Schwab Total Bond Market Fund shares purchased by Ms. Smit were issued by Schwab Investments, an investment company that is registered under the Investment Company Act.  (Compl. ¶ 12.)  The mutual fund shares at issue are therefore "covered securities." *See, e.g., Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 & 1004 (C.D. Cal. 2002) (finding that mutual fund shares issued by registered investment company are "covered securities" under SLUSA).

### C.   Ms. Smit's Complaint Alleges Misstatements and Omissions In Connection With The Purchase Or Sale of Fund Shares

To determine whether a class action complaint alleges material misstatements or omissions under SLUSA, a court looks at the substance of the allegations, rather than the bare legal elements

of the asserted state law claim. *See Rowinski*, 398 F.3d at 300 (finding that "preemption does not turn on whether allegations are characterized as facts or as legal elements of a claim, but rather whether the SLUSA prerequisites are 'alleged' in one form or another"); *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009) (citing *Rowinski*) ("Misrepresentation need not be a specific element of the claim to fall within the Act's preclusion"). The misrepresentation element of SLUSA is met when the allegations of a material misrepresentation or omission "serve as the factual predicate of a state law claim." *Rowinski*, 398 F.3d at 300.

A plaintiff cannot avoid the application of SLUSA by artfully avoiding the use of the terms "misrepresentation" or "omission." *Feitelberg*, 234 F. Supp. 2d at 1051 ("If in fact the claims allege misrepresentations or omissions or use of manipulative or deceptive devices in connection with the purchase or sale of securities and otherwise come within the purview of SLUSA, artful avoidance of those terms or scienter language will not save them from preemption."); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (action dismissed where complaint was "a securities fraud wolf dressed up in a breach of contract sheep's clothing"); *Atkinson v. Morgan Asset Management, Inc.*, 664 F. Supp. 2d 898, 906-907 (W.D. Tenn. 2009) (breach of contract claim dismissed where, "[d]espite the artful pleading, the Complaint read as a whole makes clear that [breach of contract claim] ultimately rests on an assertion that PwC failed to disclose material information to shareholders in its regular audit"). "When the gravamen of the complaint involves an untrue statement or substantive omission of material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal." *Stoody-Broser*, 2009 WL 2707393 at *3.

Here, the factual predicate of Ms. Smit's Section 17200 claim is that Schwab promised investors that the Total Bond Market Fund would be a conservative fund, changed the investment objective of the Total Bond Market Fund to make it more risky without obtaining shareholder approval, and *failed to disclose* to its investors that it had done so. (Complaint ¶¶ 59, 63) Specifically, Ms. Smit asserts that Schwab initially "emphasized the conservative nature" of the Fund (*id.* ¶ 44) and promised investors it "would not increase the risk profile of the Fund." (*Id.*

¶ 32.)  Schwab then allegedly changed the investment objective of the fund "from a diversified fund that would seek to track the Index into a concentrated real estate bond fund," without seeking the required shareholder vote.  (*Id.* ¶ 59.)  As alleged by Ms. Smit, "[n]ot only did defendants fail to hold the required shareholder vote before changing the Fund's investment objective, they also failed to give investors notice that they had changed the fund's objective."  (*Id.* ¶ 63.)  In February 2008, after the fund experienced some investment losses, Schwab allegedly omitted to disclose to "investors that the deviation in the Fund's performance was due to the Fund's concentrated play in non-agency CMOs," (*id.* ¶¶ 64, 65), and defendants allegedly failed to "inform investors that the Fund would continue to deviate from the Index (*id.* ¶ 66).  As a result of defendants' alleged omissions, investors were unaware that defendants had engaged in a risky strategy in the Fund.  (*Id.* ¶ 69.)[1]

Defendants' alleged misrepresentations and omissions are not merely extraneous details in Ms. Smit's complaint.  Rather, they are incorporated into her Count for a violation of Section 17200 (Compl. ¶ 93), and form one of the bases for her claim.  (Compl. ¶ 97 ("All of the wrongful conduct alleged herein occurred and continues to occur in the conduct of these defendants' businesses."); *id.* ¶ 98 ("As a proximate result of the defendants' wrongful conduct, Plaintiff sustained money damages in connection with losses in the Fund's value that resulted from the Fund's deviation from its stated fundamental investment policies.").)  Indeed, since the only claim in Ms. Smit's Complaint is her 17200 claim, her allegations of misrepresentations and omissions necessarily relate to that claim.

**D.**     **The Alleged Misstatements Were Made "In Connection With" the Purchase or Sale of Fund Shares**

The "in connection with" requirement must be construed broadly, and is met so long as an alleged misrepresentation or omission "coincide[s] with a securities transaction - whether by

---

[1]  Ms. Smit also charges that Schwab omitted to inform "[i]nvestors . . . that [the Fund's manager] had engaged in an investment strategy that was inconsistent with the Fund's stated investment objectives and policies," and failed to disclose that the fund's manager "was in fact asked to resign."  (Compl. ¶ 70.)

plaintiff or by someone else." *Dabit*, 547 U.S. at 85. As a result, SLUSA preempts class actions brought not just by securities purchasers, but also by securities "holders"—including the class of holders of fund securities that Ms. Smit seeks to represent here. (Compl. ¶ 1.) *See Saxton,* 494 F.3d at 844-45 (finding that defendant's alleged misstatements induced plaintiffs "to refrain from exercising rights under their several loan agreements," and that defendant's misrepresentations "coincide[d] with the purchase or sale of securities, even though plaintiffs did not purchase or sell."); *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1215 (C.D. Cal. 2006) ("holder" claims dismissed under SLUSA because "it is virtually axiomatic that, had Plaintiff and the other Class members received 'unbiased' investment advice, they would have sold their . . . shares earlier or refrained from purchasing them in the first instance"); *Crimi v. Barnhold*, No. C 08-02249 CRB, 2008 U.S. Dist. LEXIS 108469, at *10 (N.D. Cal. Sept. 17, 2008) ("a claim that Defendants omitted material information which caused Plaintiffs to hold . . . stock is the quintessential securities fraud action preempted by SLUSA").

Here, defendants' alleged failure to disclose to investors that it had changed the investment objectives of the Total Bond Market Fund coincides with a securities transaction. As a result of defendants' alleged omission, investors were unaware that the Total Bond Market Fund had become more risky, and they allegedly decided to hold, rather than sell, those shares. (*See* Compl. ¶¶ 63, 65-66, 69).

The gravamen of Ms. Smit's complaint therefore involves alleged misrepresentations and omissions in connection with a securities transaction, and is precluded by SLUSA.

## II.   SECTION 17200 DOES NOT APPLY TO SECURITIES TRANSACTIONS

Section 17200 does not apply to securities transactions like those at issue here. In *Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777 (2004), the California Court of Appeal held in blanket fashion that "[S]ection 17200 does not apply to securities transactions." *Id.* at 788. While some subsequent decisions have clarified that Section 17200 can still apply to conduct that merely *implicates* securities, the claim here fails under *Bowen* because securities transactions are the gravamen of the complaint.

In *Bowen*, the plaintiff investors brought a 17200 claim against a Nevada corporation, asserting that the corporation's agents solicited investments in the company through misstatements and omissions.  The trial court ruled that Section 17200 did not apply to securities transactions. *Id*. at 785.

The Court of Appeal affirmed.  It reasoned that Section 17200 is California's little Federal Trade Commission Act ("FTC Act") and that the FTC Act has never been applied to securities transactions—which are the subject of other regulatory schemes.  *Id*. at 789.[2]  The *Bowen* court noted that federal cases addressing Section 17200 have held it inapplicable to securities transactions.  *Id*. at 787 (collecting federal cases).  "Additionally, at least 15 other jurisdictions that have considered whether investment securities are within the scope of their consumer protection statutes have reached the same conclusion. . ."  *Id*. (citations omitted).  The court held:

> In sum, we conclude, based upon the fact that the FTC Act has never been applied to securities transactions, and federal and state authority from 15 other jurisdictions have held that their little FTC Acts do not apply to securities transactions, section 17200 does not apply to securities transactions, and the court did not err in dismissing plaintiffs' first three causes of action on that basis.

*Id*. at 790.

As *Bowen* recognized at the time, federal courts have ruled Section 17200 inapplicable to securities cases.  Federal cases after *Bowen* have reached similar conclusions.  *Charles O. Bradley Trust v. Zenith Capital LLC*, No. C-95-20725 SW, 2008 WL 3400340, at *4 (N.D. Cal. Aug. 11, 2008) ("The issue in *Bowen* involved the interplay of federal securities violations and a claim under state unfair competition law….the Court finds that the claim for violation of California's unfair competition law is barred by the holding in *Bowen*"); *Scognamillo v. Credit Suisse First Boston LLC*, No. C-03-2061 TEH, 2005 WL 2045807, at *12 (N.D. Cal. Aug. 25, 2005) ("several

---

[2]   *Bowen* adopted the reasoning from the Ninth Circuit case of *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 399 (9th Cir. 1988).  *Spinner* interpreted Hawaii's little FTC Act, a consumer protection law similar to Section 17200, and held it did not apply to securities transactions.

1   courts have concluded that Section 17200 does not apply to securities transactions, and it appears

2   that no court has held to the contrary").[3]

3          Under this weight of authority, Plaintiff does not have a Section 17200 claim to pursue.

4   Plaintiff's case here is based on securities transactions that fall within *Bowen* because she is

5   specifically attacking the purchase and sale of securities that the Fund held.  Plaintiff alleges that

6   she was harmed when the Fund inappropriately purchased non-agency mortgage-backed

7   securities.  Compl. ¶ 3(fund deviated from investment objective "by *investing* a material

8   percentage of its portfolio in high risk non-agency collateralized mortgage obligations

9   ('CMOs')"); *id.* ¶ 56 ("The Fund had no business *investing* in non-agency CMOs…"); *id.* ¶ 76

10  ("Moreover, non-agency CMOs *purchased* for the Fund represented tranches of mortgage-backed

11  securities…") (Emphasis added.)  Moreover, plaintiff claims she experienced damages by virtue of

12  her own purchase of securities in the Fund from "October 1998 and continuing through July

13  2010".  *Id.* ¶ 9.

14         Plaintiff alleges that a ruling by Judge Alsup in a case involving a different Schwab mutual

15  fund supports her theory that Section 17200 is a viable claim.  Compl. ¶ 82 (citing *In re Charles*

16  *Schwab Sec. Litig.*, Order Re: 1940 Summary Judgment Motions, Case No. 08-1510 WHA).  But

17  the Court here need not find that Judge Alsup's ruling was incorrect, because the facts of this case

18  are distinguishable.  Plaintiff's complaint in this case is replete with allegations that defendants

19  issued misleading statements and failed to disclose the reasons for the Fund's underperformance.

20  *See*, *e.g.*, Compl. ¶¶ 63-70.  Such allegations of deceptive conduct implicate *Bowen*, even under

21  Judge Alsup's ruling.  *In re Charles Schwab Sec. Litig.*, 257 F.R.D. at 553 (denying motion to

22  dismiss where Plaintiffs' Section 17200 claims do not concern misrepresentations in the sale of

23

24          [3]   *See also Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) (rejecting 17200 claim

25  related to stock manipulation scheme); *Perera v. Chiron Corp.*, 1996 WL 251936, at *5 (N.D. Cal.
    May 8, 1996) (conclusion that Section 17200 does not apply to securities claims is in line with

26  "numerous cases from other jurisdictions"); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, No. C-
    97-4618 MHP, 1998 WL 2016634, at *17–18 (N.D. Cal. Sept. 14, 1998) ("No California court has

27  explicitly held that section 17200 . . . [is] applicable to securities transactions"); William L. Stern,
    *Bus. & Prof. C. § 17200 Practice* ¶¶ 3:26–28 (The Rutter Group 2008).

28

1   securities).  Moreover, Judge Alsup's ruling—which relied upon *Overstock.com v. Gradient*

2   *Analytics, Inc.*, 151 Cal. App. 4th 688 (2007)—incorrectly read *Overstock* too broadly and is

3   distinguishable in any event.

4        In *Overstock*, the plaintiff alleged that the defendant issued defamatory analytic reports

5   that caused the plaintiff company's stock price to drop.  *Overstock.com*, 151 Cal. App. 4th at 690.

6   Accordingly, while the conduct at issue implicated securities, the substance of the complaint

7   involved defamatory statements, not the purchase or sale of securities.  *Id*.  As a result the court

8   reasoned that the 17200 claim could survive notwithstanding *Bowen*.  Judge Alsup cited *Overstock*

9   and an unpublished, non-precedential California case for the proposition that "California decisions

10  have since interpreted *Bowen* narrowly."  *In re Charles Schwab Sec. Litig.*, 257 F.R.D. 534, 553

11  (N.D. Cal. 2009).  In fact, however, *Bowen* and *Overstock* can be read consistently: if the

12  gravamen of a claim involves securities transactions it is foreclosed under *Bowen*, but if the

13  challenged conduct merely touches upon securities, Section 17200 can still apply.

14       Judge Alsup also cited *Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529 (N.D.

15  Cal. 2005), a decision that declined to dismiss a 17200 claim.  *Strigliabotti*, however, involved the

16  charging of excessive fees to mutual fund holders not investment losses or lost profits on mutual-

17  funds transactions.  The *Strigliabotti* court observed that "the *Bowen* case is limited to 'securities

18  transactions,' and does not encompass all situations where securities are somehow implicated but

19  not purchased and sold."  *Id*. at *9.  The allegations here do more than just "implicate"

20  securities—securities are the heart of the complaint.

21       Plaintiff's complaint involves "the interplay of federal securities violations and a claim

22  under state unfair competition law."  *Charles O. Bradley Trust*, 2008 WL 3400340, at *4.

23  Accordingly, because this case involves investment losses on a securities transaction, Section

24  17200 does not apply and plaintiff has failed to state a claim.

25  **III.     MS. SMIT'S CLAIM MUST BE ASSERTED DERIVATIVELY IN COMPLIANCE**

26          **WITH RULE 23.1**

27       Ms. Smit's claim is a derivative claim, and cannot be asserted as a direct class claim.

28  Schwab Investments is a Massachusetts business trust, and the Fund is a series of the trust.

1   (Compl. ¶ 12.)[4]  Under Massachusetts law, courts look to the harm allegedly suffered by

2   shareholders, and the nature of the alleged misconduct, in determining whether a claim is

3   derivative or direct; not to plaintiff's characterization of her claims.  *Forsythe v. Sun Life Fin.,*

4   *Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006).

5        The Complaint plainly asserts that the harm suffered by plaintiff, and other investors, was

6   lower investment returns between August 2007 and February 2009 compared to the returns

7   achieved by the Lehman Brothers Aggregate Bond Index that the Fund sought to track.  (Compl.

8   ¶¶ 5, 71-73, 96 and 98.)  The Complaint also alleges that this alleged return shortfall was caused

9   by the Fund's "deviat[ion] from its fundamental investment objective to track the Lehman

10  Brothers U.S. Aggregate Bond Index."  (Compl. ¶¶ 2, 55, 73.)

11       A claim that the Fund's managers "deviated" from the Fund's stated objectives and

12  diminished the investment returns of all investors is a derivative claim.  The claim belongs to the

13  Fund, and it must be asserted by the Fund (or derivatively on the Fund's behalf) against the Fund's

14  managers.  The claim may not be pleaded as Ms. Smit has asserted it—as a class claim directly on

15  behalf of the Fund's investors—because she does not claim that the Fund's managers dealt

16  improperly with investors or caused them any direct injury.

17       Of course, had Ms. Smit attempted to plead a derivative claim, she would have had to do

18  so in compliance with Rule 23.1 of the Federal Rules of Civil Procedure.  That rule imposes strict

19  procedural requirements, including that a plaintiff allege with particularity "any effort . . . to

20  obtain the desired action" or "the reasons for not making the effort."  Rule 23.1(b)(3).  Ms. Smit's

21  failure to plead her claim as a derivative claim, and her failure to comply with Rule 23.1, provide

22  additional grounds for dismissal of her complaint.

23

24  _____

25       [4]  The law of the state of incorporation of Schwab Investments — Massachusetts —controls
    the issue of whether a claim is derivative or direct.  *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir.

26  2000).  A "business trust 'in practical effect is in many respects similar to a corporation;'" as a
    result, the same rules governing derivative actions on behalf of corporations apply to shareholders

27  bringing derivative claims on behalf of business trusts.  *Halebian v. Berv*, 457 Mass. 620, 623 n. 4
    (2010).

28

**A.      Smit's Mismanagement Claim Must Be Asserted Derivatively**

It is clear that "[u]nder Massachusetts law, a claim based on a 'duty owed to the corporation, not to the individual stockholders" is properly characterized as derivative, not direct." *Halebian v. Berv*, 590 F.3d 195, 204-05 (2nd Cir. 2009).  A "shareholder may bring a direct action for injuries done to him in his individual capacity [only] if he has an injury which is separate and distinct from that suffered by other shareholders."  *Sarin v. Ochsner*, 721 N.E.2d 932, 934-35 (Mass. App. Ct. 2000) (citation and internal quotations omitted); *see also Halebian*, 590 F.3d at 205.  "[I]f the wrong underlying [the] claim results in harm to a plaintiff shareholder only because the corporate entity has been injured, with the plaintiff's injury simply being his proportionate share of the entity's injury, the harm to the shareholder is indirect and his cause of action is derivative."  *Forsythe*, 417 F. Supp. at 112; *Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (under Massachusetts law, "[i]f the injury merely is a reduction in the price of stock, then the suit must be derivative"); *Everett v. Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083, at *3 (S.D.N.Y. Aug. 3, 2006) ("Courts analyzing Massachusetts . . . law generally have found that a reduction in share price is an indirect injury, the remedy for which may be found in a derivative action").

Here, the alleged wrong—lower investment returns experienced by all shareholders as a result of investment decisions that deviated from the Fund's investment objectives—purportedly injured the Fund and violated duties owed to the Fund by other defendants.  All shareholders suffered equally from this alleged wrong.  Ms. Smit and other Fund shareholders suffered only indirectly as a result of their ownership of Fund shares.  Any underperformance of the Fund's share price, of course, affected all the shareholders in the Fund—each shareholder's "injury simply being his proportionate share of the entity's injury."  *Forsythe*, 417 F. Supp. 2d at 112.

A claim "alleging mismanagement or wrongdoing on the part of corporate officers or directors" is not a direct claim causing a separate and distinct injury to any shareholder or subset of shareholders; rather it "normally states a claim of wrong to the corporation" and "therefore, is properly derivative."  *Jackson*, 547 N.E.2d at 1148 (citation and internal quotations omitted); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 WL 10211, at *4

1   (S.D.N.Y. Jan. 6, 2000) (claim for decline in value of mutual fund is derivative); *Mutchka*, 373 F.

2   Supp. 2d at 1027 (mutual fund shareholders' breach of fiduciary duty claim was derivative

3   because "the injury merely is a reduction in the price of stock"); *Hamilton v. Allen*, 396 F. Supp.

4   2d 545, 552 (E.D. Pa. 2005) (fiduciary duty claim is derivative under Massachusetts law because

5   "[p]laintiffs seek essentially to recover for the diminution of assets *to the Funds*").

6           In a very similar case, the Alabama Supreme Court recently held that the shareholders in a

7   high-yield bond fund, who alleged similar claims related to the fund's over-concentration in

8   mortgage-backed securities, had to assert their claim derivatively.  *Ex parte Regions Fin. Corp.*,

9   __ So. 3d __, 2010 WL 3835727 (Ala. Sept. 30, 2010) (not yet published).  Plaintiffs in that case

10  had tried to assert a direct claim.  *Id.* at *1.  They alleged that the investment manager had

11  misrepresented the investment strategy, claiming to invest in safe bonds while actually investing

12  in high-risk mortgage and asset-backed securities.  *Id.*  But in order to allege a direct action, the

13  shareholders had to show they could "prevail without showing an injury to the corporation."  *Id.* at

14  *9 (quoting *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005)).  Because the primary

15  injury was to the fund, they could not do that, and the court held the claim was derivative and

16  dismissed the suit.  *Id.*  This authority is squarely on point and the same result should apply here.

### B.    Ninth Circuit Authority Confirms that a Claim for Decline in Value of Mutual Fund Shares is Derivative In Nature

19          The Ninth Circuit has held that a claim like Ms. Smit's—asserting mismanagement

20  resulting in a decline in the value of investors' mutual fund shares—must be asserted as a

21  derivative claim.  The key case is *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000).  *Lapidus* held

22  that a mutual fund investor may only bring a direct claim for either "an injury distinct from that

23  suffered by shareholders generally."  *Id.* at 683.  Referring to Massachusetts law, the Ninth Circuit

24  noted that a claim for diminution in the value of mutual fund shares is not distinct from an injury

25  suffered by shareholders generally.  It found:  "the only injury to the shareholder is the indirect

26  harm which consists of the diminution in the value of his or her shares."  *Id.*  As a result, the Ninth

27  Circuit affirmed dismissal of the plaintiffs' damages claim, because the "district court correctly

28  determined that this claim alleged only indirect harm to the shareholders."  *Id.* at 684.

1    Ms. Smit also alleges, of course, that the deviations alleged in her complaint would have

2    been permissible had they been submitted to, and approved by, a shareholder vote, and she alleges

3    that no such vote was held.  (Compl. ¶¶ 2, 59, 81-82, 94.)  But her case is not about a shareholder

4    vote, she does not seek any injunctive relief relating to holding such a vote, and she does not seek

5    to rescind some corporate action taken by the fund without a vote.  The only remedy she seeks is

6    lost investment profits—that is, the allegedly "substantial damages in connection with losses in the

7    Fund's value that resulted from the Fund's deviation."  (Compl. ¶ 96.)[5]

8    *Lapidus* draws a careful distinction between "voting rights" injuries and "diminution in

9    value" injuries.  The Ninth Circuit held that a claim relating to voting rights is a direct claim,

10   while a claim for recovery of a "diminution in the value of his or her shares" is derivative in

11   nature.  *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000).  That distinction has been

12   consistently observed in subsequent cases.  For instance, in *In re J.P. Morgan Chase & Co.*

13   *Shareholder Litig.*, 906 A.2d 766 (Del. 2006), the Delaware Supreme Court acknowledged that if

14   a "disclosure violation impaired the stockholders' right to cast an informed vote, that claim is

15   direct."  *Id*. at 772.  But a damages claim based on harm to the company resulting from that vote

16   must be asserted derivatively—even though the voting rights violation allegedly contributed to the

17   financial injury.  *See id*. at 772-73.  Similarly, in *Halebian v. Berv*, 631 F. Supp. 2d 284 (S.D.N.Y.

18   2007), a plaintiff claimed his voting rights were interfered with by a false proxy solicitation.  *Id*. at

19   290-91.  The court held that his claims had to be asserted derivatively even though "plaintiff

20   characterizes this as being a case where defendants interfered with shareholders' voting rights."

21   *Id*. at 302.  According to the court, the plaintiff had failed "to articulate a theory by which the

22

23   _____

24   [5]  Plaintiff will undoubtedly argue that, in the YieldPlus case, Judge Alsup rejected the
     argument that a 17200 claim based on a violation of Section 13(a) of the Investment Company Act
25   had to be filed derivatively.  *In re Charles Schwab Corp. Secs. Litigation*, 264 F.R.D. 531, 539
     (N.D. Cal. 2009).  But in YieldPlus, the gravamen of Plaintiff's complaint was plainly that
26   shareholders had the right to vote on any changes in that mutual fund's concentration limits.  *Id.*at
     534 n.2.  Here, in contrast, Plaintiff's few passing references to voting does not alter the
27   fundamental claim set forth in her complaint—she suffered lower investment returns because the
     Fund deviated from its investment policies.

28

1   alleged harm to shareholders which resulted from the misleading nature of the Proxy Statement

2   was separate and independent from the harm allegedly resulting to the Fund itself." *Id.*[6]

3          Judge Whyte recently reached the same conclusion in *Indiana Electrical Workers Pension*

4   *Trust Fund v. Dunn*, No. C-06-01711 RMW, 2007 WL 1223220, at *10 (N.D. Cal. Mar. 1, 2007).

5   In *Dunn*, shareholders asserted breach of fiduciary duty and breach of contract claims, alleging

6   they were denied the right to vote on a severance package awarded to former Hewlett-Packard

7   CEO Carly Fiorina.  Judge Whyte concluded these were derivative claims even though the

8   plaintiffs claimed they would have voted against the agreements had they been given the

9   opportunity.  He reasoned:  "[a]lthough plaintiffs argue that they have been injured because they

10  were not given their right to vote, the nature of their claims is essentially mismanagement of

11  corporate assets and derivative in nature."  *Id.*  Judge Whyte also noted that the alleged economic

12  harm was suffered by the corporation, and that "[h]ad the shareholders voted against any of the

13  severance or benefits given to Fiorina, the denied amounts would accrue to the corporation, not

14  directly to any shareholder."  *Id.* at *11.  Again, this authority is squarely on point and should be

15  followed here.  *Id.*; *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773

16  (Del. 2006) (although denial of voting rights was a direct claim, no damages could be recovered

17  by shareholders, as all economic harm was suffered by corporation); *In re Transkaryotic*

18  *Therapies, Inc.*, 954 A.2d 346, 362 (Del. Ch. 2008) (direct claim for denial of right to cast an

19  informed vote dismissed because no monetary damages could be awarded); *In re Worldcom, Inc.*,

20  323 B.R. 844, 856 (S.D.N.Y. Bankr. 2005) (shareholders' voting rights claims were derivative

21  because the "Court does not see how the right to vote, in this case, is differentiated from a

22

23  _____

24          [6]  *See also In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000
     WL 10211, at *1, *4 (S.D.N.Y. Jan. 6, 2000) (section 13(a) claim held to be derivative where
25  plaintiff alleged an "emphasis on risky, unstable and unproven micro-cap securities" made "the
     Funds perform[] poorly"); *Vogel v. Jobs*, No. C 06-5208 JF, 2007 WL 3461163, at *3 (N.D. Cal.
26  Nov. 14, 2007) (disclosure claim was derivative because "[p]laintiff has not identified a unique
     injury independent of any harm done to the corporation"); *In re Worldcom, Inc.*, 323 B.R. 844,
27  856 (S.D.N.Y. B.R. 2005) (voting rights claims were derivative where the "Court does not see
     how the right to vote, in this case, is differentiated from a diminution in value of the shares").

28

1    diminution in value of the shares"); *Halebian*, 2007 WL 2191819, at *12 (voting rights claim is

2    derivative where plaintiff did not allege any injury different from an injury to the fund).

3    **C.**    **Ms. Smit Failed to Comply with Rule 23.1**

4    Because her claim must be asserted derivatively, Ms. Smit was obligated to comply with

5    Rule 23.1, which imposes special procedural requirements on derivative claims. The key pre-suit

6    requirement is the making of a demand for relief. Ms. Smit was obligated to plead, in her

7    complaint, either the "effort [she made] to obtain the desired action" or "the reasons for not

8    making the effort." Fed. R. Civ. P. 23.1(b)(3).

9    Ms. Smit admittedly has not complied with these procedures. Ms. Smit did not plead her

10    claim as a derivative claim, and she did not comply with Rule 23.1. Her complaint should

11    therefore be dismissed.

12    **IV.**    **MS. SMIT LACKS STANDING TO BRING A 17200 CLAIM AND HER PRAYERS**

13    **FOR RESTITUTION AND DISGORGEMENT SHOULD BE DISMISSED**

14    Under Business & Professions Code Section 17204, a person lacks standing to bring a

15    claim under Section 17200 unless she "has suffered injury in fact and has lost money or property

16    as a result of [the] unfair competition" that is the subject of the claim. Bus. & Prof.Code § 17204.

17    A plaintiff also cannot bring a representative claim if she does not satisfy the standing

18    requirements in Section 17204. Bus. & Prof. Code § 17203. Because Ms. Smit has not lost any

19    money or property, she does not have standing to bring her claim or the claims of the purported

20    class and the court should dismiss the complaint in its entirety.

21    But even if she could establish standing, damages are not recoverable under Section 17200

22    and Ms. Smit is not entitled to restitutionary relief or disgorgement.[7] Ms. Smit has essentially

23    asked the court for damages in the form of lost profits—but she never had an ownership interest in

24    future investment profits, and Schwab never had those profits or took them away from her.

25    Moreover, she is not entitled to restitution—the appropriate remedy in Section 17200—because

26

27    [7]  Ms. Smit also seeks injunctive relief. (Compl., Prayer for Relief ¶ E.)

28

1  she has not "given up something . . . she was entitled to keep," *Feitelberg v. Credit Suisse First*

2  *Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005), and Schwab has not "wrongfully acquired

3  funds or property in which [she] has an ownership or vested interest," *id.*  Accordingly, even if the

4  Court were to find Ms. Smit has standing, then it should dismiss her prayers for restitution and

5  disgorgement, which are actually a disguised request for damages, leaving only her request for

6  injunctive relief.

7        **A.**  <u>**Ms. Smit Has Not Lost Money or Property and Therefore Has No Standing**</u>

8        To establish standing, Ms. Smit must allege that she "has lost money or property as a result

9  of [the] unfair competition."  Bus. & Prof. Code § 17204.  But a review of her complaint and

10  judicially noticeable facts shows that she has, in fact, lost nothing.

11        Ms. Smit alleges she purchased her initial fund shares in October 1998.  (Compl. ¶ 9.)  The

12  fund's share price that month fluctuated from between $10.49 and $10.21.  (Doolittle Decl. ¶ 4.)

13  Since then, those shares have earned $6.04 per share in dividends.  (*Id.* ¶ 6.)  From 1999 through

14  2009, annual dividends ranged from 35 cents to 68 cents per share—a return of about three to

15  seven percent annually based on her initial purchase price.  (*Id.* ¶ 7.)  Ms. Smit still owns those

16  shares.  (Compl. ¶ 9.)  At the close of business on September 3, 2010, the day Ms. Smit filed suit,

17  her shares were worth $9.35 per share.  (Doolittle Decl. ¶ 8.)  The dividends she received more

18  than made up for the small decline in principal.  In other words, as a result of her purchase of fund

19  shares, Ms. Smit enjoyed a net gain.  She therefore has not "lost money or property" as required

20  by Section 17204.

21        In addition to alleging she lost property, Ms. Smit must also allege any losses were the

22  "result" of Schwab's alleged deviation from the investment policy.  *See Hall v. Time, Inc.*, 158

23  Cal. App. 4th 847, 855, 70 Cal.Rptr.3d 466 (2008) (Section 17204 includes a "causation

24  requirement").  Naturally, since she has not lost anything, Schwab could not have caused any loss.

25  And if she argues that her initial payment of principal constitutes the loss at issue, Schwab's

26  alleged deviations from the investment policy could not have caused that loss because the

27  deviations happened well after her initial investment.  (*See* Compl. ¶¶ 55-62, 83) (initial

28  investment in 1998, alleged deviations in 2007).  Ms. Smit thus does not, and cannot, allege that

1  Schwab obtained her initial investment "as a result of" any violation of section 17200.  Bus. &

2  Prof. Code § 17204.  For this additional reason, Smit has failed to establish standing.  *See Watts v.*

3  *Enhanced Recovery Corp.*, 10-CV-2606 LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010)

4  (dismissing 17200 claim because plaintiff failed to show "any actual loss of money or property

5  *resulting from*" defendants' actions in violation of Section 17200) (emphasis added).

6      The court therefore should dismiss her complaint in its entirety.

7      **B.    Ms. Smit's Prayer for Restitution Should Be Dismissed**

8      Even if Ms. Smit did have standing under section 17204, she has not shown she is entitled

9  to restitution under section 17203, and the court should dismiss that request.[8]  Section 17203

10 allows a court to enter such equitable orders "as may be necessary to restore to any person in

11 interest any money or property, real or personal, which may have been acquired by means of such

12 unfair competition."  Bus. & Prof. Code § 17203.  By statute, then, restitution is available only to

13 "restore" to the plaintiff some property that was acquired by the defendant by means of a Section

14 17200 violation.

15     Property cannot be "restored" unless two requirements are met.  First, the plaintiff must

16 have "given up something he or she was entitled to keep."  *Feitelberg*, 134 Cal. App. 4th at 1012;

17 *see also Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005) ("in the context of the

18 UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an

19 ownership interest"); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099,

20 1122 (C.D. Cal. 2001) ("There is a difference between 'getting' and 'getting back.'").  Second, the

21 defendant must have obtained from the plaintiff some property, by means of a Section 17200

22

23 ───────────────

24     [8]  The California Supreme Court recently clarified that entitlement to restitution is not a
   question of standing, but only of remedy.  *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788-89
   (2010).  Still, the court may dismiss her request for restitution, leaving only her request for
25 injunctive relief, if it finds she is not entitled to it.  *See Watts*, 2010 WL 4117452, at *3 ("[T]o the
   extent Plaintiff seeks restitution, rather than injunctive relief, . . . she will be entitled to relief under
26 the UCL only if she can show" she meets the requirements of section 17203.); *see also Barrous v.
   BP P.L.C.*, No. 10-CV-2944 LHK, 2010 WL 4024774, at *6-7 (N.D. Cal. Oct. 13, 2010)
27 (defendant may move to dismiss request for relief "on grounds that such relief is unrecoverable as
   a matter of law").

28

violation, to which it is not entitled.  *Feitelberg*, 134 Cal. App. 4th at 1012 (restitution not available unless "a defendant has wrongfully acquired funds or property in which a plaintiff has an ownership or vested interest"); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338-39 (1998) ("section 17203 operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 131 Cal.Rptr.2d 29 (2003) ("an order for restitution is one compelling [a Section 17200] defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken").

Ms. Smit does not meet either requirement.  She has not identified any property that was improperly taken from her.  Indeed, she does not seek return of property at all.  She claims the fund "underperformed" its index, causing "investors to suffer a negative 12.64% differential in total return for the Fund compared to the Index."  (Compl. ¶¶ 5, 71.)  This "underperformance" allegedly "exposed the Fund and its shareholders to tens of millions of dollars in losses."  (*Id.* ¶ 5.)  Ms. Smit says she, and "other members of the Class," suffered "substantial damages" as a result of "losses in the Funds' value" and the fund's "deviation in performance from the Index," which she claims was "caused by the Fund's concentrated investments in non-agency CMOs."  (*Id.* ¶¶ 74, 96.)  Ms. Smit seeks recovery of "money damages in connection with losses in the Fund's value." (Id. ¶ 98.)  That is not restitution.  Ms. Smit never had "possession" of these higher profits and she never had any ownership interest in them.

And Ms. Smit has not identified any property, possessed by any of the defendants, that was improperly taken from her and which she seeks to have returned to her.  None of the defendants has possession of the hypothetical higher returns Ms. Smit says were denied her.  Thus, no defendant can "restore" those hypothetical higher returns to her.  *See, e.g., Feitelberg*, 134 Cal. App. 4th at 1016 (plaintiff could not recover "loss in value" of stocks where he alleged that Credit Suisse issued biased research reports because "plaintiff does not have an ownership interest in the money it seeks to recover from defendants") (*citing Korea Supply*, 29 Cal. 4th at 1149.)

If Ms. Smit's claimed lost investment profits are considered a compensable loss at all, they would be in the nature of "damages"—as she herself refers to them in the Complaint—and are not

1   recoverable as restitution under Section 17200.  *First Alliance Mortgage Co. v. Lehman*

2   *Commercial Paper, Inc.*, 471 F.3d 977, 996 (9th Cir. 2006); *Korea Supply*,  29 Cal. 4th at 1148-50

3   ("it is well established that individuals may not recover damages" under Section 17200; the

4   "Legislature did not intend to authorize courts to order monetary remedies other than restitution").

5   In fact, Ms. Smit's counsel admitted in the *Yield Plus* action that the theory of recovery Ms. Smit

6   seeks here—investment profits she claims she would have earned had Schwab not deviated from

7   its investment policies—is not restitution, but rather unrecoverable damages.  Plaintiffs' Reply to

8   Daifotis Outline of Arguments Against Plaintiffs' Section 17200 Claim, filed June 29, 2009, at 1

9   (attached to Doolittle Decl. as Exh. 4) ("it is true that Plaintiffs cannot recover damages under the

10  UCL, such as investment profits they would have made had the investment policy not changed").

11  Judge Alsup relied on this concession in certifying a 17200 class claim for California residents.  *In*

12  *re Charles Schwab Corp. Securities Litigation*, 264 F.R.D. 531, 539 (N.D. Cal. 2009).

13       Ms. Smit might argue that she seeks restitution of her initial investment in the fund.  That

14  is not, however, what her complaint says.  In any event, any theory of loss based on the initial

15  investment would suffer from a fatal flaw.  Ms. Smit did not, in fact, suffer any loss of that initial

16  investment at all.  *See supra* section IV(A).  The dividends she received over time more than made

17  up for any small declines in principal.  *Id.*

18       Ms. Smit's claim for lost investment profits is not a claim for the return of something she

19  once owned and was taken from her by defendants in violation of Section 17200.  Because she has

20  not alleged the loss of money or property that could be the basis for restitution, or that resulted

21  from the alleged violation of Section 17200, Ms. Smit's prayer for restitution should be dismissed.

22  *See Watts*, 2010 WL 4117452, at *3 (on motion to dismiss, noting plaintiff only entitled to

23  restitutionary relief if plaintiff met the requirements of Section 17203).

24            **C.    Ms. Smit's Prayer for Disgorgement Should Also Be Dismissed**

25       Ms. Smit's prayer for disgorgement, (Compl. Prayer for Relief ¶ C), is coextensive with

26  her prayer for restitution and, for the same reasons, should also be dismissed.  *Nelson v. Pearson*

27  *Ford Co.*, 186 Cal. App. 4th 983, 1015 (2010) ("[D]isgorgement of money obtained through an

28  unfair business practice is an available remedy in a representative action only to the extent that it

1  constitutes restitution."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152

2  (2003) ("We hold that nonrestitutionary disgorgement of profits is not an available remedy in an

3  individual action under the UCL.").

4  **V.    ALLEGATIONS IN MS. SMIT'S COMPLAINT RELATING TO THE CHANGE IN**

5  **CONCENTRATION POLICY SHOULD BE DISMISSED BECAUSE THE**

6  **STATUTE OF LIMITATIONS HAS EXPIRED**

7        Part of Ms. Smit's claim rests on an alleged change to the Fund's concentration policy,

8  purportedly in violation of section 13(a) of the Investment Company Act.  (*See* Compl. ¶¶ 79–83,

9  94(b).)  This portion of the complaint and any related allegations must be dismissed because the

10  statute of limitations for that alleged violation has already expired.

11        The statute of limitations for a Section 17200 claim is four years and, unless equitably

12  tolled, it begins to run upon the claim's accrual.  *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm*, 96

13  Cal. App. 4th 884, 891 (2002), Cal. Bus. & Prof. Code § 17208.  The alleged change to the

14  concentration policy occurred on September 1, 2006—that is when the claim accrued.  (Compl. ¶

15  81).  Ms. Smit filed suit over four years later on September 3, 2010, and the Complaint does not

16  allege equitable tolling or any facts that would support equitable tolling.  Accordingly, she filed

17  her suit after the limitations period had expired and the claim related to the alleged change in

18  concentration policy should be dismissed.  *Groce v. Claudat*, No. 09cv1630, 2010 WL 3339406,

19  at *2 (S.D. Cal. Aug. 24, 2010) (dismissing portion of UCL claim which occurred more than four

20  years before filing).

21  **VI.   NEITHER CHARLES SCHWAB & CO. INC. NOR CHARLES SCHWAB**

22  **INVESTMENT MANAGEMENT INC. CAN BE LIABLE UNDER PLAINTIFF'S**

23  **§ 17200 THEORY**

24        Ms. Smit bases her "unlawful" Section 17200 claim exclusively on an alleged violation of

25  section 13(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a-13(a).  (Compl. ¶ 95.)

26  Liability for "unlawful" conduct under Section 17200 is, however, solely derived from a violation

27  of the underlying statute.  *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th

28  1050, 1060 (2005); *Gonzalez v. First Franklin Loan Servs.*, No. 1:09-CV-00941 AWI-GSA, 2010

U.S. Dist. LEXIS 1657, at *42 (E.D. Cal. Jan. 9, 2010).  Section 17200 cannot be used to expand the class of defendants to people who are otherwise not subject to the underlying statute.

Section 13(a) prohibits certain acts only by a "registered investment company."  It does not purport to cover any other persons.  15 U.S.C. § 80a-13(a)(1)–(a)(4).  By its terms, then, only a registered investment company can engage in conduct that violates section 13(a).  15 U.S.C. § 80a-13(a).

Ms. Smit does not allege precisely which defendant is a registered investment company, though she does allege who is not.  Charles Schwab & Co., Inc., a registered broker-dealer, is alleged to be the "underwriter and distributor for shares of the Fund" and the parent company of Schwab Investments.  (Compl. at ¶ 10.)  Charles Schwab Investment Management, Inc. is alleged to be the Fund's "Investment Advisor," and is in fact a registered investment advisor.  (*Id.* ¶ 11.)  Neither one, obviously, is—or can be alleged to be—a registered investment company.

Because Schwab & Co. and Schwab Investment Management cannot violate Section 13(a), Smit has no "unlawful" violation upon which to base her derivative Section 17200 claim against them.  *See Ingels*, 129 Cal. App. 4th at 1060; *Gonzalez*, 2010 U.S. Dist. LEXIS 1657, at *42-43.  Smit cannot plead around section 13(a)'s bar to relief by recasting her claim under Section 17200.  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition") (*citing Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 188 (1999)).  Accordingly, Smit's claim against Schwab & Co. and Schwab Investment Management should, under any circumstances, be dismissed with prejudice.

1

## Conclusion

2        For the foregoing reasons, defendants' motion to dismiss should be granted.

3

4    DATED:  November 10, 2010                RICHARD A. SHIRTZER
                                              KARIN KRAMER
5                                             PATRICK C. DOOLITTLE
                                              QUINN EMANUEL URQUHART & SULLIVAN,
6                                             LLP

7                                             DARRYL P. RAINS
8                                             EUGENE ILLOVSKY
                                              CRAIG D. MARTIN
9                                             MORRISON & FOERSTER LLP

10

11                                            By _____

12                                               Richard A. Schirtzer
                                                 Attorneys for Defendants
13                                               Charles Schwab & Co., Inc., Schwab Investments,
                                                 and Charles Schwab Investment Management, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28