RICHARD A. SCHIRTZER (Bar No. 150165)
richardschirtzer@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KARIN KRAMER (Bar No. 87346)
karinkramer@quinnemanuel.com
PATRICK DOOLITTLE (Bar No. 203659)
patrickdoolittle@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for defendants Charles Schwab & Co., Inc.,
Schwab Investments, and Charles Schwab Investment Management, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| JERRY SMIT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC., SCHWAB INVESTMENTS and, CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>Defendants. | Case No.     10-cv-3971 LHK<br><br>CLASS ACTION<br><br>**SCHWAB DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:  March 3, 2011<br>Time:  1:30 p.m.<br>Court: Hon. Lucy Koh |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ................................................................................. 1

I.      INTRODUCTION ................................................................................. 2

II.     STATEMENT OF FACTS ....................................................................... 3

III.    ARGUMENT ....................................................................................... 4

    A.      Plaintiff's Complaint Must Be Dismissed Because Her UCL Claim Is Defective In Every Respect:  It Lacks A Predicate Violation, An Available Remedy, And A Plaintiff With Standing To Assert The Claim ............................... 4

        1.      Plaintiff May Not Borrow Section 13(A) Of The ICA As A Predicate To Her Unlawfulness Claim Because Enforcement Of Section 13(A) Is Entrusted To The SEC ........................................ 4

        2.      The FAC Must Be Dismissed Because The Only Remedies Authorized By The UCL Are Not Implicated By Plaintiff's Claim ............ 7

        3.      Ms. Smit Lacks Standing Under The UCL ................................. 10

    B.      The Securities Litigation Uniform Standards Act Bars Ms. Smit's Section 17200 Claim ..................................................................................... 12

        1.      Ms. Smit Asserts A "Covered Class Action" Based On State Law With Respect To "Covered Securities" ....................................... 12

        2.      Ms. Smit's Complaint Alleges Misstatements And Omissions In Connection With The Purchase Or Sale Of Fund Shares .......................... 13

        3.      The Alleged Misstatements Were Made "In Connection With" The Purchase Or Sale Of Fund Shares .............................................. 15

    C.      Ms. Smit's Claim Must Be Asserted Derivatively In Compliance With Rule 23.1 ......................................................................................... 16

        1.      Ms. Smit's Claim Must Be Asserted Derivatively ....................................... 17

        2.      Ninth Circuit Authority Confirms That A Claim For Decline In Value Of Mutual Fund Shares Is Derivative In Nature .............................. 19

    D.      Ms. Smit's Complaint Is Barred By The UCL's Four Year Statute Of Limitations ....................................................................................... 21

    E.      Neither Charles Schwab & Co. Inc. Nor Charles Schwab Investment Management Inc. Can Be Liable Under Plaintiff's § 17200 Theory ...................... 22

IV.     CONCLUSION .................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Cases</u>

4

*Atkinson v. Morgan Asset Management, Inc.,*
   664 F. Supp. 2d 898 (W.D. Tenn. 2009) .................................................................14

5

*Ballard v. Chase Bank USA,*
6   2010 U.S. Dist. LEXIS 130097 (S.D. Cal. 2010) ....................................................6

7   *Bellikoff v. Eaton Vance Corp.,*
   481 F.3d 110 (2d Cir. 2007) ...................................................................................22

8

*Blue Chip Stamps v. Superior Court,*
9   18 Cal. 3d 381 (1976) .............................................................................................10

10  *In re Charles Schwab Corp. Secs. Litigation,*
   264 F.R.D. 531 (N.D. Cal. 2009) ...........................................................................19

11

*Cortez v. Purolator Air Filtration Products Co.,*
12   23 Cal. 4th 163 (2000) .............................................................................................8

13  *Crimi v. Barnholt,*
   No. C 08-02249, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ...........................16

14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.,*
15   No. 98 Civ. 4318 (HB), 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000) ...................18, 20

16  *In re Edward Jones Holders Litig.,*
   453 F. Supp. 2d 1210 (C.D. Cal. 2006) ..................................................................16

17

*Everett v. Bozic,*
18   No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006) ...............17

19  *Feitelberg v. Credit Suisse First Boston, LLC,*
   134 Cal. App. 4th 997 (2005) ........................................................................7, 9, 10

20

*Feitelberg v. Merrill Lynch & Co.,*
21   234 F. Supp. 2d 1043 (N.D. Cal. 2002) ...................................................9, 10, 12, 13

22  *Felton v. Morgan Stanley Dean Witter & Co.,*
   429 F. Supp. 2d 684 (S.D.N.Y. 2006) ....................................................................13

23

*Ferrington v. McAfee, Inc.,*
24   2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .....................................................4, 5, 6

25  *Fiedler v. Clark,*
   714 F.2d 77 (9th Cir. 1983) ......................................................................................6

26

*In re First Alliance Mortgage Co.,*
27   471 F.3d 997 (9th Cir. 2006) ....................................................................................8

28

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) ..............................................................16, 17, 18

*Gonzalez v. First Franklin Loan Servs.*,
   2010 U.S. Dist. LEXIS 1657 (E.D. Cal. Jan. 9, 2010)..................................................21

*Groce v. Claudat*,
   2010 WL 3339406 (S.D. Cal. Aug. 24, 2010) ...............................................................21

*Halebian v. Berv*,
   631 F. Supp. 2d 284 (S.D.N.Y. 2007) ...........................................................................20

*Halebian v. Berv*,
   457 Mass. 620 (2010) ....................................................................................................16

*Halebian v. Berv*,
   590 F.3d 195 (2nd Cir. 2009) ........................................................................................17

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847, 70 Cal.Rptr.3d 466 (2008) .......................................................11

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................................................18

*Hartless v. Clorox Co.*,
   2007 U.S. Dist. LEXIS 81686 (S.D. Cal. 2007) .............................................................6

*Indiana Electrical Workers Pension Trust Fund v. Dunn*,
   2007 WL 1223220 (N.D. Cal. Mar. 1, 2007)...........................................................20, 21

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ......................................................................................21

*In re J.P. Morgan Chase & Co. Shareholder Litig.*,
   906 A.2d 766 (Del. 2006)..........................................................................................20, 21

*Jackson v. Stuhlfire*,
   547 N.E.2d 1146 (Mass. App. Ct. 1990)..................................................................17, 18

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002)...........................................................................13

*Korea Supply Co. v. Lockeed Martin Corp.*,
   29 Cal. 4th 1134 (2003)..............................................................................................8, 9

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000)..............................................................................16, 19, 20

*Levy v. JP Morgan Chase*,
   2010 U.S. Dist. LEXIS 118232 (S.D. Cal. 2010) ...........................................................6

*Lozano v. AT&T Wireless*,
   504 F.3d 718 (9th Cir. 2007).............................................................................................8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006)..........................................................................................11, 15

*U.S. Mortgage, Inc. v. Saxton*,
   494 F.3d 833 (9th Cir. 2007)...........................................................................12, 15

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005)...........................................................17, 18

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010)....................................................................................9

*Northstar Financial Advisorys, Inc. v. Schwab Investments*,
   615 F.3d 1006 (9th Cir. 2010)..................................................2, 4, 5, 6, 7, 22

*Proctor v. Vishay Intertechnology Inc.*,
   584 F.3d 1208 (9th Cir. 2009).........................................................................13, 15

*Reid v. Google, Inc.*,
   155 Cal. App. 4th 1342 (2007)...................................................................................8

*Rowinski v. Salomon Smith Barney, Inc.*,
   398 F.3d 294 (3d Cir. 2005)....................................................................................13

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006)....................................................................22

*Sarin v. Ochsner*,
   721 N.E.2d 932 (Mass. App. Ct. 2000)...................................................................17

*Siemers v. Wells Fargo & Co.*,
   No. C 05-4518, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006)...........................23

*Simon v. Stang*,
   2010 WL 1460430 (N.D. Cal. Apr. 12, 2010) ..........................................13, 14, 15

*Smith v. Waste Mgmt., Inc.*,
   407 F.3d 381 (5th Cir. 2005)...................................................................................18

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm*,
   96 Cal. App. 4th 884 ...............................................................................................21

*Stoody-Broser v. Bank of America, N.A.*
   No. C 08-2705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009)............................14

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998).................................................................................................7

*Summit Tech, Inc. v. High-Line Medical Instruments Co.*,
   922 F. Supp. 299 (C.D. Cal. 1996).............................................................................6

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008)......................................................................................7

*In re Transkaryotic Therapies, Inc.*,
   954 A.2d 346 (Del. Ch. 2008)..................................................................21

*Vogel v. Jobs*,
   No. C 06-5208 JF, 2007 WL 3461163 (N.D. Cal. Nov. 14, 2007) ...........20

*Walker v. USAA Casualty Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) .....................................................8

*Watts v. Enhanced Recovery Corp.*,
   2010 WL 4117452 (N.D. Cal. Oct. 19, 2010) ...........................................11

*In re Worldcom, Inc.*,
   323 B.R. 844 (S.D.N.Y. B.R. 2005)....................................................20, 21

## <u>Statutes</u>

15 U.S.C. §§ 80a-13(a)..................................................................................21

15 U.S.C. § 77r(b)(2) ....................................................................................12

15 U.S.C. § 78bb(f)(1) ..................................................................................12

15 U.S.C. § 78bb(f)(1)(A) ......................................................................13, 15

15 U.S.C. § 78bb(f)(5)(B)(II) .......................................................................12

15 U.S.C. § 80a-13(a) ...................................................................................22

15 U.S.C. § 80a-13(a)(1)-(a)(4) ....................................................................22

15 U.S.C. § 80a-2(a)(3) .................................................................................22

15 U.S.C. § 80a-17 ........................................................................................22

15 U.S.C. 80a-35(b) ......................................................................................22

15 U.S.C. § 80a-47(a).........................................................................7, 21, 22

Cal. Civil Code § 2923.6 ................................................................................6

California Business & Professions Code § 17200 ................................. passim

California Business & Professions Code § 17203 .........................................10

California Business & Professions Code § 17204 ...................................10, 11

Fed. R. Civ. P. Rule 23.1...........................................................................16, 17

Fed. R. Civ. P. Rule 23.1(b)(3) .....................................................................17

## Notice Of Motion And Motion To Dismiss Complaint

PLEASE TAKE NOTICE that on March 3, 2011 at 1:30 p.m., in the United States Courthouse, 280 South 1st Street, San Jose, CA 95113, before the Honorable Lucy H. Koh, Defendants Charles Schwab & Co., Inc., Schwab Investments, and Charles Schwab Investment Management, Inc. ("the Schwab Defendants") will and hereby do move the Court for an order dismissing the First Amended Complaint ("FAC") with prejudice or, in the alternative, dismissing Plaintiff's prayers for restitution and disgorgement.  This motion is based on the following points and authorities, the accompanying Request for Judicial Notice, the accompanying declaration of Patrick C. Doolittle, the pleadings and other documents filed in this action, and any arguments or evidence made during the scheduled motion hearing.

## Statement Of Issues

1)  Should Plaintiff's FAC be dismissed with prejudice because it asserts a single count for violation of the unlawfulness prong of California Business & Professions Code § 17200 ("UCL") and relies for its predicate unlawful act on Section 13a of the Investment Company Act ("ICA"), for which there is no private right of action?

2)  Should Plaintiff's complaint be dismissed with prejudice because the remedies available under the UCL are not implicated by the claim she has alleged?

3)  Does Plaintiff have standing to assert her claim under the UCL even though she has made money on her investment and therefore cannot satisfy the UCL standing requirement to show a loss of money or property?

4)  Should the Court dismiss the FAC because the purported 17200 class action is barred by the Securities Litigation Uniform Standards Act?

5)  Must Plaintiff's claims, all of which allege damages based on a decline in value of shares in the fund, be asserted derivatively rather than as direct claims?

6)  Should Plaintiff's claims relating to events that occurred over four years before filing be dismissed as expired?

7)      Should the claims against Charles Schwab & Co., Inc. and Charles Schwab Investment Management, Inc. be dismissed because they are not registered investment companies and therefore are not subject to Section 13(a) of the ICA?

## I.      INTRODUCTION

Jerry Smit, an investor in the Schwab Total Bond Market Fund (the "Fund"), withdrew her original complaint and filed her First Amended Complaint after the Schwab Defendants filed a Motion To Dismiss.  As before, Ms. Smit seeks to assert a single claim under the "unlawfulness" prong of California's UCL on behalf of a nationwide class of investors.  And, as before, Ms. Smit relies entirely for her claim of unlawfulness on an alleged violation of  Section 13(a) of the ICA, notwithstanding that the Ninth Circuit has held there is no private right of action under Section 13(a) because "Congress expressly authorized the SEC to enforce all aspects of the Act" and "intended to preclude other methods of enforcement."  *Northstar Financial Advisorys, Inc. v. Schwab Investments,* 615 F. 3d 1006, 1116, 1117 (9th Cir. 2010).

Although Plaintiff has tinkered with some of the language of her complaint, the crux of it remains that the Fund "deviated from its fundamental investment policy" by investing too much of the Fund's assets in mortgage-backed securities—specifically, a type of mortgage-backed securities called "non-agency collateralized mortgage obligations" without first obtaining shareholder approval.  (FAC ¶¶ 2, 3, 4.)  Ms. Smit alleges that she has "sustained damages in connection with losses in the Fund's value" as a result of the challenged conduct."  (FAC ¶ 89.) While not changing the basis for her claim, Plaintiff nevertheless changed some of the language, principally deleting words of misstatement and omission, presumably to mask the fact that her claim is pre-empted by SLUSA (the Securities Litigation Uniform Standards Act).  For example, Ms. Smit deleted words like "stated" (Dkt. 1, former ¶ 3) and "Promised" (*id.,* former Section C). as well as phrases such as "Nor did defendants inform investors . . ." (*id.,* former ¶ 66), among others.

Nothing Plaintiff has added or subtracted by way of amendment changes the fact that her claim cannot be sustained as a matter of law.  Plaintiff's 17200 claim should be dismissed with prejudice for each of the following reasons:

- Plaintiff cannot allege a valid claim under the UCL because she cannot meet any of the requirements of the statute: her predicate claim of violation of Section 13(a) of the ICA cannot form the basis for a UCL action, she has not pled facts giving rise to the only remedies the UCL has to offer (restitution, disgorgement, and injunctive relief), and she has no standing because judicially noticeable facts show that she has not lost money or property;

- Despite deleting tell-tale words, her claim is still barred by SLUSA because it is based on misrepresentations and omissions in connection with the purchase of covered securities;

- Because the gravamen of Plaintiff's complaint is that the Fund was mismanaged when it deviated from its stated investment policies, and that shareholders suffered lower investment returns as a result, Plaintiff does not allege an injury that is distinct from that suffered by shareholders generally, and her claim must be asserted as a derivative claim;

- Plaintiff failed to file suit within four years of September 1, 2006, the date the Fund allegedly improperly changed its concentration policy.  Accordingly, any 17200 claim based on that alleged deviation from the Fund's concentration policy is time barred; and

- No claim can be asserted against Defendants Charles Schwab & Co., Inc. or Charles Schwab Investment Management, Inc. because, even if there were a private right of action under Section 13a, they would not be proper defendants, and there is no private right of action under Section 48(a) of the ICA, which Plaintiff relies on to impose liability on these defendants for allegedly indirectly causing the losses she alleges.

## II.   STATEMENT OF FACTS

Plaintiff Jerry Smit is a Colorado resident.  (FAC ¶ 9.)  She first invested in the Schwab Total Bond Fund (the "Fund") in October 1998.  (*Id.*)  Starting on November 15, 2002, for the first time the Fund began to consider "mortgage-backed securities issued by private lenders" to be an "industry" subject to the Fund's 25% concentration limit.  (Declaration of Patrick C. Doolittle in Support of Motion to Dismiss ("Doolittle Decl."), Exh. 1, Nov. 15, 2002 Statement of Additional Information, at 10.)  On September 1, 2006, the Fund's Statement of Additional Information was amended to remove "mortgage-backed securities issued by private lenders" as an industry subject to the Fund's 25% concentration limit.  (FAC ¶ 66.)  Ms. Smit continued to maintain her investments in the Fund, at least until she filed suit (FAC ¶ 9) which was not until September 3, 2010.

1   Ms. Smit's complaint alleges throughout that the basis of her suit is the Fund's "deviat[ion]

2   from its fundamental investment objective" or "policy." (FAC ¶¶ 2-5, 55, 78(a) and 85-87.) Ms.

3   Smit alleges that she and others have suffered "losses" or "damages" in connection with declines

4   in the Fund's value resulting from the Fund's deviation from its fundamental investment policies.

5   (FAC ¶¶ 5, 89.)

6   Ms. Smit admits that, from August 1997 through August 2007, the Fund substantially

7   performed as represented, with an annualized return of 5.75%. (FAC ¶ 60.) Moreover, on any

8   Fund shares she held continuously from October 1998, Ms. Smit's total return as of the date this

9   suit was filed would be about 48%. (Doolittle Decl. ¶ 8.) Overall, Ms. Smit has profited from her

10  investment in the Fund.

11  **III.    ARGUMENT**

12          **A.    Plaintiff's Complaint Must Be Dismissed Because Her UCL Claim Is Defective
                   In Every Respect: It Lacks A Predicate Violation, An Available Remedy, And
13                 A Plaintiff With Standing To Assert The Claim**

14                 **1.    Plaintiff May Not Borrow Section 13(A) Of The ICA As A Predicate To
                          Her Unlawfulness Claim Because Enforcement Of Section 13(A) Is
15                        Entrusted To The SEC**

16          This Court recently explained the three-part nature of the UCL in *Ferrington v. McAfee,*

17  *Inc.*, 10-cv-1455 LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010). A Plaintiff may sue for

18  business practices that are unlawful, unfair, or deceptive. Where, as here, Plaintiff has grounded

19  her claim in the "unlawfulness" prong of the UCL, she may "'borrow' violations of other laws and

20  treat them as unfair competition that is independently actionable." *Id.* at *14. Here, Plaintiff seeks

21  to borrow Section 13(a) of the ICA.

22          Not all claims may be borrowed, however. The UCL is not a vehicle to create a private

23  right of action under statutes where there otherwise is no such a right and where the legislature has

24  sought a uniform approach to the statute by entrusting its enforcement exclusively to a regulatory

25  body and precluding other forms of enforcement. *Id.* at *14. In a case addressing the same

26  practice on which Plaintiff bases her Amended Complaint, i.e., changing an investment policy

27  without a shareholder vote, the Ninth Circuit recently announced that there is no private right of

28  action under Section 13(a) of the ICA, the statute that allegedly requires the vote. *Northstar*, 615

1   F. 3d 1106.  The only conclusion that is consistent with and fully respects the decision in

2   *Northstar* is that Plaintiff may not borrow Section 13(a) and use it as the basis for her claim that

3   the absence of a vote violates the unlawfulness prong of the UCL.

4          The Court's reasoning in *Northstar* leaves no doubt that permitting the UCL to privatize

5   what Congress left to the SEC would conflict with Congressional intent:  "Congress expressly

6   authorized the SEC to enforce all of the provisions of the [ICA] by granting the Commission

7   broad authority to investigate suspected violations; initiate actions in federal court for injunctive

8   relief or civil penalties; and create exemptions from compliance with any ICA provision,

9   consistent with the statutory purpose and the public interest."  *Id.* at 1116.  In other words, the

10  SEC has all of the machinery it needs to enforce the law *and* to determine if there are instances

11  where the law as written should not be enforced.  The Court went on to state that these powers

12  should belong to the SEC alone:  "This thorough delegation of authority to the SEC to enforce the

13  ICA strongly suggests Congress intended to preclude other methods of enforcement."  *Id.* at 1116–

14  1117.  In reaching its conclusion, the Ninth Circuit also pointed out that the Second Circuit was in

15  accord, and that it too had reasoned that "the purpose and structure of the entire Act is grounded

16  upon enforcement by the SEC, not on private enforcement."  *Id.* at 1108.

17         These strong statements leave no room for the private enforcement of Section 13(a) that

18  Plaintiff seeks here.  Defendants acknowledge that there are some circumstances where the UCL

19  may borrow a statute for which there is no private right of action.  But such circumstances do not

20  include instances where "a statute indicates that exclusive enforcement authority shall lie with the

21  government and explicitly precludes private enforcement . . ."  *Ferrington¸* 2010 WL 3910169, at

22  *14.

23         *Ferrington* provides a clear illustration of how the line should be drawn between what is

24  and is not a suitable candidate for UCL borrowing.  In *Ferrington*, the Court compared three

25  statutes to determine whether the Lanham Act could serve as a UCL predicate for plaintiffs who

26  had no independent Lanham Act claims themselves.  *Id.* at *15.  The two statutes other than the

27  Lanham Act that the Court discussed were the FDCA (Federal Food Drug and Cosmetic Act), and

28  FIFRA (Federal Insecticide, Fungicide, and Rodenticide Act).  The Court distinguished the

1    Lanham Act from the other statutes on the basis that the Lanham Act did not create a

2    "comprehensive regulatory regime[s] that place[d] enforcement authority exclusively in the

3    government."  *Id.* at *14–15 (relying on *Summit Tech, Inc. v. High-Line Medical Instruments Co.*,

4    922 F. Supp. 299 (C.D. Cal. 1996), which addressed FDCA, and *Hartless v. Clorox Co.*, 2007

5    U.S. Dist. LEXIS 81686 (S.D. Cal. 2007), which addressed FIFRA).  The fact that FIFRA and the

6    FDCA came with such regulatory regimes meant they could not be borrowed for UCL purposes;

7    alternatively, the fact that the Lanham created no such regime meant that it could be deployed as a

8    UCL predicate.  *Ferrington*, 2010 WL 3910169 at *14–15.  The Ninth Circuit's discussion of the

9    ICA  in *Northstar*  makes clear that Section 13(a) is on the same side of the line as the FDCA and

10   FIFRA.  615 F.3d at 1115-1122.

11        *Ferrington* stands among ample good company.  In  *Hartless*, 2007 U.S. Dist. LEXIS

12   81686, the Court considered two statutes and found one could serve as a UCL predicate and one

13   could not.  As noted, one of the statutes was FIFRA, which came with a federal regulatory scheme

14   attached and was found to bar private actions.  *See Fiedler v. Clark*, 714 F. 2d 77, 79 (9th Cir.

15   1983) (rejection of private actions in legislative history).  The other statute considered in *Hartless*

16   was the Song-Beverly Act, a California state statute which previous case law had found was

17   "broadening a consumer's remedies" and had "no statutory or case authority" that barred its use as

18   a UCL predicate.  *Hartless*, 2007 U.S. Dist. LEXIS 81686, at *13, *15-*16.  The FDCA was

19   found to contain an express bar to private action by the Court in *Summit Tech* because it provided

20   that "all such proceedings" to enforce the Act "shall be by and in the name of the United States."

21   922 F. Supp. at 305.  In *Levy v. JP Morgan Chase*, 2010 U.S. Dist. LEXIS 118232 (S.D. Cal.

22   2010), the District Court again looked at a federal statute known to have a regulatory framework

23   behind it, the Federal Trade Commission Act, and held that because it had no private right of

24   action plaintiff could not allege a claim for relief under the UCL based on it.  *Id.* at *2-*3.  And in

25   *Ballard v. Chase Bank USA*, 2010 U.S. Dist. LEXIS 130097 (S.D. Cal. 2010), the District Court

26   considered Cal. Civil Code § 2923.6, a statute requiring loan servicers to maximize net present

27   value under their pooling and servicing agreements for the benefits of all parties in a loan pool,

28   and found no private right of action in borrowers.  It then concluded that the statute could not be

borrowed to state a UCL unlawfulness claim.  *Id.* at *7-*9.  As a group, these cases show that an indication that a statute "explicitly precludes private enforcement" can be found in various sources.  The Ninth's Circuit's final statement on the matter in *Northstar*, that "the job of enforcement remains exclusively with the SEC," 615 F.3d at 1122, made after considering the language, structure, and legislative history of the ICA, together with its conclusion that other methods of enforcement were precluded, represents such an indication.

   *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (1998), the seminal case to permit a UCL action based on a statute that does not afford a private right of action, by no means authorized such a result in every instance.  The statute at issue there was a provision of the state penal code.  The Court found that "California's unfair competition statutes have always expressly provided" for civil actions to enforce penal laws.  *Id.* at 567.  It further pointed out that civil actions as a matter of course "lie in favor of crime victims" and were "generally actionable even though no specific civil remedy is provided in the criminal statute."  *Id.* at 572.  As the cases cited above demonstrate, the instances in which such an expansion of rights into the private sphere may be permitted are limited, and do not include federal statutes where enforcement has been turned over to a regulatory body under a comprehensive regulatory scheme designed to ensure uniform treatment.[1]

   **2.    The FAC Must Be Dismissed Because The Only Remedies Authorized By The UCL Are Not Implicated By Plaintiff's Claim**

   The relief authorized under the UCL is limited to the equitable remedies of restitution, including restitutionary disgorgement, and injunctive relief.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008).  A plaintiff cannot both rely on the UCL, and thereby bypass more stringent requirements of proving a tort claim, while simultaneously claiming the right to obtain tort damages.  The UCL was never meant to be an "all-purpose substitute" for

_____

   [1]  Plaintiff's citation to section 48(a) of the ICA (15 U.S.C. § 80a-47(a)), FAC ¶ 84, which imposes liability on anyone who "directly or indirectly" causes violations of the ICA is immaterial because there is no private right of action under Section 48(a) either.  *See Northstar*, 615 F.3d at 1116, 1122.

tort and contract claims. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1017 (2005). A plaintiff who has no claim to restitution and no claim to injunctive relief also has no basis for a claim under the UCL. Ms. Smit's claim fails because she has alleged no right to obtain either form of available UCL relief.

Restitution is not merely another word for "damages." California courts have been insistent about the scope of monetary relief available under the UCL, and have strictly limited it to the return of money or property that originally belonged to the plaintiff and is now in the hands of the defendant, either through direct transfer, transfer by a third party (as in the indirect purchaser context), or transfer by virtue of an in-kind provision of services. *See, e.g., Korea Supply Co. v. Lockeed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Lozano v. AT&T Wireless*, 504 F. 3d 718, 733 (9th Cir. 2007) (plaintiff class could obtain value of "anytime minutes" that they purchased and which AT&T took back through improper practices); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178 (2000). Neither a contingent interest in funds, nor an expectancy interest, is sufficient for restitution. *See Walker v. USAA Casualty Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007) (contingent interest in obtaining auto body repair work from insurance company is not vested interest for purposes of UCL restitution); *Reid v. Google, Inc.*, 155 Cal. App. 4th 1342 (2007) (unvested stock options of terminated employee may not be claimed as restitution under UCL). As these cases illustrate, a plaintiff cannot demand "restoration" of something she never had: a defendant cannot "restore" something it did not obtain from the plaintiff. Thus, even where the challenged conduct fits within the forms of conduct proscribed by the UCL, the plaintiff still needs to be eligible for the specific UCL remedies to maintain a claim under the statute. *In re First Alliance Mortgage Co.*, 471 F.3d 997, 996 (9th Cir. 2006) (fraudulent lending practices did not give rise to UCL remedies).

A claim for restitutionary recovery is nowhere found in plaintiff's complaint. There is no allegation that plaintiff gave something to Schwab as a result of the alleged unlawful conduct (changing the concentration policy without a vote). Schwab cannot "restore" something it never obtained. Nor is there any allegation that Schwab obtained anything from plaintiff as a result of that conduct. What the complaint alleges instead is loss on both sides – loss to plaintiff, loss to the

funds. The complaint describes "losses from a sustained decline in value" (FAC ¶ 5), "negative total return" (*id.*), losses to those who owned shares at the time (FAC ¶¶ 6, 74) and "substantial injuries in connection with losses in the Funds' value . . ." (FAC ¶ 87.) Plaintiff refers to the loss she allegedly suffered as "damages" and in classic damages language: "As a proximate result of the defendants' wrongful conduct, Plaintiff sustained damages in connection with losses in the Fund's value that resulted from the Fund's deviation from its stated fundamental investment policies." (FAC ¶ 89.) Even the prayer for relief fails to identify any specific monies which plaintiff believes was obtained from her or by Schwab. It merely asks, in rote terms, for restoration of "any money that may have been obtained . . ." *Prayer,* ¶ B. But the complaint describes no money that was "obtained."

*Feitelberg* dismissed a similar claim. There, too, the plaintiff was a purported class of investors who held stock at the time of the challenged conduct -- biased stock research reports, issued to gain favor with investment banking clients that failed to afford investors a sound basis for evaluating their investments. Pointing out that the "offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep," the Court went on to find that the relief requested was not restitutionary. 134 Cal. App. 4th at 1012, 1019, 1021 (also noting that similar claim, on behalf of holders rather than purchasers or sellers, was rejected in another case, *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043 (N.D. Cal. 2002)). The same result should obtain here.

Plaintiff's claim for disgorgement is similarly infirm. She asks for an order "[d]isgorging from defendants for the benefit of the Class any management or other fees forfeited by defendants' deviation from the Fund's fundamental investment objectives." *Prayer*, ¶ C. To begin with, the prayer is unintelligible. Defendants cannot discern what "forfeited" fees plaintiff is referring to; there is no reference to inappropriately obtained fees anywhere in the body of the complaint or any allegation that fees were charged or increased in connection with the change in concentration policy that is identified as the UCL violation. In any event, disgorgement must also be restitutionary in nature: "disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution.

1  *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1015 (2010); *Korea Supply*, 29 Cal. 4th at

2  1152 ("We hold that nonrestitutionary disgorgement of profits is not an available remedy in an

3  individual action under the UCL.").  Plaintiff has alleged no basis for restitutionary disgorgement.

4       Plaintiff also does not identify any particular injunctive relief that she seeks, and none is

5  apparent.  The only reference to injunctive relief is in her prayer, and it is phrased in the

6  disjunctive:  "Such equitable, injunctive or other relief as deemed appropriate by the Court."

7  *Prayer,* ¶ E.  In other words, plaintiff not only does not request any particular injunctive relief, it is

8  not clear that she seeks injunctive relief at all and it is even less clear what such injunctive relief

9  would include.  The only allegedly unlawful conduct she identifies – changing the concentration

10 of the fund without a shareholder vote – occurred years ago and there is no allegation or indication

11 that it is continuing.  As such, there is nothing for the Court to enjoin.  In similar circumstances,

12 the *Feitelberg* court dismissed the complaint.  *See Feitelberg*, 134 Cal. App. 4th at 1021.  Even

13 though the challenged conduct in *Feitelberg* was also the subject of a federal consent judgment

14 compelling its cessation, the Court's discussion extended beyond those circumstances.  Noting

15 that the availability of injunctive relief under the UCL does not mandate that it be awarded, the

16 Court cited long-standing California Supreme Court authority for the proposition that a prayer for

17 injunctive relief is meaningless where the conduct has ceased:  "when as here, the assertedly

18 wrongful practice has ended long before the action is filed, its requested termination is a rather

19 empty prayer."  *Id.* at 1021-22, *quoting Blue Chip Stamps v. Superior Court,* 18 Cal. 3d 381, 386

20 (1976).

### 3.     Ms. Smit Lacks Standing Under The UCL

22       Under Business & Professions Code Section 17204, a person lacks standing to bring a

23 claim under Section 17200 unless she "has suffered injury in fact and has lost money or property

24 as a result of [the] unfair competition" that is the subject of the claim.  Bus. & Prof. Code § 17204.

25 A plaintiff also cannot bring a representative claim if she does not satisfy the standing

26 requirements in Section 17204.  Bus. & Prof. Code § 17203.  To establish standing, Ms. Smit must

27 allege that she "has lost money or property as a result of [the] unfair competition."  Bus. & Prof.

28

Code § 17204.  But a review of her complaint and judicially noticeable facts shows that she has, in fact, lost nothing.

Ms. Smit alleges she purchased her initial fund shares in October 1998.  (FAC ¶ 9.)  The fund's share price that month fluctuated from between $10.49 and $10.21.  (Decl. of Patrick C. Doolittle, "Doolittle Decl.," ¶ 4.)  Since then, those shares have earned $6.04 per share in dividends.  (*Id*. ¶ 6.)  From 1999 through 2009, annual dividends ranged from 35 cents to 68 cents per share—a return of about three to seven percent annually based on her initial purchase price.  (*Id*. ¶ 7.)  Ms. Smit still owns those shares.  (Compl. ¶ 9.)  At the close of business on September 3, 2010, the day Ms. Smit filed suit, her shares were worth $9.35 per share.  (Doolittle Decl. ¶ 8.)  The dividends she received more than made up for the small decline in principal.  In other words, as a result of her purchase of fund shares, Ms. Smit enjoyed a net gain.  She therefore has not "lost money or property" as required by Section 17204.

In addition to alleging she lost property, Ms. Smit also must allege her losses were the "result" of Schwab's alleged deviation from the investment policy.  *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855, 70 Cal. Rptr. 3d 466 (2008) (Section 17204 includes a "causation requirement").  Since she has not lost anything, Schwab could not have caused any loss.  And if she argues that her initial payment of principal constitutes the loss at issue, Schwab's alleged deviations from the investment policy could not have caused that loss because the deviations happened well after her initial investment.  (*See* FAC ¶¶ 55, 68) (initial investment in 1998, alleged deviations in 2007).  Ms. Smit thus does not, and cannot, allege that Schwab obtained her initial investment "as a result of" any violation of section 17200.  Bus. & Prof. Code § 17204.  For this additional reason, Smit has failed to establish standing.  *See Watts v. Enhanced Recovery Corp.*, 10-CV-2606 LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) (dismissing 17200 claim because plaintiff failed to show "any actual loss of money or property *resulting from*" defendants' actions in violation of Section 17200) (emphasis added).

**B.      The Securities Litigation Uniform Standards Act Bars Ms. Smit's Section 17200 Claim**

The Securities Litigation Uniform Standards Act ("SLUSA") bars the assertion of a state-law claim asserting a legal theory already covered by the federal securities laws. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006). SLUSA bars securities class actions based on state law when five conditions exist: (1) the case is a "covered class action;" (2) the complaint asserts a claim under state law; (3) the case involves a "covered security;" and (4) the complaint contains allegations concerning a misrepresentation or omission of material fact; and (5) the alleged misstatement or omission was made "in connection with" the purchase or sale of a security. 15 U.S.C. § 78bb(f)(1); *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 844 (9th Cir. 2007). Ms. Smit's complaint falls within these limits. Her claim is therefore precluded by federal law and must be dismissed.

**1.      Ms. Smit Asserts A "Covered Class Action" Based On State Law With Respect To "Covered Securities"**

Defendants do not expect Plaintiff to contest that their complaint satisfies the first three elements of SLUSA. A "covered class action" is one in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate." 15 U.S.C. § 78bb(f)(5)(B)(II). Ms. Smit seeks to recover damages. FAC ¶ 79, 87, 89.[2] She also seeks to proceed "on behalf of a class consisting of all persons or entities who owned shares of the Fund on May 31, 2007." *Id.* ¶ 74. And she asserts that "questions of law or fact common to those persons or members of the prospective class predominate." *Id.* ¶ 78(a)-(h). Ms. Smit's complaint thus meets all parts of the definition of a "covered class action."

---

[2] Ms. Smit also includes, at the end of her complaint, a prayer for restitution and disgorgement. (FAC Prayer for Relief, (B), (C). These allegations do not save the complaint from SLUSA's grasp. *See Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1048-1049 (N.D. Cal. 2002) (complaint seeking restitution and disgorgement under section 17200 is a "covered class action").

Ms. Smit's complaint pleads only one count, and it arises under state law—an alleged violation of California's Business & Professions Code section 17200.

Finally, the securities at issue here are "covered securities," which are defined to mean securities "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2). The mutual fund shares purchased by Ms. Smit were issued by Schwab Investments, an investment company that is registered under the '40 Act. FAC ¶ 10. *See, e.g.*, *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 (C.D. Cal. 2002) (mutual fund shares are covered securities).

### 2. Ms. Smit's Complaint Alleges Misstatements And Omissions In Connection With The Purchase Or Sale Of Fund Shares

SLUSA preempts a state law claim if the complaint "alleg[es]" "a misrepresentation or omission of a material fact." 15 U.S.C. § 78bb(f)(1)(A). This condition is satisfied whenever a complaint alleges a misrepresentation or omission, even if the claim asserted is not a disclosure-based claim. *See Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) ("alleging" requirement met so long as misrepresentations or omissions "are 'alleged' in one form or another;" preemption under SLUSA "does not turn on whether allegations are characterized as facts or as essential legal elements of a claim"); s*ee also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009) (citing *Rowinski*). In other words, "[m]isrepresentation need not be a specific element of the claim to fall within the Act's preclusion." *Proctor*, 584 F.3d at 1222 n.13. The only question for the Court is whether Smit alleges, *anywhere* in the SAC, some type of material misrepresentation or omission. *Id.* (and cases cited therein); *Simon v. Stang*, 2010 WL 1460430, at *7 (N.D. Cal. Apr. 12, 2010) (SLUSA preempted state claim because it incorporated a misrepresentation, despite not being an element of that claim).

In their original Motion To Dismiss this action, Defendants pointed out the many places that Plaintiff alleged a misrepresentation or omission. (Dkt. No. 24 at 6–8 ) Plaintiff then amended by surgically removing most of these allegations, and carefully changing words in others, but without changing the substance of her complaint. A plaintiff cannot avoid the

application of SLUSA by artfully avoiding the use of the terms "misrepresentation" or "omission." *Feitelberg*, 234 F. Supp. 2d at 1051 ("If in fact the claims allege misrepresentations or omissions or use of manipulative or deceptive devices in connection with the purchase or sale of securities and otherwise come within the purview of SLUSA, artful avoidance of those terms or scienter language will not save them from preemption."); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (action dismissed where complaint was "a securities fraud wolf dressed up in a breach of contract sheep's clothing"); *Atkinson v. Morgan Asset Management, Inc.*, 664 F. Supp. 2d 898, 906-907 (W.D. Tenn. 2009) (breach of contract claim dismissed where, "[d]espite the artful pleading, the Complaint read as a whole makes clear that [breach of contract claim] ultimately rests on an assertion that PwC failed to disclose material information to shareholders in its regular audit").  "When the gravamen of the complaint involves an untrue statement or substantive omission of material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal." *Stoody-Broser v. Bank of America, N.A.*, No. C 08-2705, 2009 WL 2707393, *3 (N.D. Cal. Aug. 25, 2009).

The gravamen of Ms. Smit's complaint is a series of misrepresentations and omissions. Plaintiff's complaint is based on the concept that Schwab fundamentally misrepresented the riskiness of the Fund and that it omitted or failed to disclose risks resulting from the change in concentration policy.  According to Ms. Smit, Schwab initially "represented" the Fund "would seek a 90% correlation between the Fund and the Index."  FAC ¶ 30; *see also* ¶¶ 27–29.  Schwab "emphasized the conservative nature" of the fund, *id.* ¶ 45, and promised investors it "would not increase the risk profile of the Fund," *id.* ¶ 33.  Ms. Smit further alleges Schwab represented that the Fund would only "concentrate investments of greater than 25% of total assets in any industry if necessary to track" the Index.  *Id.* ¶ 36.  All of these representations were reiterated in later prospectuses and Statements of Additional Information.  *Id.* ¶¶ 43, 53.  And all of them, Ms. Smit claims, turned out to be untrue.

Ms. Smit alleges that after making these representations, the Fund "materially deviated from its fundamental investment policy." *Id.* ¶ 55.  It represented the Fund would track the Lehman Index, but Ms. Smit claims it then invested heavily in non-agency mortgage-backed

securities, which were never a part of the Index.  *Id.* ¶ 56.  "The Fund was thus converted from a diversified fund that would seek to track the Index into a concentrated real-estate bond fund."  *Id.* ¶ 58.  Essentially, Schwab allegedly told investors one thing and did another.

Just a *single* alleged misrepresentation is enough to trigger SLUSA.  *See Simon v. Stang*, 2010 WL 1460430, at *7 (N.D. Cal. Apr. 12, 2010) (holding SLUSA preempted state claim because it incorporated a single misrepresentation, despite not being an element of that claim); *Proctor*, 584 F.3d at 1222 n.13.  Here, "[u]nder a fair reading of the complaint," Ms. Smit has alleged far more than "at least some degree of misrepresentation."  *Simon*, 2010 WL 1460430, at *7.

### 3. The Alleged Misstatements Were Made "In Connection With" The Purchase Or Sale Of Fund Shares

The last SLUSA condition is the "in connection with" requirement: the misrepresentations or omissions must have been made "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 78bb(f)(1)(A).

The "in connection with" requirement must be construed broadly, for maximum preclusive effect, so that "certain State private securities class action lawsuits" are not "used to frustrate the objectives' of the 1995 [Private Securities Litigation Reform] Act."  *Dabit*, 547 U.S. at 85-86. The "in connection with" element is met so long as an alleged misrepresentation or omission "coincide[s]" with a securities transaction — "whether by plaintiff or by someone else."  *Id.* at 85. The import of *Dabit* is that SLUSA preempts class actions brought not just by securities purchasers, but also by securities "holders" — like the class of holders of fund securities Ms. Smit seeks to represent here.  FAC ¶ 1; *see Saxton*, 494 F.3d at 844-45 ("While plaintiffs themselves did not purchase or sell . . . *Dabit* does not require that they do so").

Ms. Smit alleges that Schwab misled investors each time it issued prospectuses to new investors which allegedly mis-described the fund as a "conservative index fund" even after the fund had been "converted . . . into a concentrated real estate bond fund."  FAC ¶ 58.  Thus, by Plaintiff's telling, even if she did not buy as a result of misrepresentations or omissions, "someone else" did, which is all that is required under *Dabit*.  At the same time, as Ms. Smit's own

circumstances show, investors purchased shares of the fund, and allegedly decided to hold, rather than sell, those shares because of Schwab's alleged misrepresentations or omissions.

Schwab's alleged misstatements thus "coincided" with the purchase of securities just as they did in *Saxton*. *See* 494 F.3d at 844-45. In *Saxton*, the Ninth Circuit concluded that the defendant's alleged misstatements induced plaintiffs "to refrain from exercising rights under their several loan agreements." *Id.* at 845. The Court concluded that SLUSA prevented assertion of any state law claims, because the misrepresentations "coincide[d] with the purchase or sale of securities, even though plaintiffs did not purchase or sell." *See also*, *e.g.*, *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1215 (C.D. Cal. 2006) (dismissing "holder" claims under SLUSA because "had Plaintiff and the other Class members received 'unbiased' investment advice, they would have sold their . . . shares earlier or refrained from purchasing them"); *Crimi v. Barnholt*, No. C 08-02249, 2008 WL 4287566, at *4 (N.D. Cal. Sept. 17, 2008) ("a claim that Defendants omitted material information which caused Plaintiffs to hold . . . stock is the quintessential securities fraud action preempted by SLUSA").

SLUSA bars securities class actions based on state law when five conditions exist. All five conditions exist here. Accordingly, Ms. Smit's claim is barred by SLUSA and should be dismissed.

### C. Ms. Smit's Claim Must Be Asserted Derivatively In Compliance With Rule 23.1

Ms. Smit's claim is a derivative claim, and cannot be asserted as a direct class claim. Schwab Investments is a Massachusetts business trust, and the Fund is a series of the trust. (FAC ¶ 10.) The law of the state of incorporation of Schwab Investments — Massachusetts — controls the issue of whether a claim is derivative or direct. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). Under Massachusetts law, a "business trust 'in practical effect is in many respects similar to a corporation;'" as a result, the same rules governing derivative actions on behalf of corporations apply to shareholders bringing derivative claims on behalf of business trusts. *Halebian v. Berv*, 457 Mass. 620, 623, n.4 (2010). Massachusetts courts look to the harm allegedly suffered by shareholders, and the nature of the alleged misconduct, in determining

whether a claim is derivative or direct — not to plaintiff's characterization of her claims.  *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006).

Ms. Smit cannot amend to avoid this deficiency in her pleading because to plead a derivative claim she would first need to comply with Rule 23.1 of the Federal Rules of Civil Procedure.  That rule imposes strict procedural requirements, including that a plaintiff allege with particularity "any effort . . . to obtain the desired action" or "the reasons for not making the effort."  Rule 23.1(b)(3).  Ms. Smit's failure to plead her claim as a derivative claim, and her failure to comply with Rule 23.1, are additional grounds for dismissal.

### 1.    Ms. Smit's Claim Must Be Asserted Derivatively

"Under Massachusetts law, a claim based on a 'duty owed to the corporation, not to the individual stockholders' is properly characterized as derivative, not direct."  *Halebian v. Berv*, 590 F.3d 195, 204–05 (2nd Cir. 2009).  A "shareholder may bring a direct action for injuries done to him in his individual capacity [only] if he has an injury which is separate and distinct from that suffered by other shareholders."  *Sarin v. Ochsner*, 721 N.E.2d 932, 934-35 (Mass. App. Ct. 2000) (citation and internal quotations omitted); *see also Halebian*, 590 F.3d at 205.  "[I]f the wrong underlying [the] claim results in harm to a plaintiff shareholder only because the corporate entity has been injured, with the plaintiff's injury simply being his proportionate share of the entity's injury, the harm to the shareholder is indirect and his cause of action is derivative."  *Forsythe*, 417 F. Supp. at 112; *Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (under Massachusetts law, "[i]f the injury merely is a reduction in the price of stock, then the suit must be derivative"); *Everett v. Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083, at *3 (S.D.N.Y. Aug. 3, 2006) ("Courts analyzing Massachusetts . . . law generally have found that a reduction in share price is an indirect injury, the remedy for which may be found in a derivative action").

Here, the alleged wrong—lower investment returns experienced by all shareholders as a result of investment decisions that allegedly deviated from the Fund's investment objectives—purportedly injured the Fund and violated duties owed to the Fund by other defendants.  All shareholders suffered equally from this alleged wrong.  Ms. Smit and other Fund shareholders

1   suffered only indirectly as a result of their ownership of Fund shares.  Any underperformance of

2   the Fund's share price, of course, affected all the shareholders in the Fund—each shareholder's

3   "injury simply being his proportionate share of the entity's injury."  *Forsythe*, 417 F. Supp. 2d at

4   112.

5       Ms. Smit essentially has alleged that the Fund's assets were mismanaged, in violation of its

6   stated investment objectives.  (FAC ¶¶ 2–5, 55–58, 69–73.)  But a claim "alleging

7   mismanagement or wrongdoing on the part of corporate officers or directors" is not a direct claim

8   causing a separate and distinct injury to any shareholder or subset of shareholders; rather it

9   "normally states a claim of wrong to the corporation" and "therefore, is properly derivative."

10  *Jackson*, 547 N.E.2d at 1148 (citation and internal quotations omitted); *In re Dreyfus Aggressive*

11  *Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 WL 10211, at *4 (S.D.N.Y. Jan. 6, 2000)

12  (claim for decline in value of mutual fund is derivative); *Hamilton v. Allen*, 396 F. Supp. 2d 545,

13  552 (E.D. Pa. 2005) (fiduciary duty claim is derivative under Massachusetts law because

14  "[p]laintiffs seek essentially to recover for the diminution of assets *to the Funds*").  Ms. Smit's

15  true "injury merely is a reduction in the price of stock" and is therefore derivative.  *Mutchka*, 373

16  F. Supp. 2d at 1027.

17      Ms. Smit's amended complaint makes several cosmetic changes to her allegations,

18  replacing the word "damages" with "injury" in several instances, but that has no impact on

19  whether her claim is derivative.  *Compare* Complaint ¶¶ 9, 96, 98 *with* FAC ¶¶ 9, 87, 89.  No

20  matter what words she uses to describe the type of injury she allegedly suffered, her alleged injury

21  was "simply [her] proportionate share of the entity's injury." *Forsythe*, 417 F. Supp. 2d at 112.

22      In a similar case, the Alabama Supreme Court recently held that the shareholders in a high-

23  yield bond fund, who alleged similar claims related to the fund's over-concentration in mortgage-

24  backed securities, had to assert their claim derivatively.  *Ex parte Regions Fin. Corp.*, __ So. 3d

25  __, 2010 WL 3835727 (Ala. Sept. 30, 2010) (not yet published).  Plaintiffs in that case tried to

26  assert a direct claim.  *Id.* at *1.  They alleged that the investment manager had misrepresented the

27  investment strategy, claiming to invest in safe bonds while actually investing in high-risk

28  mortgage and asset-backed securities.  *Id.*  But in order to allege a direct action, the shareholders

1   had to show they could "prevail without showing an injury to the corporation." *Id.* at \*9 (quoting

2   *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005)).  Because the primary injury was to

3   the fund, they could not do so, and the Court held the claim was derivative and dismissed the suit.

4   *Id.*  This authority is squarely on point and the same result should apply here.

### 2. Ninth Circuit Authority Confirms That A Claim For Decline In Value Of Mutual Fund Shares Is Derivative In Nature

6   The Ninth Circuit has held that a claim like Ms. Smit's—asserting mismanagement

7   resulting in a decline in the value of investors' mutual fund shares—must be asserted derivatively.

8   *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000).  *Lapidus* held that a mutual fund investor may

9   only bring a direct claim for  "an injury distinct from that suffered by shareholders generally." *Id.*

10  at 683.  Referring to Massachusetts law, the Ninth Circuit noted that a claim for diminution in the

11  value of mutual fund shares is not distinct from an injury suffered by shareholders generally.  It

12  found "the only injury to the shareholder is the indirect harm which consists of the diminution in

13  the value of his or her shares." *Id.*  As a result, the Ninth Circuit affirmed dismissal of the

14  plaintiffs' damages claim, because the "district court correctly determined that this claim alleged

15  only indirect harm to the shareholders." *Id.* at 684.

16  Ms. Smit also alleges, of course, that the deviations alleged in her complaint would have

17  been permissible had they been submitted to, and approved by, a shareholder vote, and she alleges

18  that no such vote was held.  (FAC ¶¶ 2, 58, 66–67, 85.)  But her case is not about a shareholder

19  vote.  She does not seek any injunctive relief relating to holding such a vote, and she does not seek

20  to rescind some corporate action taken by the fund without a vote.  The only remedy she seeks is

21  lost investment profits—that is, the allegedly "substantial injuries in connection with losses in the

22  Fund's value that resulted from the Fund's deviation."  (FAC ¶ 87.)[3]

---

25  [3]   Plaintiff will undoubtedly argue that, in the YieldPlus case, Judge Alsup rejected the argument that a 17200 claim based on a violation of Section 13(a) of the Investment Company Act

26  had to be filed derivatively.  *In re Charles Schwab Corp. Secs. Litigation*, 264 F.R.D. 531, 539 (N.D. Cal. 2009).  But in YieldPlus, the gravamen of Plaintiff's complaint was plainly that

27  shareholders had the right to vote on any changes in that mutual fund's concentration limits.  *Id.* at 534 n.2.  Here, in contrast, Plaintiff's few passing references to voting does not alter the

28  (footnote continued)

1    *Lapidus* draws a careful distinction between "voting rights" injuries and "diminution in

2    value" injuries.  The Ninth Circuit held that a claim relating to voting rights is a direct claim,

3    while a claim for recovery of a "diminution in the value of his or her shares" is derivative in

4    nature.  *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000).  That distinction has been

5    consistently observed in subsequent cases.  For instance, in *In re J.P. Morgan Chase & Co.*

6    *Shareholder Litig.*, 906 A.2d 766 (Del. 2006), the Delaware Supreme Court acknowledged that if

7    a "disclosure violation impaired the stockholders' right to cast an informed vote, that claim is

8    direct."  *Id.* at 772.  But a damages claim based on harm to the company resulting from that vote

9    must be asserted derivatively—even though the voting-rights violation allegedly contributed to the

10   financial injury.  *See id.* at 772-73.  Similarly, in *Halebian v. Berv*, 631 F. Supp. 2d 284 (S.D.N.Y.

11   2007), a plaintiff claimed his voting rights were interfered with by a false proxy solicitation.  *Id.* at

12   290-91.  The Court held that his claims had to be asserted derivatively even though "plaintiff

13   characterizes this as being a case where defendants interfered with shareholders' voting rights."

14   *Id.* at 302.  According to the Court, the plaintiff had failed "to articulate a theory by which the

15   alleged harm to shareholders which resulted from the misleading nature of the Proxy Statement

16   was separate and independent from the harm allegedly resulting to the Fund itself."  *Id.*[4]

17       Judge Whyte recently reached the same conclusion in *Indiana Electrical Workers Pension*

18   *Trust Fund v. Dunn*, No. C-06-01711 RMW, 2007 WL 1223220, at *10 (N.D. Cal. Mar. 1, 2007).

19   In *Dunn*, shareholders asserted breach of fiduciary duty and breach of contract claims, alleging

20   they were denied the right to vote on a severance package awarded to former Hewlett-Packard

21

22   _____

23   fundamental claim set forth in her complaint—she suffered lower investment returns because the
     Fund deviated from its investment policies.

24     [4]   *See also In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000
     WL 10211, at *1, *4 (S.D.N.Y. Jan. 6, 2000) (section 13(a) claim held to be derivative where

25   plaintiff alleged an "emphasis on risky, unstable and unproven micro-cap securities" made "the
     Funds perform[] poorly"); *Vogel v. Jobs*, No. C 06-5208 JF, 2007 WL 3461163, at *3 (N.D. Cal.

26   Nov. 14, 2007) (disclosure claim was derivative because "[p]laintiff has not identified a unique
     injury independent of any harm done to the corporation"); *In re Worldcom, Inc.*, 323 B.R. 844,

27   856 (S.D.N.Y. B.R. 2005) (voting rights claims were derivative where the "Court does not see
     how the right to vote, in this case, is differentiated from a diminution in value of the shares").

28

1   CEO Carly Fiorina.  Judge Whyte concluded these were derivative claims even though the

2   plaintiffs claimed they would have voted against the agreements had they been given the

3   opportunity.  He reasoned that "[a]lthough plaintiffs argue that they have been injured because

4   they were not given their right to vote, the nature of their claims is essentially mismanagement of

5   corporate assets and derivative in nature."  *Id.*  Judge Whyte also noted that the alleged economic

6   harm was suffered by the corporation, and that "[h]ad the shareholders voted against any of the

7   severance or benefits given to Fiorina, the denied amounts would accrue to the corporation, not

8   directly to any shareholder."  *Id.* at *11.  Again, this authority is squarely on point and should be

9   followed here.  *Id.*; *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773

10  (Del. 2006) (although denial of voting rights was a direct claim, no damages could be recovered

11  by shareholders, as all economic harm was suffered by corporation); *In re Transkaryotic*

12  *Therapies, Inc.*, 954 A.2d 346, 362 (Del. Ch. 2008) (direct claim for denial of right to cast an

13  informed vote dismissed because no monetary damages could be awarded); *In re Worldcom, Inc.*,

14  323 B.R. 844, 856 (S.D.N.Y. Bankr. 2005) (shareholders' voting rights claims were derivative

15  because the "Court does not see how the right to vote, in this case, is differentiated from a

16  diminution in value of the shares"); *Halebian*, 631 F. Supp. 2d at 301–03 (voting rights claim is

17  derivative where plaintiff did not allege any injury different from an injury to the fund).

**D.    Ms. Smit's Complaint Is Barred By The UCL's Four Year Statute Of Limitations**

18
19          The statute of limitations for a Section 17200 claim is four years and, unless equitably

20  tolled, it begins to run upon the claim's accrual.  *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm*, 96

21  Cal. App. 4th 884, 891 (2002); Cal. Bus. & Prof. Code § 17208.  Ms. Smit's claim accrued on

22  September 1, 2006, when she admits the change in concentration policy occurred.  But Ms. Smit

23  did not file suit until September 13, 2010, more than four years later.  (FAC ¶¶ 65-66).  Her

24  complaint alleges no facts giving rise to an argument of equitable tolling.  Her claim is therefore

25  barred.  *Groce v. Claudat*, No. 09cv1630, 2010 WL 3339406, at *2 (S.D. Cal. Aug. 24, 2010)

26  (dismissing portion of UCL claim which occurred more than four years before filing).

27
28

E.    **Neither Charles Schwab & Co. Inc. Nor Charles Schwab Investment Management Inc. Can Be Liable Under Plaintiff's § 17200 Theory**

Ms. Smit bases her "unlawful" Section 17200 claim on alleged violations of sections 13(a) and 48(a) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-13(a), 80a-47(a).  (FAC ¶ 84.)  Liability for "unlawful" conduct under Section 17200 is, however, solely derived from a violation of the underlying statute.  *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005); *Gonzalez v. First Franklin Loan Servs.*, No. 1:09-CV-00941 AWI-GSA, 2010 U.S. Dist. LEXIS 1657, at *42 (E.D. Cal. Jan. 9, 2010).  Section 17200 cannot be used to expand the class of defendants to people who are otherwise not subject to the underlying statute.

Section 13(a) prohibits certain acts only by a "registered investment company."  It does not purport to cover any other persons.  15 U.S.C. § 80a-13(a)(1)–(a)(4).  Indeed, when Congress intended to impose liability on investment advisors, as opposed to the investment company itself, it did so explicitly.  *See* 15 U.S.C. 80a-35(b) (imposing fiduciary duty on investment adviser regarding amount of compensation).  Congress also used the term "affiliated person" throughout the ICA to impose liability on several types of entities, including investment advisers.  *See, e.g.,* 15 U.S.C. §§ 80a–2(a)(3) (defining affiliated person), 80a–17 (imposing liability on affiliated persons who sell certain securities).  But section 80a-35 refers only to a "registered investment company" and nothing else.  15 U.S.C. § 80a-13(a).  By the statute's terms, then, only a registered investment company can engage in conduct that violates section 13(a).  *Id.*

Ms. Smit does not allege precisely which defendant is a registered investment company, though she does allege who is not.  Charles Schwab & Co., Inc., a registered broker-dealer, is alleged to be the "underwriter and distributor for shares of the Fund" and the parent company of Schwab Investments.  (FAC at ¶ 11.)  Charles Schwab Investment Management, Inc. is alleged to be the Fund's "Investment Advisor," and is in fact a registered investment advisor.  (*Id.* ¶ 12.)  Neither one, obviously, is, or can be alleged to be, a registered investment company.

Ms. Smit's original complaint alleged only a violation of Section 13(a).  Alerted by Defendants' earlier Motion To Dismiss to the fact that she could not plead that claim against these two defendants, she now also alleges a violation of Section 48(a) of the ICA.  That section

1   "imposes 'control person liability' by making it 'unlawful for any person, directly or indirectly, to

2   cause to be done any act or thing . . . which would be unlawful . . . under the provisions of this

3   title." *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007) (quoting 15 U.S.C. §

4   80a-47(a)).  But there is no private right of action under Section 48(a).  *E.g., Northstar*, 615 F.3d

5   at 1116, 1122 (no private right of action under the ICA, citing *In re Salomon Smith Barney Mut.*

6   *Fund Fees Litig.,* 441 F. Supp. 2d 579, 591-93 (S.D.N.Y. 2006) which held there was no private

7   right of action under Section 48(a)); *Bellikof*, 481 F.3d at 117, *cited with approval in Northstar*,

8   615 F.3d at 1116, 1112; *Siemers v. Wells Fargo & Co.*, No. C 05-4518, 2006 WL 2355411, at *23

9   (N.D. Cal. Aug. 14, 2006).  Accordingly, Ms. Smit cannot borrow Section 48(a) at all, nor could

10  she borrow it  to impose indirect liability under Section 13a when there is no private right of

11  action against the direct actors.  *See supra* § III(A)(1).

12  **IV.   CONCLUSION**

13       For the foregoing reasons, the Schwab Defendants respectfully urge the Court to dismiss

14  the FAC with prejudice.

15

16  DATED:  January 5, 2011            KARIN KRAMER

17                                     RICHARD A. SCHIRTZER
                                       PATRICK C. DOOLITTLE

18                                     QUINN EMANUEL URQUHART & SULLIVAN,
                                       LLP

19

20

21                                     By____/s/_____

22                                          Karin Kramer
                                            Attorneys for Defendants

23                                          Charles Schwab & Co., Inc., Schwab Investments,
                                            and Charles Schwab Investment Management, Inc.

24

25

26

27

28

1

**<u>ATTESTATION</u>**

2       I, Patrick Doolittle, am the ECF user whose ID and password were used to file the attached

3   document.  I hereby attest that concurrence in the filing of the document was obtained from the

4   signatory.

5

6   DATED:  January 5, 2011

7                                                   By___/s/_____
                                                       Patrick Doolittle
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28