1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone:  (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Steve W. Berman (*pro hac vice*)
    Sean R. Matt (*pro hac vice*)
7   HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
8   Seattle, WA  98101
    Telephone: (206) 623-7292
9   Facsimile:  (206) 623-0594
    steve@hbsslaw.com
10  sean@hbsslaw.com

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                   SAN JOSE DIVISION

| | |
|---|---|
| 14  JERRY SMIT, individually and on behalf of all others similarly situated, | No. CV-10-3971 LHK |
| 15                                    Plaintiff, | PLAINTIFF'S BRIEF IN OPPOSITION TO SCHWAB DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT |
| 16 | |
| 17      v. | |
| 18  CHARLES SCHWAB & CO., INC., SCHWAB INVESTMENTS and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., | Dept.: Courtroom 4, 5th Floor Date:  March 3, 2011 Time:  1:30 p.m. Court:  Hon. Lucy Koh |
| 19                                    Defendants. | |
| 20 | |

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED
### (Local Rule 7-4)

1.      A claim under California's Unlawful Competition Law ("UCL") can borrow violations of another statute to serve as the predicate unlawful conduct, even if that predicate statute does not provide for private enforcement, as long as there is no "absolute bar" to private actions.  An absolute bar arises only when statutory language demonstrates that the legislature explicitly considered and rejected private enforcement.  Section 13(a) of the Investment Company Act ("ICA") is the predicate statute to Plaintiff's UCL claim.  Does a Ninth Circuit opinion declining to imply a private right of action under § 13(a) merely because Congress did not express its intent for private enforcement clearly enough constitute such an "absolute bar"?  *See infra* at 5-13.

2.      The Securities Litigation Uniform Standards Act ("SLUSA") only preempts state claims that relate to a security transaction linked to a misrepresentation.  Plaintiff's state claim arises from the Fund's deviation from its fundamental investment policies without first obtaining shareholder approval as required by § 13(a) of the ICA, and thus does not allege a misrepresentation or a securities transaction.  Does SLUSA preempt Plaintiff's claim?  *See infra* at 13-16.

3.      Standing to assert a UCL claim requires a showing of some form of economic injury and need not involve losses eligible for restitution.  Has Plaintiff alleged economic injury, and thus standing, with allegations that Schwab's misconduct caused the value of her Fund shares and her total return on her shares to plummet?  *See infra* at 16-17.

4.      Can Plaintiff obtain restitution under the UCL where she gave money to Schwab and where courts interpret the restitution requirement that defendant "wrongfully acquire" plaintiff's property to include where defendant wrongfully retains the property?  *See infra* at 17-20.

5.      The Ninth Circuit ruled that a claim arising from violation of a shareholder voting right is a direct claim, regardless of whether the requested damages are of the sort that are normally recoverable only in a derivative claim.  Does that decision control here where Plaintiff asserts violation of her shareholder voting rights?  *See infra* at 20-23.

6.      Plaintiff's claim accrued, at the earliest, when Schwab violated § 13(a)(3) of the ICA, that is, when it deviated from the Fund's fundamental investment policy without shareholder

approval.  Plaintiff alleges this occurred on or about May 31, 2007.  Was Plaintiff's claim timely under the UCL's four-year limitation period when she filed less than four years after Schwab's May 31, 2007 violation?  *See infra* at 23-24.

7.       Plaintiff alleges that defendants Schwab Investments and Charles Schwab & Co., Inc., violated § 48(a) of the ICA by causing the Fund to deviate from its fundamental policies in violation of § 13(a) of the ICA.  Did Plaintiff state a UCL claim based on these defendants' § 48(a) violation?  *See infra* at 24.

1

## TABLE OF CONTENTS

2

**Page**

3 STATEMENT OF ISSUES TO BE DECIDED ........................................................... i

4 I.       INTRODUCTION ............................................................................................ 1

5 II.      STATEMENT OF FACTS ................................................................................ 2

6 III.     ARGUMENT .................................................................................................... 4

7          A.    Pleading Standards ................................................................................ 4

8          B.    Scope of California's Unfair Competition Law .................................... 5

9          C.    A UCL Claim Can Borrow §§ 13(a) and 48(a) of the ICA as Predicate

10               Violations ............................................................................................. 5

11               1.    The UCL's unlawful prong borrows violations of other laws as
                       predicate unlawful practices ...................................................... 5

12               2.    A statute may serve as basis for violating the unlawful prong as
                       long as it does not expressly bar a private right of action .......... 6

13
                 3.    Plaintiff may properly "borrow" violations of the Investment
14                     Company Act .............................................................................. 10

15         D.    SLUSA Does Not Preempt Plaintiff's Claim .................................... 13

16         E.    Plaintiff Has Standing to Assert Her UCL Claim .............................. 16

17         F.    Plaintiff Pleads Entitlement to UCL Relief ....................................... 17

18         G.    Plaintiff's Claim, Predicated on Violation of Voting Rights, Is Direct ... 20

19               1.    Plaintiffs' UCL claim arising from Schwab's violation of their
                       voting rights is direct, not derivative ....................................... 20
20
                 2.    Schwab resorts again to mischaracterizing Plaintiff's claim .......... 22
21
           H.    Plaintiff Filed Her Claim within the UCL's Four-Year Limitations Period .............. 23
22
           I.    Schwab Defendants That Caused the Fund to Violate § 13(a) Are
23               Liable Under § 48 ................................................................................ 24

24 IV.     CONCLUSION ............................................................................................... 25

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ..............................................................................11

*Aron v. U-Haul Co. of Cal.*,
143 Cal. App. 4th 796 (2006) .............................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ................................................................15

*Automobile Club v. Auto Club, Ltd.*,
2007 U.S. Dist. LEXIS 19230 (C.D. Cal. Jan. 3, 2007) .......................17

*Ballard v. Chase Bank United States, NA*,
2010 U.S. Dist. LEXIS 130097 (S.D. Cal. Dec. 9, 2010) ....................10

*Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*,
825 F.2d 731 (3d Cir. 1987) ...............................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007). Notice ............................................................4, 5

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007) ...............................................................12

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) .............................................................5

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ................................................................5

*Blakemore v. Superior Ct.*,
129 Cal. App. 4th 36 (2005) ...............................................................12

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith*,
916 F. Supp. 1343 (D.N.J. 1996) ........................................................24

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ............................................................................11

*Broberg v. The Guardian Life Ins. Co. of Am.*,
171 Cal. App. 4th 912 (2009) .............................................................24

*California Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2001) .................................................................6

*Cedars-Sinai Med. Ctr. v. United Healthcare Ins. Co.*,
    2010 U.S. Dist. LEXIS 55150 (C.D. Cal. May 7, 2010) ........................................................ 8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................................................*passim*

*Certain Underwriters at Lloyd's v. Real Estate Professionals Ins. Co.*,
    2007 U.S. Dist. LEXIS 88241 (C.D. Cal. Nov. 26, 2007) ...................................................... 17

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000) ................................................................................................ 6

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*,
    24 Cal. 4th 800 (2001) .......................................................................................................... 6

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) .............................................................................................. 19

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197 (1983) ...................................................................................................... 6, 12

*Conley v. Gibson*,
    355 U.S. 41 (1957) ................................................................................................................ 4

*Consumer Justice Ctr. v. Olympian Labs, Inc.*,
    99 Cal. App. 4th 1056 (2002) .............................................................................................. 13

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 U.S. Dist. LEXIS 6633 (S.D.N.Y. Jan. 23, 2009) ........................................................ 15

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) .................................................................................................... 18, 19

*Everett v. Bozic*,
    2006 U.S. Dist. LEXIS 55824, 2006 WL 2291083 (S.D.N.Y. Aug. 2, 2006) ......................... 23

*Ex parte Regions Fin. Corp.*,
    __ So.3d __, 2010 Ala. LEXIS 183, 2010 WL 3835727 (Sept. 30, 2010) ............................. 23

*Feitelberg v. Credit Suisse First Boston, LLC*,
    134 Cal. App. 4th 997 (2005) .............................................................................................. 18

*Ferrington v. McAfee, Inc.*,
    2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) ...............................................*passim*

*Fiedler v. Clark*,
    714 F.2d 77 (9th Cir. 1983) .................................................................................................. 10

*Finelite, Inc. v. Ledalite Architectural Prods.*,
    2010 U.S. Dist. LEXIS 88041 (N.D. Cal. Aug. 26, 2010) ..................................................... 17

*Fogel v. Chestnutt*,
   668 F.2d 100 (2d Cir. 1981) ............................................................................. 11

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) ............................................................... 23

*G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*,
   2007 U.S. Dist. LEXIS 91327 (N.D. Cal. Dec. 12, 2007) ............................... 17

*Halebian v. Berv*,
   631 F. Supp. 2d 284 (S.D.N.Y. 2007) ............................................................. 23

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005) .............................................................. 23

*Hartless v. Clorox Co.*,
   2007 U.S. Dist. LEXIS 81686 (S.D. Cal. Nov. 2, 2007) .............................. 9, 10

*Hinjos v. Kohl's Corp.*,
   2010 U.S. Dist. LEXIS 130300 (C.D. Cal. Dec. 1, 2010) ............................... 17

*In re American Mut. Funds Fee Litig.*,
   2007 U.S. Dist. LEXIS 8276 (C.D. Cal. Jan. 17, 2007) .................................. 12

*In re Charles Schwab Corp. Sec. Litig.*,
   264 F.R.D. 531 (N.D. Cal. 2009) ....................................................... 14, 20, 21

*In re Charles Schwab Corp. Secs. Litig.*,
   2010 U.S. Dist. LEXIS 32113 (N.D. Cal. Mar. 30, 2010) ............................ 1, 14

*In re Charles Schwab Corp. Secs. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009) .................................................................... 14

*In re Countrywide Fin. Corp. Secs. Litig.*,
   2009 U.S. Dist. LEXIS 129807 (C.D. Cal. Dec. 9, 2009) ............................... 15

*In re Dreyfus Aggressive Growth Mut. Funds Litig.*,
   2000 U.S. Dist. LEXIS 94, 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000) ............. 23

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) .......................................................................... 15

*In re J.P. Morgan Chase & Co. S'holder Litig. v. Harrison*,
   906 A.2d 766 (Del. 2006) ............................................................................... 22

*In re Symbol Techs. Class Action Litig.*,
   950 F. Supp. 1237 (E.D.N.Y. 1997) ............................................................... 15

*In re Syntex Corp. Secs. Litig.*,
   95 F.3d 922 (9th Cir. 1996) ............................................................................ 15

- vi -

*In re Transkaryotic Therapies, Inc.*,
  954 A.2d 346 (Del. Ch. 2008) ...................................................................22

*In re WorldCom, Inc*,
  323 B.R. 844 (Bankr. S.D.N.Y. 2005) .......................................................22

*Jackson v. Stuhlfire*,
  547 N.E.2d 1146 (Mass. App. Ct. 1990) ....................................................23

*Jones v. Harris Assocs. L.P.*,
  __ U.S. __, 130 S. Ct. 1418, 176 L. Ed. 2d 265 (2010) ............................11

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002).........................................................................5, 6, 7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .....................................................................5

*Kraus v. Trinity Mgmt. Servs., Inc.*,
  23 Cal. 4th 116 (2000)...............................................................................19

*Kwikset Corp. v. Superior Ct.*,
  __ Cal. 4th __, 2011 Cal. LEXIS 532 (Jan. 27, 2011)........................16, 18

*Lapidus v. Hecht*,
  232 F.3d 679 (9th Cir. 2000) ...............................................................20, 21

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993) .....................................................................................5

*Levy v. JP Morgan Chase*,
  2010 U.S. Dist. LEXIS 118232 (S.D. Cal. Nov. 5, 2010)..........................10

*Matoff v. Brinker Rest. Corp.*,
  439 F. Supp. 2d 1035 (C.D. Cal. 2006) .......................................................7

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) ....................................................................6

*Mitec Partners, LLC v. U S. Bank Nat'l Ass'n*,
  605 F.3d 617 (8th Cir. 2010) .....................................................................15

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ....................................................................5

*Mutchka v. Harris*,
  373 F. Supp. 2d 1021 (C.D. Cal. 2005).....................................................23

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  609 F. Supp. 2d 938 (N.D. Cal. 2009)........................................................24

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    615 F.3d 1106 (9th Cir. 2010) ............................................................*passim*

*Olmsted v. Pruco Life Ins. Co.*,
    283 F.3d 429 (2d Cir. 2002) ........................................................................11

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
    469 F.3d 978 (Fed. Cir. 2006) ......................................................................7

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508 (2002) ......................................................................6

*People v. McKale*,
    25 Cal. 3d 626 (1979) ..................................................................................6

*Roman v. Korson*,
    152 F.R.D. 101 (W.D. Mich. 1993) ............................................................19

*Rosales v. Citibank*,
    133 F. Supp. 2d 1177 (N.D. Cal. 2001) ......................................................19

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993) .............................................................................7, 8

*Sarin v. Ochsner*,
    721 N.E.2d 932 (Mass. App. Ct. 2000) ......................................................23

*Searls v. Glasser*,
    64 F.3d 1061 (7th Cir. 1995) ......................................................................15

*Smith Hawken, Ltd. v. Gardendance, Inc.*,
    2004 U.S. Dist. LEXIS 22934 (N.D. Cal. Nov. 5, 2004) ............................5

*Southern Cal. Water Co. v. Aerojet-General Corp.*,
    2003 U.S. Dist. LEXIS 26534 (C.D. Cal. Apr. 1, 2003) ............................8

*State of Cal. v. Altus Fin.*,
    36 Cal. 4th 1284 (2005) ..............................................................................6

*Stearns v. Select Comfort Retail Corp.*,
    2010 U.S. Dist. LEXIS 84777 (N.D. Cal. July 21, 2010) ..........................24

*Stevens v. Superior Ct.*,
    75 Cal. App. 4th 594 (1999) ........................................................................8

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
    17 Cal. 4th 553 (1998) ................................................................6, 7, 12, 13

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
    922 F. Supp. 299 (C.D. Cal. 1996) ..............................................................9

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
    546 F.3d 991 (9th Cir. 2008) .................................................................. 5

*Transamerica Mortg. Advisors v. Lewis,*
    444 U.S. 11 (1979) ....................................................................... 10, 11

*Washington Mut. Bank, FA v. Superior Ct.,*
    75 Cal. App. 4th 773 (1999) ................................................................ 7

*Webb v. Smart Document Solutions, LLC,*
    499 F.3d 1078 (9th Cir. 2007) .............................................................. 5

*White v. Trans Union, LLC,*
    462 F. Supp. 2d 1079 (C.D. Cal. 2006) .............................................. 17

*Williams v. Gerber Prods. Co.,*
    523 F.3d 934 (9th Cir. 2008) .............................................................. 5

*Yourish v. California Amplifier,*
    191 F.3d 983 (9th Cir. 1999) ............................................................. 15

## STATUTES

15 U.S.C. 77p(b)(1) .......................................................................... 13

15 U.S.C. 78bb(f)(1)(A) ............................................................... 13, 16

15 U.S.C. 80a-8(b)(1)(E) ................................................................. 15

15 U.S.C. 80a-8(b)(1)(e) & (b)(2) ................................................ 2, 24

15 U.S.C. 80a-8(b)(2) & (3) ............................................................ 15

15 U.S.C. 80a-13, 80a-47(a) ........................................................... 10

15 U.S.C. 80a-13(a)(3) ............................................................ 2, 15, 24

15 U.S.C. § 80a-47(a) ..................................................................... 25

# I.     INTRODUCTION

The Schwab Defendants assert here the same arguments that previously failed them against a similar claim in a similar case before Judge Alsup, *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 WHA (N.D. Cal.).  Fishing for a different result, however, they try again here.  But the law and the allegations remain the same.  As should the result.  Judge Alsup ruled that plaintiffs stated their claim, and he later granted summary judgment, finding that Schwab had violated the law.[1]

Plaintiff here asserts a claim against the same defendants for again violating California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, this time in connection with the Schwab Total Bond Market Fund (the "Fund"), a sibling to the bond fund at issue in the prior *Schwab* litigation.  As did the *Schwab* litigation plaintiffs, Plaintiff here borrows Schwab's violations of §§ 13(a) and 48 of the Investment Company Act ("ICA") as the predicate "unlawful" conduct violating the UCL.  California law is clear that violations of another statute can serve as the predicate unlawful conduct, even if that predicate statute does not itself provide for private enforcement, so long as there is no "absolute bar" to such enforcement.  An absolute bar arises only when statutory language demonstrates that the legislature *explicitly considered and rejected* private enforcement.  Schwab nonetheless contends that the Ninth Circuit's recent *Northstar* opinion declining to imply a private right of action under § 13(a) is such a bar.  But far from finding an absolute bar, the *Northstar* court merely concluded that Congress did not express its intent for private enforcement clearly enough to merit implying a private right.  Plaintiff's UCL claim thus can borrow Schwab's §§ 13(a) and 48 violations as predicate unlawful conduct.  *See infra* at 5-13.

Schwab's other arguments fare no better.  Schwab (again) argues that the Securities Litigation Uniform Standards Act ("SLUSA") preempts Plaintiff's claim.  SLUSA preempts state claims relating to a security transaction linked to a misrepresentation.  But Plaintiff's claim involves neither, arising from the Fund's breach of its fundamental policies in violation of § 13(a).  Plaintiff alleges no misrepresentations.  SLUSA thus does not preempt her UCL claim.  *See infra* at 13-16.

Schwab also disputes Plaintiff's standing to sue.  UCL standing requires only a showing of

---

[1] *See In re Charles Schwab Corp. Secs. Litig.*, 2010 U.S. Dist. LEXIS 32113 (N.D. Cal. Mar. 30, 2010).

1    economic injury and need not involve losses eligible for restitution.  Plaintiff, a Fund shareholder,

2    alleges economic injury, and thus standing, with allegations that Schwab's § 13(a) violation caused

3    the value of and total return from her shares to plummet.  *See infra* at 16-17.

4         Next, Plaintiff is entitled to UCL restitution for Schwab's violation because Schwab took her

5    money and then retained it unfairly when it revamped the Fund without first obtaining the share-

6    holder approval required by § 13(a).  *See infra* at 17-20.  And Plaintiff can assert her UCL claim

7    directly, rather than derivatively, because the heart of her claim is Schwab's violation of her voting

8    right.  The Ninth Circuit has ruled that a claim asserting violation of a shareholder voting right is

9    direct, not derivative.  *See infra* at 20-23.  Finally, Plaintiff's claim is timely because it accrued, at

10   the earliest, when Schwab deviated from the Fund's fundamental investment policy without share-

11   holder approval, which Plaintiff alleges occurred on or about May 31, 2007.  Plaintiff filed her claim

12   in September 2010, well within the UCL's four-year limitation period.  *See infra* at 23-24.

## II.    STATEMENT OF FACTS

14        Plaintiff alleges that her UCL claim arose when the Fund, as ordered by Schwab, violated its

15   fundamental concentration and investment policies set forth in various prospectuses and statements

16   incorporated therein.  ¶¶ 2-5, 94-96.[2]  The ICA requires a fund's prospectus to recite the fund's

17   policy regarding "concentrating investments in a particular industry or group of industries" as well

18   as any other investment policies that "are changeable only if authorized by shareholder vote."  15

19   U.S.C. 80a-8(b)(1)(e) & (b)(2).  Section 13(a) of the ICA also prohibits a fund from deviating from

20   its disclosed concentration-of-investments and other fundamental policies unless first "authorized by

21   the vote of a majority of its outstanding voting securities."  15 U.S.C. 80a-13(a)(3).  The heart of

22   Plaintiff's UCL claim is the allegation that the Fund, spurred by Schwab and without first obtaining

23   shareholder approval, violated its fundamental policies not to concentrate Fund assets in any particu-

24   lar industry and also that its investment portfolio would mirror that of the Lehman Brothers U.S.

25   Aggregate Bond Index (the "Index").  ¶ 2.

26        The Fund's statement of its fundamental policy regarding concentration of assets granted the

27   ───────────────

     [2] "¶ __" refers to paragraphs of the First Amended Class Action Complaint ("FAC"), unless

28   otherwise noted.

Fund discretion to concentrate investments of greater than 25% of total assets in any industry *only* if

necessary to track the Index:

> Each Fund may not concentrate investments in a particular industry or
> group of industries, or within one state (except with respect to the
> Total Bond Market Index Fund and the Short Term Bond Market
> Index Fund, to the extent that the index which each Fund seeks to track
> is also so concentrated) as concentration is defined under the
> Investment Company Act of 1940 or the rules or regulations
> thereunder, as such statute, rules or regulations may be amended from
> time to time.  [¶ 36.]

The policy incorporated the SEC's interpretation of the term "concentration" from the Investment

Company Act of 1940 (which at the time was and remains 25%) to give the Fund greater flexibility

in the event of future changes in interpretation.  ¶ 37.

The Registration Statement and Prospectus dated January 15, 1998, for the Total Bond Fund

(and another Schwab bond fund) reiterated the Fund's investment objective to track a bond index:

> INVESTMENT OBJECTIVES:

> Each Fund's investment objective is to attempt to provide a high level
> of current income consistent with preservation of capital *by seeking to
> track the investment results of a particular bond index through the use
> of an indexing strategy*.

> Each Fund's investment objective is fundamental, which means that it
> may be changed only by vote of a majority of a Fund's shareholders.
> [Emphasis added.]

¶ 41.  The Prospectus further identified the Lehman Brothers Aggregate Bond Index (the "Index") as

the index that the Total Bond Fund would track.  ¶ 42.

This same recitation of the Fund's fundamental investment objective appeared in subsequent

Fund prospectuses, as well as in Statements of Additional Information ("SAI") incorporated by

reference into the prospectuses.  ¶¶ 43, 53-54.  Because this policy was "fundamental," the Fund's

Board of Trustees could not change the policy without first obtaining approval by a majority of the

Fund's shareholders.  ¶¶ 2, 18, 41, 53, 54.

By May 31, 2007, the Fund began to violate those fundamental policies by investing more

than 25% of its assets in non-agency CMOs, which were outside the Index, eventually reaching 30%

– without ever seeking shareholder approval.  ¶¶ 55-56, 79-83.  Moreover, the Fund's non-agency

CMO investments pushed the Fund's total concentrations in residential mortgage-backed securities –

- 3 -

both agency and non-agency – far beyond the residential mortgage-backed-securities concentrations reflected in the Index.  In 2007, the Index was comprised of 38.6% residential mortgage-backed securities.  In 2008, this number increased slightly to 39.6%.  In contrast, by May 31, 2007, the Fund's residential mortgage-backed securities investments exceeded 67% of net assets:

| Nov. 30, 2006 | Feb. 28, 2007 | May 31, 2007 | Nov. 30, 2007 | Feb. 29, 2008 | May 31, 2008 |
|---|---|---|---|---|---|
| 43.80% | 45.10% | 67.10% | 52.30% | 45.40% | 43.30% |

¶ 55.  Schwab thus converted the Fund from a diversified fund that would track the Index into a concentrated real-estate bond fund.  In other words, Schwab changed the Fund's fundamental investment objective without holding the required shareholder vote, in violation of § 13(a).  ¶¶ 58, 66, 85.

The Fund's unlawful deviation from its fundamental policies exposed the Fund and its shareholders to tens of millions of dollars in losses stemming from a sustained decline in the value of non-agency mortgage-backed securities.  These losses dragged down the Fund's returns such that its total return plummeted to *12.64% below* the Index's total return for the period August 31, 2007, through February 27, 2009.  The Fund returned *minus* 4.80% compared to the Index's total return of *positive* 7.85% over that same period (including interest payments).  ¶¶ 5, 69-73.  The Fund shares closed that week at $9.72, plunged soon afterwards and never recovered.  ¶ 73 (graph).[3]  After sinking to $8.58 in October 2008, the price revived somewhat to about $9.35 when Plaintiff filed her action on September 3, 2010, Br. at 11, and currently trades at about $9.18.[4]

### III.     ARGUMENT

#### A.     Pleading Standards

Fed. R. Civ. P. 8(a) requires a complaint to plead a claim so as to give a defendant "fair notice of what the … claim is and the grounds upon which it rests," but does not require pleading "specific facts to support [the complaint's] general allegations."  *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Notice pleading, regard-

---

[3] For the Fund's share price for the week of May 29, 2007, see interactive graph at http://finance.yahoo.com/echarts?s=SWLBX+Interactive#chart2:symbol=swlbx;range=5y;indicator=volume;charttype=line;crosshair=on;ohlcvalues=0;logscale=on;source=undefined.

[4] These weekly prices are available on the previously referenced interactive graph.

less of the context, requires only general notice of a claim. *See, e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). A plaintiff must plead only broad allegations of the *prima facie* elements of an alleged violation. Plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *E.g., Williams v. Gerber Prods. Co*., 523 F.3d 934, 938 (9th Cir. 2008); *Twombly*, 550 U.S. at 555. Rule 8 does *not* require detailed factual pleading. *Id.* at 555, 570.

**B.    Scope of California's Unfair Competition Law**

The UCL's coverage is "sweeping." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999). It prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. An act can "violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Because the statute is written in the disjunctive, "[e]ach prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1253 (2009).

**C.    A UCL Claim Can Borrow §§ 13(a) and 48(a) of the ICA as Predicate Violations**

**1.    The UCL's unlawful prong borrows violations of other laws as predicate unlawful practices**

The UCL "is a broad statute designed to remedy violations of other laws, both state and federal." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949-50 (2002). For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (quotations omitted); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008); *Ferrington v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 106600, at *39 (N.D. Cal. Oct. 5, 2010).

"'Unlawful' practices are those practices that are prohibited by law, whether 'civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'" *Smith Hawken, Ltd. v. Gardendance, Inc.*, 2004 U.S. Dist. LEXIS 22934, at *16 (N.D. Cal. Nov. 5, 2004)). The UCL is inter-

preted broadly and proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech*, 20 Cal. 4th 180; *People v. McKale*, 25 Cal. 3d 626, 632 (1979); *Ferrington*, 2010 U.S. Dist. LEXIS 106600, at *38-39. Virtually any state, federal or local law can serve as predicate for a § 17200 action. *See, e.g.*, *id.*; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 828 n.9 (2001); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474-75 (2006); *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). In effect, § 17200's "unlawful" prong makes violating the underlying law a *per se* § 17200 violation. *Kasky*, 27 Cal. 4th at 949-50.

### 2.   A statute may serve as basis for violating the unlawful prong as long as it does not expressly bar a private right of action

This broad definition of "unlawful" means that the UCL "can form the basis for a private cause of action even if the predicate statute does not." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). UCL remedies are cumulative to the remedies or penalties available under the predicate statute. *State of Cal. v. Altus Fin.*, 36 Cal. 4th 1284, 1303 (2005).

While Schwab admits that the UCL unlawful prong can borrow violations of other statutes, even those that do not provide for private enforcement, it would create an exception where, as here, the alleged violation concerns a statute enforced by government regulators (here, a securities statute largely enforced by the Securities Exchange Commission), or where a court declines to imply a private right of action under the statute. Br. at 4-7.

But UCL jurisprudence rejects such an exception. It is well established that the absence of a private right of action does not bar UCL borrowing of a statute. "[T]he [California] Legislature has clearly stated its intent that the remedies and penalties under the UCL be cumulative to other remedies and penalties." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566 (1998) (citing Cal. Bus. & Prof. Code § 17205). The UCL thus reaches unlawful business acts or practices, even where the underlying statute provides no private right of action. *See id.* at 561-67; *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210-11 (1983); *California Med. Assn. v. Aetna U.S. Healthcare of Cal. , Inc.*, 94 Cal. App. 4th 151, 169 (2001); *Chabner*, 225 F.3d at 1048; *Ferrington*, 2010 U.S. Dist. LEXIS 106600, at *41-42 (citing cases);

1   *Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006).  As the California

2   Supreme Court explained, "a private plaintiff may bring a UCL action even 'when the conduct

3   alleged to constitute unfair competition violates a statute for the direct enforcement of which there is

4   no private right of action.'"  *Kasky*, 27 Cal. 4th at 950.  *See also Optivus Tech., Inc. v. Ion Beam*

5   *Applications S.A.*, 469 F.3d 978, 986 (Fed. Cir. 2006) (quoting *Kasky*).

6           This holds true even where the underlying statute is enforced by a comprehensive regulatory

7   scheme.  In *Stop Youth Addiction*, for example, defendants argued that a criminal statute prohibiting

8   the knowing sale of cigarettes to minors could not form the basis of a claim under the unlawful

9   prong of the UCL because it, together with another act, embodied the legislature's intent to create a

10  comprehensive, exclusive scheme for combating the sale of tobacco to minors.  17 Cal. 4th at 560.

11  The California Supreme Court disagreed:  "even though a specific statutory enforcement scheme

12  exists, a parallel action for unfair competition is proper pursuant to applicable provisions of the

13  [UCL]."  *Id.* at 572 (citations omitted).  Similarly, in *Washington Mut. Bank, FA v. Superior Ct.*, 75

14  Cal. App. 4th 773, 783 (1999), a California court of appeals expressly held that an unlawful business

15  practices claim may be maintained under the UCL even where the underlying federal statute, by its

16  terms, can only be enforced by government regulators.

17          As Schwab points out, in some instances a statute explicitly bars private actions, which pre-

18  cludes borrowing the statute for a private UCL claim.  A court may not allow a plaintiff to "plead

19  around an *absolute bar* to relief simply by recasting the cause of action as one for unfair competi-

20  tion."  *Cel-Tech*, 20 Cal. 4th at 182 (emphasis added, quotation omitted).  But this limitation is

21  narrow.  "To forestall an action under [section 17200], *another provision* must actually 'bar' the

22  action or clearly permit the conduct."  *Id*. at 183 (emphasis added); *Ferrington*, 2010 U.S. Dist.

23  LEXIS 106600, at *42 (quoting *Cel-Tech*).  *Cel-Tech* explained that in evaluating unlawful or unfair

24  practices underlying a UCL claim, courts must be conscious of any specific legislative immunity:

25                      If the Legislature has permitted certain conduct or considered a
                        situation and concluded no action should lie, courts may not override
26                      that determination.  When specific legislation provides a "safe harbor,"
                        plaintiffs may not use the general unfair competition law to assault that
27                      harbor.  [20 Cal. 4th at 182.]

28          *Cel-Tech* cited *Rubin v. Green*, 4 Cal. 4th 1187 (1993), as illustration.  The *Rubin* plaintiff

1   relied on the UCL to pursue an action that was otherwise prohibited by California Civil Code

2   § 47(b)'s litigation privilege.  The court rejected plaintiff's tactic:

3           We "rejected the claim that a plaintiff may, in effect, 'plead around'
            absolute barriers to relief by relabeling the nature of the action as one
4           brought under the unfair competition statute."

5   *Cel-Tech*, 20 Cal. 4th at 182 (quoting *Rubin*, 4 Cal. 4th at 1201).  The litigation privilege created

6   absolute immunity for the *Rubin* defendant that "'may not be circumvented by recasting the action as

7   one under'" the UCL.  *Id*. (quoting *Rubin*, 4 Cal. 4th at 1202).

8           But *Cel-Tech* sharply circumscribed this rule:  "To forestall an action under the unfair

9   competition law, *another provision must actually 'bar' the action* or clearly permit the conduct."  *Id*.

10  at 183 (emphasis added).  The court was clear, however that "[t]hat other provision must actually bar

11  it,… and not merely fail to allow it."  *Id*. at 184.

12          Courts apply *Cel-Tech* to require explicit and specific legislative language that precludes

13  private enforcement.  The district court in *Southern Cal. Water Co. v. Aerojet-General Corp.*, 2003

14  U.S. Dist. LEXIS 26534 (C.D. Cal. Apr. 1, 2003), cited *Cel-Tech* to reject defendant's invoking of

15  the no-pleading-around-an-absolute-bar-to-relief rule by requiring defendant to cite provisions that

16  explicitly barred a private cause of action.  The court instructed defendants "to demonstrate that the

17  two statutes upon which Plaintiff's § 17200 claim is predicated absolutely bar private actions."

18  Defendants failed because they cited "*no language in either provision affirmatively barring a private

19  action* under § 17200 …."  *Id*. at *42-43 (emphasis added).  Additionally, a provision assigning en-

20  forcement authority to a governmental agency also "does not establish an affirmative bar to a private

21  action …."  *Id*. at *43.  *See also Stevens v. Superior Ct.*, 75 Cal. App. 4th 594, 606-07 (1999) (UCL

22  "allows nearly any law or regulation to serve as its basis *unless the predicate statute explicitly bars* a

23  private right of action, or the defendant is otherwise privileged or immune"; emphasis added);

24  *Cedars-Sinai Med. Ctr. v. United Healthcare Ins. Co.*, 2010 U.S. Dist. LEXIS 55150, at *15 (C.D.

25  Cal. May 7, 2010) ("the relevant inquiry is whether any of those provisions specifically bars a

26  private right of action").

27          This Court ruled similarly in *Ferrington*.  The Court revisited the *Cel-Tech* dichotomy that

28  plaintiffs (i) "may bring a UCL claim even when the conduct alleged to constitute unfair competition

violates a statute that does not provide a private right of action," yet (ii) may not "'plead around an absolute bar to relief' by recasting the cause of action" as a UCL claim.  2010 U.S. Dist. LEXIS 106600, at *41.  This Court explained that *Cel-Tech* reconciled these two principles by defining "absolute bar" narrowly, as "another provision [that] must actually, affirmatively bar the action"; only such a bar can "forestall an action under the unfair competition law ...."' *Id.* (internal quotation marks omitted).  The Court emphasized that any such bar must be explicit in the governing statute:

> Thus, *if a statute* indicates that exclusive enforcement authority shall lie with the government *and explicitly precludes* private enforcement, or *if a statute* expressly provides immunity for the conduct alleged, a plaintiff may not plead around this bar by bringing a claim under the UCL.  [*Id.* at *42 (emphasis added).]

As illustration, the Court cited *Summit Tech, Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299 (C.D. Cal. 1996).  Plaintiffs there asserted a Lanham claim based on violation of the Federal Food Drug and Cosmetic Act ("FDCA").  *See Ferrington*, 2007 U.S. Dist. LEXIS 81686, at *43.  This Court noted that *Summit Tech* dismissed that claim because the FDCA explicitly barred private enforcement actions, leaving enforcement exclusively in government hands.  *Id.*, at *43.  *See also Summit Tech.*, 922 F. Supp. at 305.

The *Ferrington* defendants urged that *Summit Tech* therefore precluded plaintiffs from asserting their UCL claim based on a Lanham Act violation, which permits private enforcement by "individuals and businesses who have suffered competitive or commercial injuries," which did not include plaintiffs.  *Ferrington*, at *44.  This Court disagreed, noting that "while the courts have determined that [Lanham Act] standing is limited to such persons," this was not "an express, absolute bar of the sort described in *Summit Tech*."  *Id.*  Plaintiffs thus could "predicate their UCL claim on the Lanham Act, even though they have no independent private right of action under the Act itself."  *Id.*

Also as illustration, *Ferrington* cited the ruling in *Hartless v. Clorox Co.*, 2007 U.S. Dist. LEXIS 81686 (S.D. Cal. Nov. 2, 2007), that an absolute bar to private actions exists when Congress *specifically contemplates and rejects* a private right of action.  *Hartless* dismissed a § 17200 claim based on a Federal Insecticide, Fungicide, and Rogenticide Act ("FIFRA") violation only because Congress expressly rejected a private right of action under the statute.  The court affirmed that such an explicit prohibition creates an absolute bar to borrowing the statute for a UCL claim.  *See id.*; *see*

*also id.* at *11-12 n.2 (distinguishing plaintiff's authorities on the ground that none of them proffered any indication that Congress "expressly rejected" a private action).

*Ferrington*, *Summit Tech* and *Hartless* thus did *not* rule that a statute's "regulatory regime" can constitute an explicit statutory bar to relief.  *Cf.*, Br. at 6.  Nor did Schwab's other authorities. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983), for example, simply ruled there is no private right to sue under FIFRA.

More to the point, none of them hold that the requisite explicit statutory bar to relief arises merely from a court decision, like *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106 (9th Cir. 2010), that declines to imply a private right of action.  Indeed, *Ferrington* concludes just the opposite.  *See* 2007 U.S. Dist. LEXIS 81686, at *44; *supra* at 9.  And for good reason:  Schwab's assertion runs afoul of the rule that the UCL can borrow a statute that does not provide for private enforcement.  Schwab cites no authority that the requirement that "a statute 'explicitly precludes private enforcement,'" *see* Br. at 7, can be found without explicit language in the statute or Congress's specific rejection.[5]

### 3.     Plaintiff may properly "borrow" violations of the Investment Company Act

Here, Schwab's violations of §§ 13(a) and 48(a) of the Investment Company Act ("ICA"), 15 U.S.C. 80a-13, 80a-47(a), may serve as a predicate act for the "unlawful" prong of Plaintiff's UCL claim.  The ICA contains no such explicit private-action-barring language; Schwab certainly cites none.  To the contrary, the ICA is one of a triumvirate of federal securities laws,[6] which do *not* explicitly bar private enforcement or create a "comprehensive regulatory regime that places enforce-ment authority exclusively in the government," *cf.*, *Ferrington*, 2010 U.S. Dist. LEXIS 106600, at *44.  Many sections of the securities laws support private causes of action.  *See, e.g., Transamerica*

---

[5] Schwab cites the naked conclusion in *Levy v. JP Morgan Chase*, 2010 U.S. Dist. LEXIS 118232, at *11 (S.D. Cal. Nov. 5, 2010), dismissing a UCL claim based on a Federal Trade Commission Act ("FTCA") violation for lack of a private enforcement right, but the decision contains no analysis regarding whether this lack constitutes the requisite explicit statutory bar to relief.  Nor does *Ballard v. Chase Bank United States, NA*, 2010 U.S. Dist. LEXIS 130097, at *7-9 (S.D. Cal. Dec. 9, 2010), which dismissed a UCL claim arising from violation of California Civil Code § 2923.6 due to the provision's lack of language creating a private right of action.  Like *Levy*, *Ballard* does not address whether this constitutes an absolute bar to relief.

[6] *See Northstar*, 615 F.3d at 1109.  This triumvirate includes the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Company Act of 1940.  *Id.*

1   *Mortg. Advisors v. Lewis*, 444 U.S. 11, 20 & n.10 (1979); *Blue Chip Stamps v. Manor Drug Stores*,

2   421 U.S. 723, 731 (1975).  Even several ICA provisions expressly allow private enforcement.  *See,*

3   *e.g.*, *Jones v. Harris Assocs. L.P.*, __ U.S. __, 130 S. Ct. 1418, 1423, 176 L. Ed. 2d 265, 274 (2010)

4   (private right of action under ICA § 36(b), 15 U.S.C. § 80a-35(b)); *Northstar*, 615 F.3d at 1110

5   (private right of action under ICA § 30(f), 15 U.S.C. § 80a-29(h)).

6          As to other ICA provisions including §§ 13(a) and 48(a), there is no explicit statutory bar to

7   private enforcement.  Congress was, at most, silent.  Far from expressly barring private actions, there

8   are many indications that Congress intended a private right of action for violations of § 13(a) and

9   other ICA provisions.  *See Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731,

10  734-36 (3d Cir. 1987) (discussing bases for implying private rights of action under ICA); *Fogel v.*

11  *Chestnutt*, 668 F.2d 100, 105-12 (2d Cir. 1981) (same).  For example, the legislative history for the

12  1980 ICA amendments expressed congressional enthusiasm for private enforcement:

13                The Committee wishes to make plain that *it expects the*
                  *courts to imply private rights of action under this*
14                *legislation*, where the plaintiff falls within the class of
                  persons protected by the statutory provision in question.
15                Such a right would be consistent with and further
                  Congress' intent in enacting that provision ….

16  *Bancroft*, 825 F.2d at 735 (quoting H.R. Rep. No. 1341, 96th Cong., 2d Sess. 28-29 (1980),

17  *reprinted in* 1980 U.S. Code Cong. & Admin. News 4810-11 (emphasis added, footnotes omitted)).

18  For years courts thus regularly recognized a private right of action under § 13(a) and other ICA

19  provisions.  *See Northstar*, 615 F.3d at 1121 (citing 15 cases implying § 13(a) private right of

20  action); *Fogel v. Chestnutt*, 668 F.2d at 110-11 (citing cases dating back to 1963).

21         But the Supreme Court repudiated its long-standing test for implying private rights of action

22  more than a decade ago.  *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (describing Supreme

23  Court's abandonment over previous 25 years of its former analysis, labeling it an "ancien regime").

24  While in the past, courts implied private enforcement rights when "necessary to make effective the

25  congressional purpose," *id.* (citing *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964)), the current test

26  disfavors implied rights.  Court now presume Congress's intention *not* to provide a private right of

27  action *absent explicit statutory authorization, see*, *e.g.*, *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429,

28

432 (2d Cir. 2002) ("[n]o provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i), and so we must presume that Congress did not intend one"). Reflecting the Supreme Court's current dim view of implied private rights of action, courts reject private rights of action under §§ 13(a), 48(a) and many other ICA provisions because Congress did not explicitly provide for them.  See, for example, *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116-17 (2d Cir. 2007) (courts "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided," thereby concluding there is no private right of action to enforce ICA §§ 34(b), 36(a), and 48(a)).  As the Ninth Circuit thus observed, "the modern trend has been for federal courts to deny the existence of implied private rights of action under the ICA." *Northstar*, 615 F.3d at 1122 (citing five district-court decisions dating back to 2005).  *See also In re American Mut. Funds Fee Litig.*, 2007 U.S. Dist. LEXIS 8276, at *23-24 (C.D. Cal. Jan. 17, 2007) ("District Courts, taking direction from [*Sandoval*], have uniformly held that Section 48(a) establishes no private right of action").  Courts now do not imply private rights of action under any ICA provision because Congress did not express its intent for private enforcement clearly enough to satisfy the Supreme Court's strict new standard.

This strict constructionist standard disfavoring implied private rights of action is, of course, far removed from *Cel-Tech*'s requirement of an explicit statutory bar to private enforcement. *Northstar*, for example, did not identify any such bar to a § 13 private action.  It instead denied a private right merely by concluding that "§ 13(a) does *not expressly create* a private right of action" and "nothing in the language or context of [ICA's 1970 and 2007] amendments demonstrates a *clear congressional intent* to allow private lawsuits to enforce the statute's provisions." 615 F.3d at 1115, 1118 (emphasis added).  *Northstar* did not, however, identify an ICA provision that could satisfy *Cel-Tech*'s explicit-statutory-bar requirement.  This failure to identify such a bar to a § 13(a) private action, while affirming only the lack of an implied right of action, renders *Northstar* "immaterial" here – because the UCL can redress "any unlawful business practice" irrespective of whether the borrowed statute lacks a private enforcement right.  *See Committee on Children's Television*, 35 Cal. 3d at 210-11 ("whether a private right of action should be implied under this statute … is immaterial"); *Stop Youth Addiction*, 17 Cal. 4th at 563; *Blakemore v. Superior Ct.*, 129 Cal. App. 4th 36, 52

n.17 (2005).  Under *Cel-Tech*, *Ferrington*, and Plaintiff's other authorities, *Northstar* does not bar

Plaintiff's UCL claim.  Plaintiff can assert Schwab's § 13(a) violation as unlawful and uncompeti-

tive conduct under the UCL.

    In addition, Schwab confuses Plaintiff's UCL action with a direct § 13(a) enforcement

action.  *See* Br. at 5.  But this Court in *Ferrington* properly distinguished a UCL action, with its

"narrow scope of remedies," from a private action to enforce the underlying statute.  *See* 2010 U.S.

Dist. LEXIS 106600, at *44-45.  So does the California supreme court:

> SYA is not suing under, or to enforce, Penal Code section 308 or the
> STAKE Act.  Rather, SYA seeks to enforce *the UCL* by means of resti-
> tution and an injunction…. [T]he fact a UCL action is based upon …
> policy ends underlying section 308 or the STAKE Act, does not, of it-
> self, transform the action into one for the "enforcement" of section 308.

*Stop Youth Addiction*, 17 Cal. 4th at 576 (emphasis in original, footnote omitted).  As in these

authorities, allowing Plaintiff to prosecute her UCL claim here "does not permit [her] to bring a

[§ 13(a)] claim by another name; rather, it permits [her] to seek limited restitution … for injuries

caused by business practices that [§ 13(a)] makes unlawful."  *See Ferrington*, 200 U.S. Dist. LEXIS

106600, at *45.  *See also Consumer Justice Ctr. v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056, 1067

n.17 (2002) ("[Defendants'] underlying assumption is that this lawsuit is somehow an attempt to use

state unfair competition laws to enforce federal laws.  No, the lawsuit is about state unfair advertis-

ing laws.").  Plaintiff's UCL claim thus does not seek to enforce § 13(a) despite *Northstar* or other-

wise "privatize what Congress left to the SEC …."  *Cf.*, Br. at 5.  Plaintiff instead seeks restitution

for Schwab's unlawful business practices.  *Northstar* again is no obstacle to Plaintiff's UCL claim.

**D.    SLUSA Does Not Preempt Plaintiff's Claim**

    Schwab misstates Plaintiff's claim to argue that the Securities Litigation Uniform Standards

Act ("SLUSA") preempts Plaintiff's claim.  SLUSA preemption requires a private "covered class

action" based upon a state's statutory or common law alleging "an untrue statement or omission of a

material fact in connection with the purchase or sale of a covered security …."  15 U.S.C. 77p(b)(1);

15 U.S.C. 78bb(f)(1)(A).  SLUSA does not preempt Plaintiff's state-law claims because the claims

do not arise from (i) a misrepresentation (ii) in connection with a securities transaction.

    Plaintiff does not allege that Schwab's unlawful acts involved any misrepresentation.

1    Section 13(a) concerns fund governance, not disclosure.  *In re Charles Schwab Corp. Secs. Litig.*,

2    2010 U.S. Dist. LEXIS 32113, at *12 (N.D. Cal. Mar. 30, 2010).  Disclosures or concealment are

3    irrelevant to Plaintiff's § 13(a) claim, and Plaintiff does not allege that Defendants made any misre-

4    presentation or material non-disclosure before or on the May 31, 2007 violation date, ¶¶ 55, 68, 74.

5    Indeed, as early as September 1, 2006, the Fund fully disclosed its decision to concentrate assets in

6    mortgage-backed securities.  ¶ 66.

7        Judge Alsup recently rejected the same arguments proffered by these same defendants in *In*

8    *re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009) ("*Schwab I*").  Judge Alsup

9    recognized that plaintiffs' UCL and other state-law claims, based on another Schwab fund's § 13(a)

10   violation, "are not, in substance, predicated on misrepresentations or omissions." *Id*. at 551.  Like

11   Ms. Smit's claim, they instead arose from Schwab's violation of a concentration policy:

12           Rather, each of those claims asserts a violation arising from an allegedly
             unauthorized change of the fund's concentration policy ….  Plaintiff
13           alleges that the violations occurred when the fund changed its concen-
             tration policy … without a shareholder vote ….  Plaintiff alleges that …
14           the Investment Company Act, required the shareholder vote.  [*Id*.]

15   Judge Alsup thus concluded, "[n]one of these claims are predicated on a misrepresentation," and

16   they therefore "are not preempted." *Id*. at 551.  *See also In re Charles Schwab Corp. Sec. Litig.*, 264

17   F.R.D. 531, 539 (N.D. Cal. 2009) ("*Schwab II*") (reaffirming SLUSA's inapplicability).

18       Schwab's attempt to distinguish this claim from the nearly identical claims that Judge Alsup

19   declined to dismiss under SLUSA by miscasting Ms. Smit's claim as founded on misstatements:

20   "The gravamen of Ms. Smit's complaint is a series of misrepresentations and omissions.  Plaintiff's

21   complaint is based on the concept that Schwab fundamentally misrepresented the riskiness of the

22   Fund and that it omitted or failed to disclose risks resulting from the change in concentration

23   policy." Br. at 14.  Schwab is wrong.  First of all, any such non-disclosure would be irrelevant to a

24   § 13(a) violation.  Schwab does not – because it cannot – explain how any such non-disclosure could

25   be "the gravamen of Ms. Smit's complaint …."[7]

26   _____

27       [7] Further, while Schwab downplays the Fund's statements of fundamental policies as mere
     "promises" to investors, those statements are in fact mandated by federal statute.  The ICA's § 8(a)
28   requires an investment company to file with the SEC a registration statement reciting the Regis-
     trant's policy regarding "*concentrating investments in a particular industry* or group of industries

1        More importantly, Schwab fails to identify any misrepresentation made at or about the

2    May 31, 2007 violation date (or any date).  It highlights several statements that *were true when made*

3    but became incorrect years later.  Br. at 14-15, & esp. 14:24-25 ("[a]nd all of them, Ms. Smit claims,

4    turned out to be untrue").  As Schwab admits, the FAC alleges "that *after* making these representa-

5    tions, the Fund 'materially deviated from its fundamental policy.'"  Br. at 14 (emphasis added).

6    Schwab cites no allegation that the highlighted statements were false when issued.  Statements that

7    are true when made, however, are not misrepresentations.  *See*, *e.g.*, *In re Syntex Corp. Secs. Litig.*,

8    95 F.3d 922, 929 (9th Cir. 1996) (fraud claim dismissed that did not allege statement that "was false

9    when made"); *Yourish v. California Amplifier*, 191 F.3d 983, 996 (9th Cir. 1999) (fraud complaint

10    must allege "the statement was false when made"); *Mitec Partners, LLC v. U S. Bank Nat'l Ass'n*,

11    605 F.3d 617, 623 & n.3 (8th Cir. 2010) (dismissal granted where "no evidence the statement was

12    false when made"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007)

13    (same); *In re Countrywide Fin. Corp. Secs. Litig.*, 2009 U.S. Dist. LEXIS 129807 (C.D. Cal. Dec. 9,

14    2009) ("[i]n securities cases, the most important questions involve … essentially, an inquiry into

15    whether a representation was false when made").  A statement that, while true when made, later

16    becomes false is not actionable as a misrepresentation.  *See*, *e.g.*, *In re Symbol Techs. Class Action*

17    *Litig.*, 950 F. Supp. 1237, 1242 (E.D.N.Y. 1997) ("Defendants cannot be held liable for statements

18    that were true when made").[8]

19        But statements that were true when made are all that Schwab identifies.  They therefore are

20    …."  15 U.S.C. 80a-8(b)(1)(E) (emphasis added).  Section 8(b) goes on to require disclosure of a fund's other fundamental policies:  "all [other] investment policies of the registrant … which are

21    changeable only if authorized by shareholder vote," and all policies that "the registrant deems

22    matters of fundamental policy."  15 U.S.C. 80a-8(b)(2) & (3).  As explained above, § 13(a)(3) then makes it a violation of the Act for a fund to change its disclosed concentration policy or other

23    fundamental policies unless a majority of the fund's shareholders first vote to authorize the change. 15 U.S.C. 80a-13(a)(3).  Schwab's misconduct thus involves more than a promise and breach;

24    Schwab violated federal statutues governing the Fund's fundamental character.  And their violation was completed and actionable without any misrepresentation to investors.

25    [8] *See also Coronel v. Quanta Capital Holdings Ltd.*, 2009 U.S. Dist. LEXIS 6633, at *80-81

26    (S.D.N.Y. Jan. 23, 2009); *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995) ("[a]n inability to foresee the future does not constitute fraud, because the securities laws approach matters from an *ex*

27    *ante* perspective"; quoting *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1132 (7th Cir. 1993)). *See generally In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("often there is no reason to assume that … simply because the alleged misrepresentation conflicts with the current

28    state of facts, the charged statement must have been false").

not misrepresentations, and it is immaterial that they "turned out to be untrue." Br. at 14. Thus, while Schwab contends that identifying "a *single* alleged misrepresentation is enough to trigger SLUSA," Br. at 15 (emphasis in original), Schwab fails to do even that. Just as Judge Alsup ruled in the *Schwab* YieldPlus litigation, Plaintiff's UCL claim arising from Schwab's § 13(a) violation alleges no preemption-triggering misrepresentation. The "gravamen" of Plaintiff's complaint is Schwab's unlawful deviation from the Fund's fundamental policies, not "misrepresentations and omissions." *Cf.*, Br. at 14.[9] SLUSA does not preempt Plaintiff's UCL claim.[10]

### E.    Plaintiff Has Standing to Assert Her UCL Claim

Schwab disputes that Plaintiff has alleged standing to assert her UCL claim. Br. at 10-11. Standing under the UCL requires only a showing of "some form of economic injury." *Kwikset Corp. v. Superior Ct.*, __ Cal. 4th __, 2011 Cal. LEXIS 532, at *18-19 (Jan. 27, 2011); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802-03 (2006) (allegations of actual economic injury as a result of an illegal business practice establishes UCL standing). This economic injury is distinct from UCL remedies and need not involve losses eligible for restitution. *Kwikset*, at *52-55. There are "innumerable ways to show economic injury from unfair competition, including a diminished pro-perty interest. *Id*. at *19. The FAC asserts such injury, alleging that the value of Plaintiff's shares plummeted because Schwab violated Plaintiff's voting rights by deviating from the Fund's funda-mental policies without shareholder approval in violation of federal law. *E.g.*, ¶¶ 87, 89. The Fund's deviations exposed the Fund and its shareholders to tens of millions of dollars in losses stemming from a sustained decline in the value of non-agency mortgage-backed securities. Not only did the Fund experience a negative total return, but that return was nearly 13% below the total return for the purportedly comparable Index for the period August 31, 2007, through February 27, 2009. The Fund materially deviated from fundamental investment policies on or about May 31, 2007. Its shares closed that week at $9.72, plunged soon afterwards and never recovered. *See supra* at 4.

---

[9] Schwab's insistence that it is only by artful avoidance that the FAC failed to overtly allege misrepresentations or omission (Br. at 7:9-22) is thus specious misdirection.

[10] This dearth of alleged misrepresentations or omissions on May 31, 2007, or before also negates SLSUA's "in connection with the purchase or sale of a security" requirement. 15 U.S.C. 78bb(f)(1)(A); *cf.*, Br. at 15.

1    These allegations of diminished returns sufficiently allege economic injury and, thus,

2    Plaintiff's UCL standing. *See, e.g., Hinjos v. Kohl's Corp.*, 2010 U.S. Dist. LEXIS 130300, at *7

3    (C.D. Cal. Dec. 1, 2010) (quoting California court of appeal definition of loss, for purposes of

4    § 17204, as including "the disappearance or diminution of value, usu[ally] in an unexpected or

5    relatively unpredictable way"); *Finelite, Inc. v. Ledalite Architectural Prods.*, 2010 U.S. Dist.

6    LEXIS 88041, at *3-4 (N.D. Cal. Aug. 26, 2010) (UCL standing pled via allegations of "lost profits"

7    resulting from unfair competition); *G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 U.S. Dist.

8    LEXIS 91327, at *14 (N.D. Cal. Dec. 12, 2007) ("allegations of lost income were enough to

9    establish injury-in-fact, and therefore to establish standing").[11]  Plaintiff had a vested interest in the

10   returns that the Fund would have generated by following its fundamental policies as mandated by

11   § 13(a).  Plaintiff can also quantify her losses by comparing the Fund's abysmal post-deviation

12   returns against the Index's returns, which the Fund closely tracked *before* it began deviating from its

13   fundamental policies.  *See* ¶¶ 59, 63 (graph).

14   Schwab tries to sidestep this patent pleading of economic injury.  Without authority or

15   analysis, Schwab insists that the Court must determine economic injury by calculating total returns

16   dating all the way back to Plaintiff's October 1998 initial purchase.  Br. at 11.  But Plaintiff alleges

17   no misconduct tainting those distant purchases.  Standing is determined by economic injury that was

18   the "'result' of Schwab's alleged deviation" from its fundamental policies, *see* Br. at 10-11 (citing

19   Bus. & Prof. Code § 17204); *id.* at 11:13-14 (citing *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855

20   (1980)).  Plaintiff need not allege injury from "her purchase of fund shares" nine years earlier.  *Cf.*,

21   *id.* at 11:11.  Schwab proffers no reason – because there isn't any – that the Fund's performance

22   during the nine years *before* Schwab deviated from its fundamental policies is relevant to standing.

23   **F.    Plaintiff Pleads Entitlement to UCL Relief**

24   Schwab asserts that the FAC fails to plead entitlement to UCL relief.  Br. at 7-10.  Section

25   17203 authorizes orders necessary to restore money to any person in interest from whom the money

---

[11] *See also Certain Underwriters at Lloyd's v. Real Estate Professionals Ins. Co.*, 2007 U.S. Dist. LEXIS 88241, at *16-17 (C.D. Cal. Nov. 26, 2007); *Automobile Club v. Auto Club, Ltd.*, 2007 U.S. Dist. LEXIS 19230, at *2-3 (C.D. Cal. Jan. 3, 2007); *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006).

1   was obtained through an unfair business practice. CAL. BUS. & PROF. CODE 17203. Schwab first

2   accuses Plaintiff of seeking "tort damages" under the guise of restitution. But Schwab confuses

3   allegations of Plaintiff's standing to assert her UCL claim with her request for UCL relief, which, as

4   *Kwikset* held, 2011 Cal. LEXIS 532, at *52-55, are different matters. As just shown, Plaintiff's

5   allegations that Schwab's uncompetitive conduct caused her economic injury (*e.g.*, ¶¶ 87, 89)

6   establish standing. *Compare supra* at 16-17 *with* Br. at 9. They do not define her requested relief.

7       Schwab next pronounces that the FAC nowhere requests "restitutionary recovery." Br. at 8.

8   But Schwab inexplicably ignores the FAC's plea to restore money to her that Schwab obtained

9   unlawfully:

10          Plaintiff requests that this Court enter such orders and judgments as may
           be necessary to restore to any person in interest any money that may
11          have been acquired by means of such unfair competition, as provided in
           California Business & Professions Code §§ 17203 and Civil Code
12          § 3345, and for such relief as set forth in the Prayer for Relief. [¶ 90.]

13   The FAC at page 21, ¶ C, also seeks rescissionary relief. Schwab's assertions notwithstanding,

14   Plaintiff thus does plead that Schwab unlawfully obtained monies subject to restitution, which is all

15   that Fed. R. Civ. P. 8 requires.

16       The FAC also alleges greater detail. A UCL award of restitution represents "money that once

17   had been in the possession of the person to whom it [is] to be restored." *Cortez v. Purolator Air*

18   *Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000). The FAC is clear that Plaintiff paid money to

19   Schwab for her shares. *See* ¶¶ 9, 78(i). Plaintiff's purchases from Schwab distinguish Schwab's

20   authority, *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997 (2005), where

21   plaintiffs sought nonrestitutionary disgorgement, having never had interest in the money they sought

22   to recover. *Id.* at 1006, 1015-16. *Feitelberg* nowhere indicates plaintiffs purchased anything from

23   defendants. Plaintiff here, by contrast, certainly can demand that Schwab "restore" money she paid

24   to it. *Cf.*, Br. at 8:18-20; *see also id.* at 8:7-8.

25       Schwab also unfairly "acquired" monies for § 17203 restitution purposes because this term

26   encompasses monies "wrongfully retained." Section 17203 authorizes courts to fashion remedies to

27   prevent, deter, and compensate for unfair business practices. *Cortez*, 23 Cal. 4th at 176. "A court of

28   equity may exercise its full range of powers in order to accomplish complete justice between the

parties, restoring if necessary the *status quo ante* as nearly as may be achieved." *Cortez*, 23 Cal. 4th at 177 (quoting *Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d 442, 452 (1979); internal quotation marks omitted). Courts thus interpret this provision broadly. In *Rosales v. Citibank*, 133 F. Supp. 2d 1177 (N.D. Cal. 2001), the court broadly interpreted § 17203's "acquired" language to include the wrongful retention of funds. The plaintiff had deposited money with the defendant bank. Some time later, an unknown and authorized person made ATM withdrawals from plaintiff's account. The bank refused to reimburse plaintiff, who then brought a UCL claim for restitution of deposit money that the bank had lost. The bank moved to strike the claim, arguing that plaintiff was not legally entitled to restitution because the bank had not acquired something it was not authorized to keep: "Plaintiff has not alleged that Defendant has improperly obtained or received any funds from him." 133 F. Supp. 2d at 1180-81.

The district court rejected Citibank's argument because the money in the account belonged to the plaintiff and the bank had allowed it to be lost. *Id*. at 1181; *see also id*. ("[t]he fact that Citibank no longer has those funds that it allowed to be removed from [the plaintiff]'s account does not change the analysis"). The court accordingly determined that the bank had "arguably 'acquired money by means of unfair competition'" that could be restored under § 17203, even though the bank had initially obtained plaintiff's money lawfully. *Id*. at 1181-82. *See also Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 123, 138 (2000) (affirming award of restitution under § 17203 to plaintiffs for security deposit lawfully obtained but wrongfully retained); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 698-99 (2006) (relying in part on *Restatement of Restitution*, § 151: "Where a person is entitled to a money judgment against another because by fraud, duress or other consciously tortious conduct the other has … retained … his property, the measure of recovery for the benefit received by the other is the value of the property at the time of its improper … retention …"); *Roman v. Korson*, 152 F.R.D. 101, 109 (W.D. Mich. 1993) (security deposits wrongfully withheld recoverable as restitution by class).

Plaintiff thus pleads entitlement to restitution under the UCL for funds Schwab wrongfully retained. Schwab took hundreds of dollars from her and wrongfully retained it when Schwab revoked the Fund's bedrock conservative nature and deviated from its fundamental investment

1    policies without first obtaining shareholder approval, in violation of § 13(a).

2          Judge Alsup accordingly rejected Schwab's same arguments in *Schwab*.  The court ruled that

3    identical allegations sufficiently pled plaintiffs' request to "'restore the status quo by returning to the

4    plaintiff funds in which he or she has an ownership interest,'" in the form of "lost principle paid for

5    the shares," thus pleading plaintiffs' entitlement to UCL restitutionary relief.  *See Schwab II*, 264

6    F.R.D. at 539-40 (quoting *Colgan*, 135 Cal. App. 4th at 697).  This conclusion applies equally here.

7    Plaintiff stated her claim to UCL relief.

8    **G.**    **Plaintiff's Claim, Predicated on Violation of Voting Rights, Is Direct**

9            **1.**    **Plaintiffs' UCL claim arising from Schwab's violation of their voting rights is direct, not derivative**

10          Schwab contends that Plaintiff's UCL claim for restitution is, under Massachusetts law,

11    derivative and, therefore, Plaintiff cannot seek a direct recovery.  Br. at 19.  Schwab is correct that

12    Massachusetts law applies, but wrong as to the rest.  To determine whether a claim can be brought as

13    direct or derivative, the test is whether the plaintiff has alleged "an injury distinct from that suffered

14    by shareholders generally or a wrong involving one of his or her contractual rights as a shareholder

15    …."  *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (applying Massachusetts law).  As its

16    example, the Ninth Circuit cited injury to "the right to vote."  *Id*.  Much like the allegations here,

17    *Lapidus* found that allegations of violations of shareholder rights to vote on proposed changes to

18    security restrictions spelled out in a registration statement satisfied the injury requirement for a direct

19    action under Massachusetts law.  *Id*.  Schwab agrees – it *admits* that "a claim relating to voting rights

20    is a direct claim," even citing *Lapidus*.  *See* Br. at 20:2-4.

21          Schwab asserts instead that Plaintiff's claim must be derivative because the injury is mea-

22    sured by the diminution in the Fund's value.  *Id*. at 17:25-27.  Schwab is wrong for several reasons.

23    First, as already shown, Plaintiff seeks restitution, not damages for loss of value.  *See supra* at 17-20.

24          But more to the point, Schwab misreads *Lapidus*, claiming that it draws "a careful distinction

25    between 'voting rights injuries and 'diminution in value' injuries."  *Id*. at 20.  Schwab characterizes

26    *Lapidus* as ruling that, regardless of the direct nature of plaintiffs' voting-rights claim, that claim

27    became derivative where plaintiffs' damages arose from the "diminution in the value of his or her

28

1   shares." *Id.* (purporting to quote *Lapidus*, 232 F.3d at 683).  Schwab also asserts that *Lapidus* then

2   "affirmed dismissal of the plaintiffs' damages claim ...."

3         But *Lapidus* did nothing of the sort.  The Ninth Circuit ruled that the injury from a voting-

4   rights violation is inherently direct, even if the alleged injury is general to all shareholders:

5                  Under the plain language of the injury test, which is written in the
        disjunctive, it is unnecessary to allege an injury distinct from that
6                  suffered by shareholders generally if the alleged injury is predicated
        upon a violation of a shareholder's voting rights.  [232 F.3d at 683.]

7

8   The court affirmed the claim as direct, even though plaintiffs sought to recover "losses sustained by

9   the mutual fund ...."  *Id*. at 680.  The nature of the injury, *not* the requested relief, determined the

    direct or derivative character of a claim.  *See id*. at 683.[12]
10

11         Schwab asserted its same argument in the *Schwab* YieldPlus litigation, and Judge Alsup

    rejected it:
12

13                  Defendants argue that plaintiffs were required to bring the Section
        17200 claim derivatively, on behalf of the fund, rather than directly, as
14                individual investors.  The Ninth Circuit has held, however, that claims
        of deprivation of voting rights under the ICA involve wrongs to the
        individual investor rather than the corporate entity and therefore may
15                be brought directly.

16   *Schwab II*, 264 F.R.D. at 539 (citing *Lapidus*, 232 F.3d at 683).  Schwab would distinguish *Schwab*

17   by fabricating a difference between the claims.  It asserts that the *Schwab* YieldPlus claim "was

18   plainly that shareholders had a right to vote on any changes in that mutual fund's concentration

19   limits," Br. at 19 n.3 (citing *Schwab*, 264 F.R.D. at 539, 534 n.2), but that Plaintiff's claim is differ-

20   ent:  "she suffered lower investment returns because the Fund deviated from its investment policy,"

21   *id*. at 20 n.3.  Nonsense.  The claims are the same.  Plaintiffs in both cases predicated their UCL

22   claims on Schwab's violations of § 13(a), which mandates a shareholder vote on any proposed

23   changes to a fund's fundamental policies.  The statute creates a right to vote by prohibiting devia-

24   tions from any fundamental policy without shareholder approval.  Judge Alsup recognized that the

25   ────────────────
    [12] The *Lapidus* court then turned to plaintiffs' ICA § 80a-18(f) claim (15 U.S.C. § 80a-18(f)),
26   which "was not based on an injury to their voting rights."  232 F.3d at 683.  This claim instead
    asserted injury "to the trust generally."  *Id.*  "Therefore, any harm to the fund-series shareholders ...
27   would be only indirect."  *Id*.  In that instance the only financial injury was the "diminution in the
    value of his or her shares," giving rise to a derivative claim.  *See id*.  By arguing that the Ninth
28   Circuit directed this language to plaintiffs' voting-rights claim, Schwab misreads *Lapidus*.

UCL claim arose from Schwab's violation of plaintiffs' voting rights, and thus, under *Lapidus*, plaintiffs could assert it directly.  This case is no different.  Schwab's voting-rights violation created an injury personal to Plaintiff, and she thus can assert a direct claim to recover for that injury.

Schwab's authorities are inapplicable.  The court in *In re J.P. Morgan Chase & Co. S'holder Litig. v. Harrison*, 906 A.2d 766 (Del. 2006), did not consider restitutionary relief.  It instead addressed whether shareholders can recover "compensatory damages" where plaintiffs pled no facts from which "any quantifiable amount … can be inferred from the claimed infringement of their right …." *Id*. at 773.  The court rejected plaintiffs' attempt to measure their compensatory damages by their derivative share of the losses suffered by the corporation because, in such a case, a defendant "would be liable to pay both the corporation and its shareholders the same compensatory damages for the same injury." *Id.*  Schwab's citation to *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346 (Del. Ch. 2008), likewise fails.  Plaintiffs there sought compensatory damages, which were unavailable due to an "exculpatory provision" authorized by Delaware law.  *Id*. at 363.  The courts in *Halebian v. Berv*, 631 F. Supp. 2d 284, 302 (S.D.N.Y. 2007), and *In re WorldCom, Inc*, 323 B.R. 844, 856 (Bankr. S.D.N.Y. 2005), both deemed plaintiffs' claims as based on misrepresentations rather than violation of voting rights.

In any event, the Ninth Circuit's *Lapidus* decision controls this case.  To the extent any of Schwab's authorities hold that the nature of the asserted injury can transform a direct voting-rights claim into a derivative claim, it would be contrary to *Lapidus* and must be rejected.

### 2.    Schwab resorts again to mischaracterizing Plaintiff's claim

Stuck with its admission and Judge Alsup's ruling in *Schwab*, Schwab misleads by recasting Plaintiff's claim as "essentially" alleging that "the Fund's assets were mismanaged, in violation of stated investment objectives," and that Plaintiff seeks to recover "lost investment profits," which is an injury to the Fund as a whole.  Br. at 17-18, 19.  But that is not Plaintiff's claim.  Section 13(a) is not concerned with "mismanagement"; it addresses only on a fund's departure from its governing, fundamental investment policies without shareholder approval.[13]  Schwab's § 13(a) violation denied

---

[13] Plaintiff also seeks restitution, not lost profits.  *See supra* at 17-20.

1   shareholders their voting rights and created an injury personal to Plaintiff and each class member.

2   Plaintiff thus can assert a direct claim for that injury.

3         Schwab's authorities do not concern voting-rights violations and are thus inapposite.  *See*

4   *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (claims for breach of

5   fiduciary duty or unjust enrichment); *Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct.

6   1990) (duty of proper management); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal.

7   2005) (duty of proper management and fiduciary duty); *Everett v. Bozic*, 2006 U.S. Dist. LEXIS

8   55824, at *2, 2006 WL 2291083 (S.D.N.Y. Aug. 2, 2006) (negligence, breach of fiduciary duty, and

9   violations of various ICA sections based on a duty of proper management); *Sarin v. Ochsner*, 721

10  N.E.2d 932, 933 (Mass. App. Ct. 2000) (breach of fiduciary duty); *Hamilton v. Allen*, 396 F. Supp.

11  2d 545 (E.D. Pa. 2005) (same).  Schwab highlights *Ex parte Regions Fin. Corp.*, __ So.3d __, 2010

12  Ala. LEXIS 183, 2010 WL 3835727 (Sept. 30, 2010), but it too only concerns allegations of

13  misrepresentations and mismanagement involving investment policies, but does not implicate

14  § 13(a) or any other voting right.

15        Only one of Schwab's cited cases involved allegations that defendants violated § 13(a)(3)

16  "by deviating from the Funds' 'fundamental' investment policies without obtaining shareholder

17  authorization," *In re Dreyfus Aggressive Growth Mut. Funds Litig.*, 2000 U.S. Dist. LEXIS 94, at *2,

18  *11-15, 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000), but it also is inapposite.  The § 13(a)(3) claim was

19  pled with four other ICA claims that all related to improper management such as self-dealings,

20  untrue statements and breach of fiduciary duties.  *Id*. at *12.  The *Dreyfus* court did not individually

21  address whether each of the ICA claims was derivative or direct and instead lumped them all

22  together, applied Maryland law, and dismissed them all as derivative "breach[es] of trust."  *Id*.

23  (quoting *Strougo v. Schudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 790 (S.D.N.Y. 1997)).

24  *Dreyfus* is thus unpersuasive and, in any event, *Lapidus* controls here.

25  **H.     Plaintiff Filed Her Claim within the UCL's Four-Year Limitations Period**

26        The Court can readily resolve Schwab's cursory statute-of-limitations argument (Br. at 21).

27  Schwab admits that Plaintiff can file her UCL claim at any time during the four years after her claim

28  accrued.  *Id*. (citing § 17208).  Schwab also admits that Plaintiff filed her claim on September 13,

1  2010.  *Id.*  Her claim arose – at the earliest – when Schwab violated § 13(a)(3), that is, when "it

2  deviate[d], without shareholder approval," from a fundamental investment policy.  *Northstar*, 615

3  F.3d at 1111.  *See also Blatt v. Merrill Lynch, Pierce, Fenner & Smith*, 916 F. Supp. 1343, 1357-58

4  (D.N.J. 1996) (statute began to run on § 13(a) violation when plaintiff's counsel learned of defen-

5  dants' deviations from stated investment policies).  The FAC alleges that Schwab materially

6  deviated from its fundamental investment policies on or around May 31, 2007.  ¶¶ 55, 68.  Plaintiff

7  filed her UCL claim less than four years later.

8       Schwab insists instead that the violation occurred on September 1, 2006, when Schwab tried

9  to change its concentration policy.  *See* Br. at 21.  But Plaintiff alleges that Schwab violated § 13(a)

10  by deviating from concentration and other fundamental policies.  Section 13(a) addresses *that*

11  conduct, *see* 15 U.S.C. 80a-13(a)(3), not efforts to change fundamental policies.  Schwab's

12  attempted September 1, 2006 revisions did not violate § 13(a) nor trigger the statute of limitations.

13       Further, Schwab's purported revision was ineffective.  Schwab required shareholder

14  authorization to change the Fund's concentration policy.  Section 8(a) of the ICA requires a fund's

15  prospectus to recite the fund's policy regarding "concentrating investments in a particular industry or

16  group of industries" as well as any other investment policies that "are changeable only if authorized

17  by shareholder vote."  15 U.S.C. 80a-8(b)(1)(e) & (b)(2).  Schwab never obtained that authorization,

18  so its attempt to alter the policy failed.  The unlawful deviation thus related solely to the original

19  concentration policy.  And the FAC alleges that that violation occurred on or around May 31, 2007,

20  well within four years of Plaintiff's September 2010 filing.  Plaintiff's claim is timely.[14]

21  **I.  Schwab Defendants That Caused the Fund to Violate § 13(a) Are Liable Under § 48**

22       Plaintiff alleges that the Fund's registered broker-dealer, defendant Charles Schwab & Co.

---

[14] A discovery rule many also apply to toll the statute.  *E.g.*, *Broberg v. The Guardian Life Ins. Co. of America*, 171 Cal. App. 4th 912, 920-21 (2009); *Stearns v. Select Comfort Retail Corp.*, 2010 U.S. Dist. LEXIS 84777, at *52-53 (N.D. Cal. July 21, 2010).  As this Court has already ruled in this litigation, the discovery rule injects factual questions to the timeliness inquiry that cannot be resolved on a Rule 12(b)(6) dismissal motion.  *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 948 (N.D. Cal. 2009) (Dkt. No. 74).  To the extent the Court might be inclined to dismiss Plaintiff's claim on timeliness grounds, Plaintiff ask for leave to amend to allege that a reasonable investor would not have discovered her UCL claim more than four years before she filed her complaint.

and its investment advisor, defendant Charles Schwab Investment Management, Inc., violated § 48(a) of the ICA, 15 U.S.C. § 80a-47(a), by causing defendant Schwab Investments to violate § 13(a).  ¶ 84.  Schwab argues that Plaintiff cannot borrow that violation for her UCL claim because, as with § 13(a), there is no implied right of action under § 48(a).  This argument fails for the same reasons as Schwab's argument under § 13(a).  *See supra* at 5-13.

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny Schwab's motion to dismiss.

DATED:  February 4, 2011                    HAGENS BERMAN SOBOL SHAPIRO LLP


                                                     /s/ Steve W. Berman
                                              STEVE W. BERMAN

                                        Steve W. Berman
                                        Sean R. Matt
                                        Erin K. Flory
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        1918 Eighth Avenue, Suite 3300
                                        Seattle, WA  98101
                                        Telephone: (206) 623-7292
                                        Facsimile:  (206) 623-0594
                                        steve@hbsslaw.com
                                        sean@hbsslaw.com

                                        Reed R. Kathrein (139304)
                                        715 Hearst Ave., Suite 202
                                        Berkeley, CA  94710
                                        Telephone: (510) 725-3000
                                        Facsimile:  (510) 725-3001
                                        reed@hbsslaw.com
                                        peterb@hbsslaw.com

                                        *Counsel for Plaintiff Smit and the Proposed Class*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on February 4, 2011, I electronically filed the foregoing with the Clerk

3   of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4   addresses registered.

5

6                                            _____/s/ Steve W. Berman_____
                                                    STEVE W. BERMAN
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28