1  RICHARD A. SCHIRTZER (Bar No. 150165)
   richardschirtzer@quinnemanuel.com
2  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   865 South Figueroa Street, 10th Floor
3  Los Angeles, CA  90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100

5  KARIN KRAMER (Bar No. 87346)
   karinkramer@quinnemanuel.com
6  PATRICK DOOLITTLE (Bar No. 203659)
   patrickdoolittle@quinnemanuel.com
7  ARTHUR ROBERTS (*pro hac vice*)
   arthurroberts@quinnemanuel.com
8  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   50 California Street, 22nd Floor
9  San Francisco, CA  94111-4788
   Telephone: (415) 875-6600
10 Facsimile: (415) 875-6700

11 Attorneys for defendants Charles Schwab & Co., Inc.,
   Schwab Investments, and Charles Schwab Investment Management, Inc.

12

13                    UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

15

| | |
|---|---|
| 16  JERRY SMIT, individually and on behalf of all others similarly situated, | Case No.     10-cv-3971 LHK |
| 17                        Plaintiff, | CLASS ACTION |
| 18       v. | **SCHWAB DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| 19  CHARLES SCHWAB & CO., INC., SCHWAB INVESTMENTS and, CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., | |
| 20 | Date:  March 3, 2011 |
| 21 | Time:  1:30 p.m. |
|    | Court: Hon. Lucy Koh |
| 22                        Defendants. | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ...................................................................................................................... 2

    A.    Plaintiff May Not Use The UCL To Dodge The Ruling in *Northstar* ...................... 2

        1.    The UCL Does Not Authorize Borrowing Federal Statutes for Which There Is No Private Right of Action ................................................. 2

        2.    Even Under the "Bar" Test for California Statutes, Plaintiff's Claim Fails ................................................................................................................ 5

    B.    Plaintiff Cannot Obtain Restitutionary Or Injunctive Relief ................................... 7

    C.    Ms. Smit Lacks Standing Under The UCL ............................................................. 9

    D.    The Securities Litigation Uniform Standards Act Bars Ms. Smit's Section 17200 Claim ........................................................................................................... 10

    E.    Ms. Smit's Claim Must Be Asserted Derivatively ................................................ 11

    F.    The Claim Regarding the Change to the Concentration Policy Has Expired ......... 13

    G.    Neither Charles Schwab & Co. Inc. Nor Charles Schwab Investment Management Inc. Can Be Liable Under Plaintiff's § 17200 Theory ...................... 13

III.    CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

### Cases

*Almond Hill School v. United States Dept. of Agriculture*,
  768 F.2d 1030 (9th Cir. 1985)......................................................................................6, 7

*Banga v. Allstate Ins. Co.*,
  2009 U.S. Dist. LEXIS 86619 (E.D. Cal. Sept. 22, 2009) ................................................4

*Barquis v. Merchants Collection Ass'n*,
  7 Cal. 3d 94 (1972)...........................................................................................................5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)......................................................................................................3

*In re Charles Schwab Corp. Sec. Litig.*,
  264 F.R.D. 531 (N.D. Cal. 2009) ................................................................................9, 13

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006).......................................................................................8, 9

*Committee on Children's Television, Inc. v. General Food Corporation*,
  35 Cal. 3d 197 (1983).......................................................................................................2

*Compare In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009) ....................................................................................11

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
  2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. March 31 2006)..............................................4

*Corbett v. Super. Ct.*,
  101 Cal. App. 4th 649 (2002)...........................................................................................9

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  2000 WL 10211 (S.D.N.Y. Jan. 6, 2000).......................................................................12

*Feitelberg v. Credit Suisse First Boston, LLC*,
  134 Cal. App. 4th 997, 1012 (2005).................................................................................8

*Feitelberg v. Merrill Lynch & Co., Inc.*,
  234 F. Supp. 2d 1043 (N.D. Cal.  2002) ........................................................................10

*Ferrington v. McAfee, Inc.*,
  2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) .......................................4, 5, 6

*Groce v. Claudat*,
  No. 09cv1630, 2010 WL 3339406 (S.D. Cal. Aug. 24, 2010)..............................10, 13

*Halebian v. Berv*,
  631 F. Supp. 2d 284 (S.D.N.Y. 2007)............................................................................11

*Hinjos v. Kohl's Corp.*,
  2010 WL 4916647 (C.D. Cal. Dec. 1, 2010) ..............................................................................10

*Indiana Electrical Workers Pension Trust Fund v. Dunn*,
  No. C-06-1711 RMW, 2007 WL 1223220 (N.D. Cal. Mar. 1, 2007).........................................12

*Jackson v. Balanced Health Products, Inc.*,
  2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009) ...........................................................4

*In re J.P. Morgan Chase & Co. Shareholder Litig.*,
  906 A.2d 766 (Del. 2006)..........................................................................................................12

*Kramer v. Western Pac. Indus., Inc.*,
  546 A.2d 348 (Del. 1988)..........................................................................................................11

*Kraus v. Trinity Mgmt. Servs., Inc.*,
  23 Cal. 4th 116 (2000)................................................................................................................9

*Kwikset v. Super. Ct.*, —Cal. 4th —,
  2011 WL 240278 (Jan. 27, 2011)...............................................................................7, 8, 9, 10

*Lapidus v. Hecht*,
  232 F.3d 679 (9th Cir. 2000).................................................................................................11, 12

*Levy v. JP Morgan Chase*,
  2010 U.S. Dist. LEXIS 118232 (S.D. Cal. Nov. 5, 2010)............................................................4

*In re Lord Abbett Mutual Funds Fee Litig.*,
  407 F. Supp. 2d 616 (D. N.J. 2005) ............................................................................................7

*Matoff v. Brinker Restaurant Corp.*,
  439 F. Supp. 2d 1035 (C. D. Cal. 2006)......................................................................................6

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
  615 F.3d 1106 (2010) ...............................................................................................2, 5, 6, 7, 13

*In re Oppenheimer Funds Fee Litig.*,
  419 F. Supp. 2d 593 (S.D. N.Y. 2006) ........................................................................................7

*Optivus Technology, Inc. v. Ion Beam Applications, S.A.*,
  2004 U.S. Dist. LEXIS 30315 ....................................................................................................4

*Proctor v. Vishay Intertechnology Inc.*,
  584 F.3d 1208 (9th Cir. 2009)...................................................................................................11

*Reeves v. Continental Equities Corp.*,
  912 F.2d 37 (2d Cir. 1990) .........................................................................................................7

*Romas v. Korson*,
  152 F.R.D. 101 (W.D. Mich. 1993) ............................................................................................9

*Rosales v. Citibank*,
  133 F. Supp. 2d 1177 (N.D. Cal. 2001) ..................................................................................8, 9

*Shaker v. Foxby Corp.*,
 2005 WL 914385 (Md. Cir. Ct. Mar. 15, 2005) ........................................................................12

*State v. Altus Finance, S.A.*,
 36 Cal. 4th 1284 (2005) ..........................................................................................................7, 8

*Stegall v. Ladner*,
 394 F. Supp. 2d 358 (D. Mass. 2005) ................................................................................12, 13

*Stevens v. Superior Court*,
 75 Cal. App. 4th 594 (1999) .........................................................................................................3

*Stop Youth Addiction, Inc. v. Lucky Stores*,
 17 Cal. 4th  553 (1998) ...............................................................................................2, 3, 4, 5

*Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*,
 922 F. Supp. 299 (C.D. Cal. 1996) ...............................................................................................7

*TPS Utilicom Servs., Inc. v. AT&T Corp.*,
 223 F. Supp. 2d 1089 (C.D. Cal. 2002) ........................................................................................9

*In re Worldcom, Inc.*,
 323 B.R. 844 (S.D.N.Y. Bankr. 2005) ........................................................................................12

**Statutes**

Bus. & Prof. Code §17200–17209 ....................................................................................... passim

Investment Company Act, 15 U.S.C. § 80a-1, *et seq.* .............................................................. passim

02235.61995/3958371.2
-iv-      Case No. 10-cv-3971 LHK
Schwab Defendants' Reply in Support of Motion to Dismiss Amended Complaint

## I. INTRODUCTION

Plaintiff's attempt to use, as the predicate for her UCL claim, a federal statute which has no private right of action, and whose enforcement was consigned exclusively to federal regulators, is not supported by the UCL's own language or the case law interpreting it. The California Supreme Court decisions permitting statutes that lack a private right of action to be used as UCL predicates involved state statutes, not federal statutes. Where, as here, Congress has indicated its intent not to permit private action, that intent cannot be circumvented by bringing an action under the UCL.

Plaintiff also has no claim to the only remedies permitted under the UCL. She does not dispute the Schwab defendants' argument that she has no right to injunctive relief or disgorgement. And, as very recent law confirms, because she did not pay any money to Schwab as a result of the challenged conduct, and Schwab did not acquire any of the money she claims to have lost, she also has no basis for restitution. Alleging a "loss" is not enough for a restitutionary remedy; rather, she must show that she placed money in Schwab's hands as a result of the alleged unlawful act and that Schwab received and is therefore capable of restoring that money to her. Her First Amended Complaint ("FAC") is entirely lacking in those essential allegations. Such allegations could not be added by amendment because the facts would not permit it.

Relatedly, Ms. Smit has no standing. Every plaintiff who brings a claim under the UCL must show an individual loss of money or property. Ms. Smit cannot meet that test because she experienced a net gain to her shares during the time in question. She does not, and cannot, dispute that fact. That her shares may have declined in value at some brief point during her holdings does not confer standing on her when her net position in the fund is positive. If it did, a party could premise a lawsuit on any drop in stock price during their holding period, no matter how much they profited at the end of the day.

SLUSA preemption also undermines Ms. Smit's claim. Although she studiously avoids using the words "misrepresentation" and "omission," the heart of her complaint is that what she got and what she paid for were two different things. She claims that she is only challenging a change in investment policy that occurred long after she purchased her shares and not the original promise on which her purchase was based, but recent case law holds that any misrepresentation

alleged in the complaint, even if it does not form the basis for the complaint, is sufficient to trigger preemption under SLUSA.

Even if Ms. Smit were to bypass all of the foregoing hurdles to maintaining her action, she still has not shown that her action is direct, rather than derivative. The loss she claims—diminution in value of the fund—is a classic derivative claim, undifferentiated and common to the Fund and its shareholders.

Plaintiff chose to allege her claim under a single state law with very particular requirements. She has not alleged the proper basis for a UCL claim and cannot do so even if permitted to amend. Her claim should be dismissed.

## II. ARGUMENT

### A. Plaintiff May Not Use The UCL To Dodge The Ruling in *Northstar*

#### 1. The UCL Does Not Authorize Borrowing Federal Statutes for Which There Is No Private Right of Action

Plaintiff continues to try to circumvent the Ninth Circuit's holding in *Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F. 3d 1106 (2010). Plaintiff argues erroneously that even though no private right of action exists under § 13(a) of the Investment Company Act, 15 U.S.C. § 80a-13, she may still borrow that statutory provision as the predicate for her 17200 claim as long as Section 13(a) does not explicitly "bar" the action or specifically permit the challenged conduct. However, careful analysis of cases cited by plaintiff reveals that she is urging the Court to extend the UCL into unbidden territory. Although plaintiff has cited cases permitting *California* statutes to be used as a predicate despite the absence of a private right of action, cases addressing federal statutes are to the contrary.

None of the three Supreme Court cases on which plaintiff relies involve borrowing a federal statute for a claim of unlawfulness under the UCL. *Committee on Children's Television, Inc. v. General Food Corporation*, 35 Cal. 3d 197 (1983) considered whether the state's Food, Drug, & Cosmetic Law could be used as a UCL predicate and held that whether or not there was a private right of action under it was "immaterial" to its decision. *Id.* at 210. The Court addressed the private right of action issue squarely in *Stop Youth Addiction, Inc. v. Lucky Stores*, 17 Cal. 4th

553 (1998) in the context of whether a section of the California Penal Code, which did not itself permit citizen suits, could nevertheless be borrowed to state a UCL claim. In holding that it could, the Court relied both on the fact that criminal wrongs historically had provided a basis for civil suits, and on language in the UCL that allows the UCL to work in tandem with other *state* statutes: "The unfair competition law, moreover, states that '[u]nless otherwise *expressly* provided, the remedies or penalties provided by this chapter [i.e., ch. 5, Enforcement, *Bus. & Prof. Code §17200-17209*] are cumulative to each other and to the remedies or penalties available under **all other laws of this state**.'" *Id.* at 573 (italics in original; bold added).[1] *Stop Youth Addiction* is the springboard for the later cases on the topic that plaintiff cites. *See, e.g, Stevens v. Superior Court*, 75 Cal. App. 4th 594, 602 (1999) ("Our Supreme Court recently provided the analytic framework for determining when a predicate law may serve as the basis of a UCL action," citing *Stop Youth Addiction*).

As the quoted language from *Stop Youth Addiction* so clearly shows, the California Supreme Court was talking about the legislatively created relationship between the state's UCL and other state statutes, not between the UCL and federal statutes. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), to which plaintiff liberally cites for the proposition that a UCL action is barred only if the predicate statute expressly "bars" it, also addressed the issue in the context of California's state statutes only. *See, e.g., id.* at 184 (". . . the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair"— one of many references in the opinion to the California Legislature.) The California Legislature is free to require its own statutes to "bar" private action to avoid UCL borrowing, but Schwab is aware of no authority that the California Legislature may impose such a requirement on Congress

---

[1] On page 6 of her brief, plaintiff quotes language from *Stop Youth Addiction* that the UCL remedies are "cumulative to other remedies and penalties." The preceding clause of the quoted portion makes clear that the Court was talking about state statutory law only. In full, the sentence reads: The alleged predicate statutes "nowhere reflect legislative intent to repeal **other state statutes** insofar as they may apply to tobacco retailers; in *section 17205,* on the other hand, the Legislature has clearly stated its intent that the remedies and penalties under the UCL be cumulative to other remedies and penalties." 17 Cal. 4th at 565-66 (italics original, bold added).

1  to do the same, nor is it the responsibility of Congress to be cognizant of the peculiarities of the
2  laws of 50 different state legislatures.

3  All of the cases plaintiff cites, and others that consider whether federal statues can be
4  borrowed for UCL actions, show that UCL actions are ***not*** permitted where the federal statute
5  lacks a private right of action, unless the federal statute specifically authorizes state remedies. *See*
6  *Ferrington v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 106600, *41-*44 (N.D. Cal. Oct. 5, 2010)
7  (FIFRA and the FDCA , which both have comprehensive regulatory regimes that place
8  enforcement authority exclusively in the government, do not permit private action and  may not
9  serve as predicates for a UCL claim); *Banga v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 86619,
10  *16–*17 (E.D. Cal. Sept. 22, 2009) (FCRA provided it was enforceable exclusively by Federal
11  agencies and therefore could not serve as a UCL predicate); *Levy v. JP Morgan Chase*, 2010 U.S.
12  Dist. LEXIS 118232, *11 (S.D. Cal. Nov. 5, 2010) (no private right of action under the FTCA;
13  plaintiff fails to state plausible claim under the UCL); *Contractual Obligation Productions, LLC v.*
14  *AMC Networks, Inc.*, 2006 U.S. Dist. LEXIS 16402, *33 (S.D.N.Y. March 31 2006) (because
15  there is no private right of action under the federal GATT, plaintiff fails to state a claim under the
16  UCL).   It is notable that all of these decisions are recent, long after the doctrine announced by
17  *Stop Youth Addiction*.[2]   Yet not one of them adopted the Plaintiff's position that a federal statute
18  with no right to private action could still be used as a UCL predicate, except for this Court's ruling
19  in *Ferrington* regarding the Lanham Act, which affirmatively permits private action. *See*
20  *Ferrington*, 2010 U.S. Dist. LEXIS 106600 at *43-*44.

---

[2]  Diligent research has turned up two instances in which federal statutes were permitted to be borrowed despite the lack of a private right of action, but in both cases there were other reasons why this was so.  In *Optivus Technology, Inc. v. Ion Beam Applications, S.A.*, 2004 U.S. Dist. LEXIS 30315, the Court found that 17200 was being used to state a distinct claim for false advertising that did not intrude on the FDA's regulatory authority under the statute and thus was permissible under the regulations. *Id.* at  *51-*52 (C.D. Cal. Dec. 30, 2004) (regulations do not preempt state or local requirements of general applicability related to unfair trade practices).  In *Jackson v. Balanced Health Products, Inc.*, 2009 U.S. Dist. LEXIS 48848, *7 (N.D. Cal. June 10, 2009), the Court found that the FDA did not provide a federal remedy for consumers precisely because Congress expected consumers to rely on state law remedies.

### 2. Even Under the "Bar" Test for California Statutes, Plaintiff's Claim Fails

Even if the California requirement that the predicate statute must "bar" private actions were applied to federal statutes, it is satisfied in this case. The Ninth Circuit opinion in *Northstar* contains strong language on that point. The Ninth Circuit emphasized that the Securities & Exchange Commission ("SEC") is the exclusive body charged with enforcement of the relevant Investment Company Act ("ICA") sections, 15 U.S.C. § 80a-1, *et seq.* After examining the language, structure, and history of the ICA, the Court concluded that the "thorough delegation of authority to the SEC to enforce the ICA strongly suggests Congress intended to preclude other methods of enforcement." *Id.* at *1116-*17.

There is no principled distinction between a "bar" and an "intent to preclude other methods of enforcement." Plaintiff assumes there is only one way to find a "bar," which is to look for some specific wording in the statute (although what precisely it would need to say is not clear). But no case says that a "bar" requires magic words. Congress is, and should be, free to express its strong intent "to preclude other means of enforcement" in various ways. *Id.*

In fact, a brief chronology shows why it would be unrealistic to apply the strict "bar" test plaintiff advocates to the ICA. The ICA was passed in 1940. It was not until 1972 that the UCL was even held to apply to consumer actions. *See Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 110 (1972) (holding that § 3369, the predecessor to § 17200, applies to actions by consumers rather than just actions between competitors). And it was another 16 years after that before the California Supreme Court announced its formulation of the "bar" test. *See Stop Youth Addiction*, 17 Cal. 4th at 556 (the UCL "cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law"). Even if Congress were concerned about complying with the myriad unique requirements that individual states impose on their own laws,

the requirement to include the express bar language that plaintiff insists needs to be in Section 13 could not have been known to Congress when it passed the Investment Company Act of 1940.[3]

Several cases, including *Ferrington*, *Northstar*, and *Matoff v. Brinker Restaurant Corp.*, 439 F. Supp. 2d 1035 (C. D. Cal. 2006) (cited by plaintiff) all found the existence of a comprehensive regulatory scheme to be probative of legislative intent to preclude private enforcement, even for state statutes. In *Matoff*, the absence of a "complex administrative scheme" was influential in the Court's decision to permit a California statute to serve as a predicate for a UCL action. The ICA and its enforcement through the SEC provides precisely this type of broad regulatory framework. In reaching its decision that the ICA does not permit private action, the Ninth Circuit considered the fact that the ICA "created a broader regulatory framework for investment companies than the 1933 and 1934 Acts created for corporate securities." 615 F. 3d at 1109. There would be no reason for courts to address this aspect of the statutes under consideration if they did not consider it a key factor in determining congressional intent regarding whether private actions are barred.

Where a regulatory scheme vests discretion in the regulator, that is further reason to preclude private enforcement of the statute because such discretion cannot be replicated in private actions. *Almond Hill School v. United States Dept. of Agriculture*, 768 F.2d 1030 (9th Cir. 1985), explains the importance of regulatory discretion in determining whether private actions were intended under a statute. There the statute under consideration was FIFRA, which does not have a private right of action, and the issue was whether 42 U.S.C. § 1983 (which can be used to enforce certain federal statutory rights where the underlying statute does not provide for private action) could be used to enforce FIFRA obligations. Among the reasons the Court found persuasive in not permitting Section 1983 to be used to privately enforce FIFRA was the discretion conferred on the regulatory body: "the Act vests the EPA Administrator with discretion

---

[3]  Notably, the California Supreme Court did not require particular bar language in the statute itself. It merely said the "gist" of the action needed to be barred under "some other principle of law."

to permit the continued use of canceled pesticides if such use is not inconsistent with the purposes of the Act." *Id.* at 1037. The Court said that "[t]he delicate remedial balance inherent in the broad grant of administrative discretion could be upset by the bringing of private suits or even the constant threat of such litigation." 768 F.2d at 1038.[4] *See also Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 316 (C.D. Cal. 1996) (cannot use Lanham Act as vehicle to enforce FDCA because to do so would "usurp[] the FDA's discretionary role in the application and interpretation of its regulations."). Similar discretionary authority exists under Section 13 of the ICA which gives the SEC discretion to "create exemptions from compliance with an ICA provision, consistent with the statutory purpose and the public interest." *Northstar*, 615 F.3d at 1116. The "delicate remedial balance" Congress sought to impose there could not be replicated in Ms. Smit's UCL action.

### B. Plaintiff Cannot Obtain Restitutionary Or Injunctive Relief

Ms. Smit's opposition fails to explain why she is entitled to restitution, disgorgement, or injunctive relief. As an initial matter, she did not respond to Schwab's argument that disgorgement and injunctive relief are unavailable to her. Her prayers for disgorgement and injunctive relief should therefore be dismissed. *See* Schwab's Br. at 9–10.

Regarding her request for restitution, that remedy is only available to "compel [a] defendant to return money obtained through an unfair business practice." *State v. Altus Finance, S.A.*, 36 Cal. 4th 1284, 1304 (2005) (internal quotation marks omitted). As the recently decided case that Plaintiff cites in her opposition makes clear, a "restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, *and that it have been acquired by a defendant*, on the other." *Kwikset v. Super. Ct.*, — Cal. 4th —, 2011 WL

---

[4] Plaintiff also relies on Section 48 of the ICA, which provides for secondary liability against indirect actors. As such, liability under Section 48 stands or falls on whether there is a claim here against the primary actor under Section 13. *See In re Lord Abbett Mutual Funds Fee Litig.*, 407 F. Supp. 2d 616, 633–34 (D.N.J. 2005), *vac'd on other grounds by* 463 F. Supp. 2d 505 (D.N.J. 2006). There is no private right of action under Section 48 either. *In re Oppenheimer Funds Fee Litig.*, 419 F. Supp. 2d 593 (S.D. N.Y. 2006); *Reeves v. Continental Equities Corp.*, 912 F.2d 37 (2d Cir. 1990).

240278, at *15 (Jan. 27, 2011) (emphasis added).  The money that the plaintiff lost must therefore be in the hands of the defendant.  *See id.*   Under this standard, Ms. Smit's prayer for restitution fails.

First, she does not allege that the defendants "obtained [her money] *through* an unfair business practice." *Altus*, 36 Cal. 4th at 1304 (emphasis added).  The only money Schwab might have obtained from her are her investments in the Fund.[5]  But she does not say she bought Fund shares because of the unfair business practice, or that Schwab somehow obtained her money *through* the alleged deviation from the concentration policy.  To the contrary, Ms. Smit explicitly disavows that notion, admitting that the FAC "alleges no misconduct tainting those distant purchases."  Opp. Br. at 17.  Moreover, no loss occurred when she first bought shares; in return for her money she received shares worth exactly what she paid.  There is therefore no "measurable amount to restore to the plaintiff [which] has been *acquired by* violations of [17200]."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 698 (2006) (emphasis added).

Second, Ms. Smit believes she can seek restitution for the 5% decline in the value of her shares over a self-selected period.  *See* FAC at ¶ 5.  But there is no allegation that any of the defendants received that 5% in lost value for themselves or that they "obtained [her 5% loss] through an unfair business practice."  *See Altus*, 36 Cal. 4th at 1304.  Schwab does not have her 5% loss; Schwab never "obtained something to which it was not entitled." *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005).  Having not received it, Schwab cannot return it.  If it was not "acquired by" Schwab, there can be no basis for an order of restitution.  *Kwikset*, 2011 WL 240278, at *15.

Apparently recognizing her claim is not restitutionary, Ms. Smit advances a new basis for liability under Section 17200: "wrongful retention."  In support of her novel theory, she relies on *Rosales v. Citibank*, 133 F. Supp. 2d 1177 (N.D. Cal. 2001).  But *Rosales* does not support

---

[5]  Charles Schwab & Co., Inc., as the underwriter under contract with the Fund, FAC ¶ 11, and Charles Schwab Investment Management, Inc., as the investment adviser merely providing services to the Fund, *id.* at 12, are not alleged to have ever received any of Ms. Smit's money, even her initial investment.  These two defendants should be dismissed for this reason alone.

plaintiff's claim. The result in *Rosales* stems from the Court characterizing as *dicta* the requirement that the defendant "must have obtained something which it was not entitled to keep." *See id.* at 1181. But that point of law is not *dicta;* rather, as *Kwikset* so recently confirmed, it is an essential aspect of UCL jurisprudence regarding restitution. 2011 WL 240278, at *15; *see also Corbett v. Super. Ct.*, 101 Cal. App. 4th 649, 666 n.7 (2002); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1007 n.18 (C.D. Cal. 2002). *Rosales* is also factually distinguishable on a significant point. The defendant bank allegedly allowed someone to take the plaintiff's funds and was required by law to credit plaintiff's account for the unauthorized withdrawal. In that sense, the bank arguably had in its possession plaintiff's funds, and therefore could return them. *Rosales*, 133 F. Supp. 2d at 1181. That is not the case here. Schwab never "wrongfully retained" Ms. Smit's money. There is no allegation that she tried to redeem her shares and could not do so. And, as explained above, defendants obtained no money from Ms. Smit as a result of the alleged deviation from the concentration policy—a fact that distinguishes this case from all the other cases she cites. *See id.* (defendant was in possession of plaintiff's money or allowed it to be taken); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 123, 138 (2000) (landlord wrongfully kept portions of security deposits); *Colgan*, 135 Cal. App. 4th at 699 (discussing money improperly acquired, retained or disposed of); *Romas v. Korson*, 152 F.R.D. 101, 109 (W.D. Mich. 1993) (farmer illegally withheld security deposits).

Plaintiff's final case, *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 539–40 (N.D. Cal. 2009), did not address the requirement that the defendants be in possession of Plaintiff's money and therefore offers no precedent on the specific issue Schwab raises on this motion. *See id.* at 532, 539–40.

**C.     Ms. Smit Lacks Standing Under The UCL**

Plaintiff still has not explained how the FAC alleges any injury *and* a loss of money as a result of the unfair competition. *See* Bus. & Prof. Code § 17204. She does not rebut Schwab's analysis showing that she has, in fact, lost nothing as a result of her investment in the Fund. *See* Br. at 11. And she does not explain how she can have experienced a loss of money by investing in the Fund when she received a net gain. *See id.*

Ms. Smit relies on *Kwikset* to support her claim that she has properly alleged "some form of economic injury." 2011 WL 240278, at *6. *Kwikset* found that a plaintiff who paid for a lockset that was falsely labeled as "Made in the U.S.A." had standing under the UCL even though the plaintiff received the item for which he paid. The court reasoned that the plaintiff may not have parted with his money had he known the lockset was not made in the U.S.A., and therefore suffered an economic loss by reason of the misrepresentation. *Id.* at *10. But *Kwikset* does not help Ms. Smit because it affirms the need to show a loss: "the loss of real dollars from the consumer's pocket." *Id.* A UCL plaintiff "must establish that he or she has personally suffered such harm" to establish standing, and this Ms. Smit cannot do. *See id.* at *6. Ms. Smit cannot meet that standard because she experienced a net gain—money into, not out of, her pocket.

Plaintiff seeks to bring herself within *Kwikset's* holding based on language in the opinion that a "diminished property interest" is sufficient for standing, *id.* at *6, but her property interest has grown, not diminished. If her argument is that the drop in value during a particular period is adequate to confer standing, despite an overall gain in value in her shares, then a plaintiff could base standing on any stock drop at any point in time, even in the event of a substantial net gain in the value of her shares, and even if the stock only dropped for a single day. That is the import of Ms. Smit's argument that the Court should ignore her net gain and focus only on a particular period of loss.

The remaining cases Ms. Smit cites also do not support her for the same reason: in all of those cases, the plaintiffs experienced losses, not gains. *See* Opp. Br. at 17 (listing cases). In fact, one of Ms. Smit's cases, *Hinjos v. Kohl's Corp.*, actually dismissed a plaintiff's Section 17200 claim because the plaintiff received a benefit—just like Ms. Smit did here. *See* 2010 WL 4916647, at *3 (C.D. Cal. Dec. 1, 2010). Ms. Smit therefore lacks standing under Section 17204.

**D.  The Securities Litigation Uniform Standards Act Bars Ms. Smit's Section 17200 Claim**

The FAC's fundamental allegation is that Schwab represented the Fund would track the Lehman Index, FAC ¶¶ 30, 33, 36, 45, but it did not; instead, it invested heavily in risky securities, *id.* at ¶ 55–58. Schwab allegedly told investors one thing and did another. Plaintiff's

1  failure to use the term "misrepresentation" does not change the fact that misrepresentation is
2  what she alleges. *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal.
3  2002).  She may allege other things as well, but the only question for the Court is whether Smit
4  alleges, ***anywhere*** in the SAC, some type of material misrepresentation or omission.  *See Proctor*
5  *v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009).  Plaintiff fails to
6  address the specific misrepresentations and omissions that Schwab identified in its opening brief.
7  *See id.*; Open. Br. at 13–15.

8        Ms. Smit argues that because the misrepresentations were true when made, they are not
9  misrepresentations.  But none of the cases she cites discuss SLUSA preemption, *see* Opp. Br. at
10 15.  Moreover, Judge Alsup's order, which held facts that were not predicate elements of a claim
11 were insufficient to trigger SLUSA preemption, was abrogated by the Ninth Circuit in *Proctor*.
12 *Compare In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) ("To be a
13 factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely
14 an extraneous detail")  *with Proctor*, 584 F.3d at 1222 n.13 ("Misrepresentation need not be a
15 specific element of the claim to fall within the Act's preclusion.").  *Proctor* directly contradicts the
16 order upon which Plaintiff relies and holds that, regardless of whether any alleged
17 misrepresentation is a predicate to the claim at issue, if a complaint alleges a misrepresentation
18 then SLUSA is triggered.  *Proctor*, 584 F.3d at 1222 n.13 (listing cases).

19       **E.**     **Ms. Smit's Claim Must Be Asserted Derivatively**

20       Plaintiff relies heavily on *Lapidus v. Hecht* to argue her claim is direct.  But nowhere does
21 *Lapidus* say that if a complaint merely mentions a shareholder's voting rights it is automatically
22 direct.  *See* 232 F.3d 679, 683–84 (9th Cir. 2000).  Rather, courts focus on the gravamen of the
23 complaint, *see Kramer v. Western Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988), and here the
24 gravamen, which appears prominently in the introduction to her complaint, is redress for a
25 reduction in the share price of the Fund.  *See* FAC ¶ 5 ("The Fund's deviation from its
26 fundamental policies exposed the Fund and its shareholders to tens of millions of dollars in losses
27 stemming from a sustained decline in the value of non-agency mortgage-backed securities").
28

Ms. Smit's case is about money, not a vote. As Schwab showed in its opening brief, several cases have held that even when a claim relates to voting rights, it can still be derivative if the primary injury to the plaintiff is a reduction in share price. *See Halebian v. Berv*, 631 F. Supp. 2d 284, 302 (S.D.N.Y. 2007) (citing *Lapidus* and holding claim related to voting right under ICA was nevertheless derivative under Massachusetts law because harm to shareholders was not separate from harm to corporation), *aff'd*, 590 F.3d 195, 209–10 (2d Cir. 2009); *Indiana Electrical Workers Pension Trust Fund v. Dunn*, No. C-06-1711 RMW, 2007 WL 1223220, at *10 (N.D. Cal. Mar. 1, 2007) (holding even though plaintiffs denied right to vote, claim was essentially derivative in nature); *In re Worldcom, Inc.,* 323 B.R. 844, 856 (S.D.N.Y. Bankr. 2005) ("This Court does not see how the right to vote . . . is differentiated from a diminution in value of the shares."). *Cf. In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 766, 772–73 (Del. 2006) (separating direct claim for voting-rights violation from derivative claim for injury flowing from that violation). The true injury at issue here is the reduction in share price, a classically derivative claim. *See, e.g.,* Open. Br. at 17–18; *Stegall v. Ladner*, 394 F. Supp. 2d 358, 364 (D. Mass. 2005) (claims against mutual fund were derivative because they "relate to a diminution in the total assets of the Funds").

Plaintiff's attempt to distinguish these authorities by claiming that they dealt with damages instead of restitution is unpersuasive. Courts focus on the type of injury—here, the reduction in share price—not on the theory of damages to compensate for that injury. *See, e.g. Stegall*, 394 F. Supp. 2d at 364. Moreover, Plaintiff cannot distinguish *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 10211, at *4 (S.D.N.Y. Jan. 6, 2000). The plaintiff in *Dreyfus* asserted a claim under Section 13(a) of the ICA for her investment in a mutual fund because it deviated from its fundamental policies by, in part, investing in "risky, unstable and unproven micro-cap securities." *Id.* at *1, *4. And even though Section 13(a) deals with voting rights, the court still held the claim was derivative. It reasoned that the "plaintiffs here merely allege an

'undifferentiated harm' that all shareholders suffered and was derived from harm to the Funds themselves."[6] *Id.*

Finally, *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531 (N.D. Cal. 2009) is distinguishable. There, the court explicitly said the Section 17200 claim concerned a change to the investment policy "*without a required shareholder vote.*" *Id.* at 534 n.2 (emphasis in original). Based on this characterization, the court held the claim was direct. *Id.* at 539. But the claims here, as explained above and in the Schwab's opening brief, are about a reduction in share price. *See* FAC ¶ 5. Ms. Smit's injury "relate[s] to a diminution in the total assets of the Funds" and is derivative. *Stegall*, 394 F. Supp. 2d at 364.

### F. The Claim Regarding the Change to the Concentration Policy Has Expired

Plaintiff concedes that, insofar as the FAC alleges a violation based on the September 1, 2006 revision to the concentration policy, at least that portion of the FAC should be dismissed. *Groce v. Claudat*, No. 09cv1630, 2010 WL 3339406, at *2 (S.D. Cal. Aug. 24, 2010) (dismissing portion of UCL claim which occurred four years before filing). Ms. Smit explicitly disavows any claim arising from the alleged September 1, 2006 change in concentration policy, which occurred over four years before she filed suit. *See* Opp. Br. at 23–24. That portion of the FAC should be dismissed on statute-of-limitation grounds. See FAC ¶¶ 64–68.

### G. Neither Charles Schwab & Co. Inc. Nor Charles Schwab Investment Management Inc. Can Be Liable Under Plaintiff's § 17200 Theory

There is no private right of action under either Section 13(a) of the ICA or under Section 48(a) of the ICA. *Supra,* n. 4; *Northstar*, 615 F.3d at 1116, 1122. Accordingly, Ms. Smit cannot borrow Section 48(a) to impose liability on Charles Schwab & Co., Inc. nor Charles Schwab Investment Management, Inc. Nor could she borrow it to impose indirect liability under Section 13(a) when there is no private right of action against the direct actor.

---

[6] That the court applied Maryland law does not distinguish it, as Maryland appears to borrow Delaware law, just as Massachusetts does. *See Shaker v. Foxby Corp.*, 2005 WL 914385 (Md. Cir. Ct. Mar. 15, 2005); *Lapidus*, 232 F.3d at 683.

## III. CONCLUSION

For these reasons, Schwab respectfully requests the Court to dismiss the FAC with prejudice.

DATED: February 18, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    /s/
   Karin Kramer
   Attorneys for Defendants
   Charles Schwab & Co., Inc., Schwab Investments,
   and Charles Schwab Investment Management, Inc.